JORDAN ETH (CA SBN 121617)
JEth@mofo.com
MARK R.S. FOSTER (CA SBN 223682)
MFoster@mofo.com
ROBERT W. MAY (CA SBN 295566)
RMay@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

Attorneys for Defendants
ORACLE CORPORATION, SAFRA A. CATZ, PAULA R.
HURD, AS TRUSTEE OF THE HURD FAMILY TRUST,
LAWRENCE J. ELLISON and KEN BOND

DORIAN DALEY (CA SBN 129049)
Dorian.Daley@oracle.com
PEGGY BRUGGMAN (CA SBN 184176)
Peggy.Bruggman@oracle.com
JAMES C. MAROULIS (CA SBN 208316)
Jim.Maroulis@oracle.com
500 Oracle Parkway
Mail Stop 5OP7
Redwood City, California 94065
Telephone: 650.506.5200
Facsimile:  650.506.7114

Attorneys for Defendant
ORACLE CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ORACLE CORPORATION SECURITIES LITIGATION | Case No. 5:18-cv-4844-BLF<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:  March 24, 2022<br>Time:  9:00 a.m.<br>Ctrm:  3, Fifth Floor<br><br>Judge: Hon. Beth Labson Freeman |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

    I.    PLAINTIFF MUST OFFER A DAMAGES MODEL THAT MEASURES ONLY THE DAMAGES ATTRIBUTABLE TO ITS LIABILITY THEORY. ............................. 3

    II.   PLAINTIFF HAS NOT OFFERED ANY DAMAGES MODEL, MUCH LESS ONE THAT MEASURES ONLY THE DAMAGES ATTRIBUTABLE TO THE ONLY SURVIVING LIABILITY THEORY. .................................................................... 4

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AdTrader, Inc. v. Google LLC*,
    No. 17-CV-07082-BLF, 2020 WL 1922579 (N.D. Cal. Mar. 24, 2020) ................................... 4

*In re BP P.L.C. Sec. Litig.*,
    MDL No. 10-md-2185, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ..................................... 8

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ............................. 1, 4

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    No. 17-CV-00554-YGR, 2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ................................. 5

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ......................................................................................................... *passim*

*Doyle v. Chrysler Grp., LLC*,
    663 Fed. Appx. 576 (9th Cir. 2016) (unpublished) ................................................................. 8

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................................. 8

*Hatamaian v. Advanced Micro Devices, Inc.*,
    No.: 14-cv-00226-YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ................................. 5

*Loritz v. Exide Techs.*,
    No. 2:13-CV-02607-SVW-E, 2015 WL 6790247 (C.D. Cal. July 21, 2015) .......................... 8

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) .......................................... 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
    725 F.3d 244 (D.C. Cir. 2013) ................................................................................................. 9

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................................ 3

DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION
Case No. 5:18-cv-4844-BLF                                                                                                              ii

# INTRODUCTION

This Court should deny Plaintiff's Motion for Class Certification (the "Motion"). Plaintiff has not offered any damages model and therefore fails to satisfy Rule 23(b)(3)'s predominance requirement.

Under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), Plaintiff must present a model that measures classwide damages tied to its liability theory. When applying *Comcast*, this Court has required that class action plaintiffs "***put forth a model*** that can show that [the plaintiffs'] damages stemmed from the defendant's actions that created the legal liability." *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018).

Plaintiff's Motion sidesteps this burden. Most of the Motion argues the undisputed point that Oracle's stock trades on an efficient market. Plaintiff supports that obvious conclusion with a detailed analysis by its expert, Dr. David Tabak. By contrast, in two sentences that do not mention *Comcast*, Plaintiff argues that Rule 23(b)(3) is satisfied because Plaintiff's "proposed model calculates class-wide damages by using an event study to measure the amount of artificial inflation in Oracle stock on each day of the Class Period." (Motion at 19-20.)

Dr. Tabak, however, says the opposite. He testified that he was not "retained to put together a damages model" and that his report "***doesn't propose a particular damages model***." (Ex. 1 at 41:21-24; 72:5-11.[1]) As Dr. Tabak candidly acknowledged, an event study is "just one part" of a damages model (Ex. 1 at 132:14-21), and he was not asked to reach any decisions about the numerous steps and assumptions that would be required to formulate a damages model tied to Plaintiff's theory of liability. (*Id.* at 103:11-18.) Instead, Dr. Tabak reaches a far more limited conclusion: that "whatever damages model [he] come[s] up with" would apply on a classwide basis. (*Id.* at 153:25-154:18.) That is not enough under *Comcast*.

Plaintiff has not presented any damages model, much less one that calculates classwide damages tied to Plaintiff's liability theory. For that reason, Plaintiff's Motion should be denied.

---

[1] Ex.1 is Dr. Tabak's deposition transcript. It is attached to the Foster declaration filed herewith.

## BACKGROUND

On March 8, 2019, Plaintiff filed its Consolidated Class Action Complaint (the "CAC"). The CAC alleged that Oracle's sales team "coerced" or "bribed" its customers to purchase Oracle's Cloud products through two alleged sales practices, which Plaintiff referred to as "ABC Deals" and "Attached Deals." Plaintiff alleged that the sales practices rendered Oracle's reported Cloud sales and growth between March 15, 2017, and June 19, 2018, "illusory." On December 17, 2019, this Court dismissed the CAC, detailing multiple pleading defects. *See* Order Granting Defendants' Motion to Dismiss with Leave to Amend (Dkt. No. 65).

On February 17, 2020, Plaintiff filed the Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "SAC"). (Dkt. No. 68.) The SAC challenged fifty statements made by Defendants during a putative class period of March 15, 2017, to June 19, 2018. (*See* SAC at 1; SAC Ex. A.) Plaintiff reiterated many of the same allegations regarding the sales practices and challenged more than a dozen new statements that were allegedly false or misleading because Oracle's Cloud products suffered from "fundamental" defects. (*See* SAC ¶¶ 74-94.) Plaintiff also added allegations that Oracle violated Generally Accepted Accounting Principles ("GAAP") by failing to disclose the alleged sales practices. (SAC ¶¶ 339-42.)

On March 22, 2021, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the SAC (the "Order"). (Dkt. No. 84.) In what the Court described as a "close call," the Court allowed Plaintiff to move forward on a "narrow omission theory of securities fraud" for eleven of the fifty challenged statements. (Order at 23, 35-36.) In dismissing the other thirty-nine challenged statements, the Court highlighted several deficiencies in Plaintiff's allegations. The Court found that Plaintiff's product-defect and GAAP-violation theories failed to state a claim and that Oracle did "not have a stand-alone duty to disclose its sales practices." (Order at 23-31, 32-35.) The Court also found that certain challenged statements were non-actionable "puffery" and others were protected by the safe harbor for forward-looking statements established by the Private Securities Litigation Reform Act of 1995. (Order at 18-22.)

On October 8, 2021, Plaintiff filed this Motion, which seeks to certify a class of all

persons who purchased or acquired Oracle common stock from May 10, 2017, until June 20, 2018. (Mot. at 2.) The Motion's proposed class period is two months shorter than the class period alleged in the SAC. (*See* SAC at 1.) Plaintiff devotes multiple pages of its Motion to quoting documents produced by a disgruntled former Oracle employee. (Mot. at 5-6.) Plaintiff's quotations and other factual allegations, which Oracle disputes, are irrelevant to class certification. As to matters that are relevant, Plaintiff supports its Motion with a report provided by Dr. Tabak, which is discussed in detail below. Dr. Tabak dedicates six paragraphs of his sixty-two paragraph report to damages. (Tabak Rep. ¶¶ 57-62.[2])

## ARGUMENT

Defendants do not oppose class certification on commonality or numerosity grounds. On other grounds, Defendants note that in the month before this filing, Plaintiff produced more than 40,000 pages responsive to Defendants' document requests (which were served in April 2021), most of which are German-language documents. Given this belated production and the time needed to review and analyze the information about Plaintiff and the extensive trading in Oracle stock by Plaintiff and various related investment funds, Defendants reserve their rights to later challenge Plaintiff's adequacy and typicality to serve as a class representative. *See* Fed. R. Civ. P. 23(c)(1)(C). At this time, Defendants direct their class certification challenge at predominance, as discussed below.

### I.  PLAINTIFF MUST OFFER A DAMAGES MODEL THAT MEASURES ONLY THE DAMAGES ATTRIBUTABLE TO ITS LIABILITY THEORY.

Plaintiffs seeking class certification under Rule 23(b)(3) must show that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23.

In *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), the Supreme Court held that to meet

---

[2] References to the "Tabak Report" are to the Expert Report of David I. Tabak, Ph.D., filed by Lead Plaintiff as Exhibit J in support of its Motion for Class Certification (Dkt. No. 107-11).

that requirement, a plaintiff must present a damages model that establishes that "damages are susceptible of measurement across the entire class." *Id.* at 35.  The model offered must "measure only those damages attributable to [plaintiff's liability] theory." *Id.*  If "the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class." *Id.*  In that situation, class certification should be denied, because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 34.

This Court has applied *Comcast* on multiple occasions.  *See, e.g.*, *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 1922579, at *15 (N.D. Cal. Mar. 24, 2020); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018).  In each case, the Court found that (1) a plaintiff seeking class certification "must provide a damages model," *Broomfield*, 2018 WL 4952519, at *13; (2) the model must show that "'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3),'" *Id.* (quoting *Comcast*, 569 U.S. at 35); and (3) the model must "measur[e] only the damages attributable to their liability theory."  *AdTrader*, 2020 WL 1922579, at *15.

As discussed below, Plaintiff fails at the first step by not proposing ***any*** damages model.  It follows that Plaintiff has not shown that its yet-to-be-proposed model can be applied on a classwide basis to measure only the damages attributable to its surviving liability theory.

## II. PLAINTIFF HAS NOT OFFERED ANY DAMAGES MODEL, MUCH LESS ONE THAT MEASURES ONLY THE DAMAGES ATTRIBUTABLE TO THE ONLY SURVIVING LIABILITY THEORY.

Citing the report of its expert, Dr. Tabak, Plaintiff asserts that it has met its burden under Rule 23(b)(3) because "its ***proposed model*** calculates class-wide damages." (Mot. at 19-20 (emphasis added).)  Dr. Tabak, however, contradicts Plaintiff's assertion.  He testified that he was not retained to put together a damages model:

> Q: Were you retained to put together a damages model?
>
> A: I don't believe so.  I certainly don't recall doing it.

(Ex. 1 at 41:21-24.)  Because Plaintiff did not ask him to prepare a damages model—let alone one matching Plaintiff's liability theory— Dr. Tabak's report discusses "how a damages model is

created generally" but "***doesn't propose a particular damages model***." (*Id.* at 72:5-11.)

Plaintiff attempts to avoid the narrow scope of Dr. Tabak's assignment and conclusions by arguing that an "out of pocket" damages model employing an event study is "used to calculate damages in virtually every securities class action across the county." (Mot. at 19.) As Plaintiff points out, some decisions in this District have accepted the notion that "event studies" can be a sufficient model for damages in securities fraud cases at the class certification stage. *See, e.g.*, *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, No. 17-CV-00554-YGR, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018); *Hatamaian v. Advanced Micro Devices, Inc.*, No.: 14-cv-00226-YGR, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016).[3]

Putting aside whether those non-binding decisions correctly apply *Comcast*, there is no reason for this Court to find Plaintiff's bare invocation of an event study adequate in this case. That is because Dr. Tabak himself expressly acknowledged in his report and at his deposition that an "event study" is just the "starting point" for calculating damages in this case:

- "The inflation calculation referenced above is *begun* with an event study." (Tabak Report at ¶ 60) (emphasis added);
- Q: "And doing an event study is just one part of that, right?"
  A: "Absolutely." (Ex. 1 at 132:14-21);
- "An event study is a first step." (*Id.* at 133:12-24.)

What other steps would Dr. Tabak take beyond an event study? He has not decided. He testified that he was not asked to determine which steps were necessary here, much less actually perform an analysis of each based on the facts of this case. (Ex. 1 at 86:25-87:19; 96:24-97:25.) For example, Dr. Tabak has not:

- Analyzed the alleged corrective disclosures to determine what "inflation methodology" would apply to each disclosure (Ex. 1 at 82:6-87:19);

---

[3] As discussed below, other district courts have rejected at the class certification stage damages models promising an event study where the model was "vague, indefinite, and unspecific." *See infra* at 8.

- Determined whether a "constant dollar," "constant percentage," or "constant value" methodology is appropriate in this case (*Id.*);
- Determined whether damages methodologies used in the context of an "inflation maintenance" theory would apply to Plaintiff's liability theory here (*Id.* at 138:8-143:25); or
- Adjusted the amount of any abnormal stock price declines on the corrective disclosure dates for changes due to market, industry, or company-specific reasons unrelated to the alleged fraud. (*Id.* at 103:11-18.)

Dr. Tabak was also not asked to develop, much less apply, a specific methodology to remove any alleged artificial inflation in Oracle's stock price related to theories of liability that this Court dismissed in its Order Granting in Part and Denying In Part Defendants' Motion to Dismiss. Indeed, Dr. Tabak testified that he did not "think there's anything substantive that would change in []his report" if the Court had denied Defendants' Motion to Dismiss in its entirety, rather than dismissing thirty-nine of the fifty challenged statements and allowing only a "narrow omissions theory" to survive. (Ex. 1 at 111:14-113:4.) That is because, in Dr. Tabak's words, his report was "not a damages report" and did not put forward (much less actually apply) a damages model. (*Id.* at 75:5-76:4.)

Plaintiff could have asked Dr. Tabak to perform these analyses. Indeed, Dr. Tabak performed complex analyses with respect to market efficiency. (Tabak Report at ¶¶ 9-56.) Plaintiff chose not to ask Dr. Tabak to prepare a damages model and has not even retained him as a damages expert. (Ex. 1 at 94:5-10, 143:24-25.) Given Dr. Tabak's limited assignment, he only offers a limited opinion that it is "possible" that "whatever damages model [he] come[s] up with" later could be applied on a class-wide basis. (Ex. 1 at 153:25-154:18; *see* Tabak Report ¶ 57.)[4] The "possibility" that Plaintiff (and whatever expert it eventually retains) can come up with a

---

[4] Dr. Tabak testified that he intended "possible" to mean "capable of being done." (Ex. 1 at 75:7-76:16.) But, of course, even that is not the same as having actually presented a damages model, as Dr. Tabak testified.

model somewhere down the road is miles away from offering an actual damages model at the class certification stage, as *Comcast* requires. *See Comcast*, 569 U.S. at 36 ("Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity.").

Plaintiff's assurance that some unknown expert will possibly be able to provide a damages model later is even weaker than the assurance that the Supreme Court rejected in *Comcast*. There, the plaintiffs asserted antitrust claims on behalf of millions of current and former Comcast subscribers. The plaintiffs alleged several theories of antitrust liability. In connection with their motion for class certification, the plaintiffs proffered an expert to calculate the price impact of the alleged anti-competitive practices. Unlike Plaintiff here, the plaintiffs in *Comcast* proposed a model. Their expert designed "a regression model comparing actual cable prices . . . with hypothetical prices that would have prevailed but for petitioners' allegedly anticompetitive activities." *Comcast*, 569 U.S. at 31-32. The expert's "model calculated damages of $875,576,662 for the entire class." *Id*.

After the district court dismissed all but one of the theories of antitrust liability originally alleged, the defendants argued that the model was insufficient, as it did not isolate damages caused exclusively by the remaining theory of liability. The district court rejected the defendants' arguments and granted certification. The Court of Appeals affirmed, finding that at the class certification stage plaintiffs must only "assure [the court] that if they can prove antitrust impact, the resulting damages are capable of measurement and will not require labyrinthine individual calculations." *Id.* at 32.

The Supreme Court reversed. The Supreme Court found that the plaintiffs' "model [fell] far short of establishing that damages are capable of measurement on a classwide basis." *Id.* at 34. The Court held that a "model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the] theory" of liability alleged by the plaintiffs. *Id.* at 35. While the Court noted that "[c]alculations need not be exact," it made clear that district courts "must conduct a rigorous analysis" because "any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.*

The Supreme Court expressly rejected the Court of Appeals' holding that it was

Case No. 5:18-cv-4844-BLF

7

1  unnecessary to decide "whether the methodology [was] a just and reasonable inference or
2  speculative" so long as plaintiffs assured the court that they had "provided a method to measure
3  and quantify damages on a classwide basis." *Id.* at 35.  "Under that logic, at the class-
4  certification stage *any* method of measurement is acceptable so long as it can be applied
5  classwide, no matter how arbitrary the measurements may be." *Id.* at 35-36 (emphasis in
6  original.)  The Court held that "[s]uch a proposition would reduce Rule 23(b)(3)'s predominance
7  requirement to a nullity." *Id.*; *accord Doyle v. Chrysler Grp., LLC*, 663 Fed. Appx. 576, 579 (9th
8  Cir. 2016) (unpublished) ("Doyle has not offered a model for determining what percentage of the
9  purchase price the reimbursement should be. There is thus no way to determine whether the
10 proposed damages model measures damages that are solely attributable to the theory of
11 liability.")

12 Plaintiff's approach here seeks to do exactly what *Comcast* disapproved.  Reliance on
13 generalized assertions about potential "tools," "techniques," and "methodologies"—including the
14 use of an event study—is not enough.  Courts have denied class certification in securities cases
15 where, as here, the plaintiff's damages "model" is "vague, indefinite, and unspecific." *See, e.g.*,
16 *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08CV0160, 2018 WL
17 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a damages model
18 that is vague, indefinite, and unspecific, or simply asserts . . . that there are unspecified 'tools'
19 available to measure damages, the model amounts to 'no damages model at all.'"); *Loritz v. Exide
20 Techs.*, No. 2:13-CV-02607-SVW-E, 2015 WL 6790247, at *22-23 (C.D. Cal. July 21, 2015)
21 (refusing to certify damages class where plaintiff's expert "discusse[d] general techniques for
22 computing damages in securities fraud cases" but "fail[ed] to propose one model explaining how
23 he would use these techniques in concert to calculate damages in this case"); *Fort Worth Emps.'
24 Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141 (S.D.N.Y. 2014) (refusing to certify
25 damages class where plaintiffs' expert merely offered "several ways" to determine classwide
26 damages, but failed to state which "methods" he actually planned to use); *In re BP P.L.C. Sec.
27 Litig.*, MDL No. 10-md-2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (refusing to
28 certify a class in a securities case where plaintiffs' expert did little more than assert that a

generalized "event study methodology" could be used to measure classwide damages).

As the D.C. Circuit explained when applying *Comcast* to vacate an order granting class certification: "***No damages model, no predominance, no class certification***." *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013) (emphasis added). This Court should reach the same conclusion here.

Dated: December 9, 2021

                                  MORRISON & FOERSTER LLP

                                  By:  */s/ Mark R.S. Foster*
                                        Mark R.S. Foster

                                  Attorneys for Defendants
                                  ORACLE CORPORATION, SAFRA A. CATZ, PAULA R. HURD, AS TRUSTEE OF THE HURD FAMILY TRUST, LAWRENCE J. ELLISON, and KEN BOND