1

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
MARK LEBOVITCH (admitted *pro hac vice*)
(markl@blbglaw.com)
JOHN RIZIO-HAMILTON (admitted *pro hac vice*)
(johnr@blbglaw.com)
ABE ALEXANDER (admitted *pro hac vice*)
(abe.alexander@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400
Fax:    (212) 554-1444

        -and-

JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (858) 793-0070
Fax:    (858) 793-0323

*Counsel for Lead Plaintiff Union Asset*
*Management Holding AG and Lead Counsel*
*for the Class*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In re Oracle Corporation Securities Litigation* | <u>CLASS ACTION</u><br><br>Case No. 18-cv-04844-BLF<br><br>**LEAD PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: March 24, 2022<br>Time: 9:00 a.m.<br>Ctrm: Courtroom 3 – 5th Floor<br>Judge: Hon. Beth Labson Freeman |

REPLY IN SUPPORT OF CLASS CERTIFICATION
Case No. 18-cv-04844-BLF

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................1

II.    ARGUMENT .........................................................................................2

    A.    Defendants' Broad Concessions Demonstrate That Class Certification Is Warranted................................................................................2

    B.    As Numerous Courts Have Held, Plaintiff's Proposed Damages Methodology Easily Satisfies *Comcast*'s Modest Requirements ...........................3

    C.    Defendants' Remaining "*Comcast* Arguments" Are Without Merit .......................7

III.   CONCLUSION......................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Acuity Brands, Inc. Sec. Litig.*,
   2020 WL 5088092 (N.D. Ga. Aug. 25, 2020) ....................................................10

*AdTrader, Inc. v. Google LLC*,
   2020 WL 1922579 (N.D. Cal. Mar. 24, 2020) ..................................................14

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
   568 U.S. 455 (2013)............................................................................................7

*Angley v. UTi Worldwide Inc.*,
   311 F. Supp. 3d 1117 (C.D. Cal. 2018) ..............................................................5

*Baker v. SeaWorld Ent., Inc.*,
   2017 WL 5885542 (S.D. Cal. Nov. 29, 2017)......................................................5

*In re Banc of Cal. Sec. Litig.*,
   326 F.R.D. 640 (C.D. Cal. 2018) ........................................................................3

*Basile v. Valeant Pharm. Int'l, Inc.*,
   2017 WL 3641591 (C.D. Cal. Mar. 15, 2017)................................................6, 10

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...............................................................................1

*In re BofI Holding, Inc. Sec. Litig.*,
   2021 WL 3742924 (S.D. Cal. Aug. 24, 2021)..................................................2, 7

*In re BP p.l.c. Sec. Litig.*,
   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013)......................................................12

*In re BP p.l.c. Sec. Litig.*,
   2014 WL 2112823 (S.D. Tex. May 20, 2014), *aff'd sub nom.*
   *Ludlow*, 800 F.3d 674 ................................................................................12, 13

*Broomfield v. Craft Brew All., Inc.*,
   2018 WL 4952519 (N.D. Cal. Sept. 25, 2018)..................................................14

*In re Celgene Corp. Sec. Litig.*,
   2020 WL 8870665 (D.N.J. Nov. 29, 2020) ........................................................3

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
    337 F.R.D. 193 (D. Minn. 2020) ........................................................................7

*City of Miami Gen. Emps.' & Sanitation Emps.' Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
    2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ......................................................9

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ..............................................passim

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
    2019 WL 2193335 (9th Cir. Jan. 24, 2019) ......................................................3

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...........................................................................................1

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011).......................................................................................2, 7

*Första AP-Fonden v. St. Jude Med., Inc.*,
    312 F.R.D. 511 (D. Minn. 2015) ......................................................................6

*Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ....................................................................13

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ...........................................4, 8, 12

*Howard v. Liquidity Servs. Inc.*,
    322 F.R.D. 103 (D.D.C. 2017) .......................................................................10

*In re Intuitive Surgical Sec. Litig.*,
    2016 WL 7425926 (N.D. Cal. Dec. 22, 2016).....................................................4

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .......................................................................10

*La. Mun. Police Emps.' Ret. Sys., v. Green Mountain Coffee Roasters, Inc.*,
    2017 WL 3149424 (D. Vt. July 21, 2017).......................................................2, 6

*In re Lendingclub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017)..............................................................5

*Loritz v. Exide Technologies*,
  2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015)........................................13

*Ludlow v. BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015) ...........................................................8, 12

*Luna v. Marvell Tech. Grp., Ltd.*,
  2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) .................................8, 10

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ....................................................3

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ..........................................................4

*Ohio Public Employees Retirement System v. Federal Home Loan
  Mortgage Corporation*,
  2018 WL 3861840, at *18-20 (N.D. Ohio Aug. 14, 2018) ...............13

*In re Pfizer, Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ......................................................2

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ....................................................10

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ..........................................................4

*In re SanDisk LLC Sec. Litig.*,
  2018 WL 4293336 (N.D. Cal. Sept. 4, 2018) ...............................5, 10

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020).................................................5, 7

*In re Snap Inc. Sec. Litig.*,
  334 F.R.D. 209 (C.D. Cal. 2019)....................................................13

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016) .....................................................8

*In re Teva Sec. Litig.*,
  2021 WL 872156 (D. Conn. Mar. 9, 2021) ...................................4, 6

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ...................................2, 3

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018)..................................................................9

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
   2018 WL 1535156 (N.D. Ill. Mar. 29, 2018) ...........................................8

STATUTES

Securities Exchange Act Section 10(b).............................................4, 5, 6

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................1, 2, 9, 14

William B. Rubenstein, Newberg on Class Actions § 22:81 (5th ed.) ....................4

# I.   INTRODUCTION

In response to Plaintiff's opening submission, Defendants do not dispute that this case satisfies virtually all of Rule 23's requirements, including numerosity, commonality, typicality, adequacy, and superiority.  As to predominance, Defendants also concede that common issues predominate as to every liability element of Plaintiff's claims, and thus, that the proposed class shares an "overriding common interest in establishing" "the *sine qua non* liability." *Blackie v. Barrack,* 524 F.2d 891, 909-10 (9th Cir. 1975).

Defendants offer only a single, widely rejected argument in support of their opposition to class certification: Defendants incorrectly assert that Plaintiff fails to articulate a methodology for measuring damages consistent with its liability case, as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), with sufficient particularity.  Opp. at 3-9.[1]  Without any expert evidence of their own, Defendants speculate that individualized damages issues may somehow overwhelm the constellation of common liability issues.  *Id*.  Defendants are incorrect.  Plaintiff proposes to use the universally-accepted "out-of-pocket" damages model that is used to calculate damages in virtually every securities class action in the country.  Defendants do not cite a single case refusing to certify a securities fraud class on *Comcast* grounds where the plaintiffs advanced the out-of-pocket damages model at issue here.  Defendants ignore at least seventy-five (75) post-*Comcast* securities fraud cases rejecting the same objections raised by Defendants here and certifying investor classes using the same damages model Plaintiff proposes.  *See* Ex. A. (Securities Class Actions Rejecting "*Comcast* Arguments").

Nevertheless, Defendants assert that Plaintiff's damages model fails to satisfy *Comcast*'s modest requirements because Plaintiff does not say how it will "disaggregate" the quantum of Oracle's stock price decline on the corrective disclosure dates caused by revelation of the facts concerning the alleged fraud, or how inflation entered Oracle stock.  As courts across the country

---

[1] Internal citations and quotations are omitted.  "Opp." Refers to Defendants' opposition to Plaintiff's motion for class certification (ECF No.112). "Rpt." refers to the Expert Report of Dr. David Tabak (ECF No.107-11).

have recognized, however, these arguments are merits-driven attacks on "loss causation." *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018); *infra* at 8-10. The Supreme Court has expressly rejected this argument as a basis for denying certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011). Moreover, this argument cannot defeat predominance because it raises no individualized issues. In any event, "[t]he Ninth Circuit has … regularly reaffirmed" that "damage calculations alone cannot defeat certification." *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *11 (C.D. Cal. Jan. 5, 2017).

In short, Defendants' argument has been rejected by every court to consider it, including courts in this District. The Court should grant Plaintiff's Motion.

## II.   ARGUMENT

### A.   Defendants' Broad Concessions Demonstrate That Class Certification Is Warranted

As noted above, Defendants concede this case satisfies virtually all of Rule 23's requirements—including numerosity, commonality, superiority, and adequacy—and challenge only Rule 23's predominance requirement. Even with respect to predominance, however, Defendants concede that every liability element of Plaintiff's claims—falsity, scienter, materiality, reliance, loss causation and control—are subject to common proof and, thus, involve predominantly common issues. *See, e.g., In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *3 (S.D. Cal. Aug. 24, 2021) ("[S]everal of the elements of the securities fraud claim here are indisputably subject to common proof and identical legal analysis."); *La. Mun. Police Emps.' Ret. Sys., v. Green Mountain Coffee Roasters, Inc.*, 2017 WL 3149424, at *5 (D. Vt. July 21, 2017) ("[P]redominance of most of these elements ... is easily established."); *In re Pfizer, Inc. Sec. Litig.*, 282 F.R.D. 38, 52 (S.D.N.Y. 2012) (these elements are "subject to class wide proof").

Defendants' only argument in opposition to class certification is that Plaintiff has not adequately demonstrated predominance because it has not described with sufficient particularity the manner in which, following full discovery, it will ultimately calculate damages. Opp. at 4-7. Defendants, who proffer no expert evidence of their own, do not affirmatively argue that

damages issues will predominate, only that Plaintiff has not satisfied *Comcast*.  This argument fails for many reasons detailed herein.

To start, "[i]t's well settled that the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 651 (C.D. Cal. 2018); *see also Todd*, 2017 WL 821662, at *11 ("The Ninth Circuit has ... regularly reaffirmed" that "damage calculations alone cannot defeat certification."); *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 397 (N.D. Ga. 2019) ("It is axiomatic that individualized damages calculations are generally insufficient to foreclose class certification, and particularly so where the central liability question is common to each class member .... [N]othing in Rule 23(b)(3) requires Plaintiffs to prove predominance separately as to both liability and damages."); *In re Celgene Corp. Sec. Litig.*, 2020 WL 8870665, at *8 (D.N.J. Nov. 29, 2020) ("[I]n securities cases ... where all other issues are provable by common evidence, denial of class certification solely on the basis of individual damages calculations would be an abuse of discretion.") (internal quotations omitted).  Moreover, as discussed below, Defendants' argument is legally and factually without merit.

**B.    As Numerous Courts Have Held, Plaintiff's Proposed Damages Methodology Easily Satisfies *Comcast*'s Modest Requirements**

Defendants argue that Plaintiff fails to articulate a methodology for measuring damages consistent with its liability case, as required by *Comcast*, and thus, individualized damages issues will predominate.  Opp. at 3-9.  Counsel for Defendants are recycling the same argument they unsuccessfully made before Judge Gonzalez Rogers and the Ninth Circuit in *RH*, 2018 WL 4931543, at *3-4 (rejecting this argument and holding that a virtually identical description of the same damages model proffered here satisfied *Comcast*); *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2019 WL 2193335 (9th Cir. Jan. 24, 2019) (rejecting a petition under Fed. R. Civ. P. 23(f) to appeal Judge Gonzalez Rogers's class certification order).  Defendants also ignore the legion of post-*Comcast* cases rejecting identical arguments at the class certification stage.  These courts have all certified an investor class that advanced the same damages model advanced by Plaintiff here.  *See* Ex. A.

As a threshold matter, Defendants read *Comcast* far too broadly. "*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015). Instead, it simply requires the plaintiff "to show that their damages stemmed from the defendant's actions that created the legal liability." *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *17 (N.D. Cal. Dec. 22, 2016) ("Defendants' reading of *Comcast* is too broad."); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016) ("Defendants construe *Comcast* too broadly."); *see also In re Teva Sec. Litig.*, 2021 WL 872156, at *41 (D. Conn. Mar. 9, 2021) ("Since *Comcast*, many courts have commented that the potential need for individualized damages calculations in Section 10(b) cases simply does not impose a high hurdle on Rule 23(b)(3)'s predominance requirement."); William B. Rubenstein, Newberg on Class Actions § 22:81 (5th ed.) (explaining that "[s]ecurities class actions rarely have trouble complying with" *Comcast* and that "it is a rare—perhaps even nonexistent—securities case that raises damages issues that are so individualized as to defeat the predominance of the critical common issues in the case.").[2] As numerous courts have held, the damages methodology Plaintiffs advance here more than satisfies this minimal burden because it seeks to measure damages attributable to the theory of fraud delineated by Section 10(b).

Further, Defendants incorrectly assert that Plaintiff has not proposed a damages methodology. Opp. at 4-9. Plaintiff proposes to use the "out-of-pocket" damages methodology. This is the universally-accepted method for calculating damages arising from claims under

_____

[2] *Comcast* was an antitrust case in which plaintiffs alleged four distinct types of injury, three of which were subsequently dismissed. Because the plaintiffs failed to adjust their damages model to exclude those dismissed theories, the model did not even *purport* to tie to plaintiffs' liability theory, completely unlike this case. Courts widely recognize that *Comcast*'s unique facts render the case largely irrelevant in the securities fraud class action context. *See Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 374 (3d Cir. 2015) ("A close reading ... [of *Comcast*] makes it clear that the predominance analysis was specific to the antitrust claim at issue.").

Section 10(b) of the Exchange Act, and it clearly aligns with Plaintiff's liability theory.  As Plaintiffs' expert economist, Dr. David Tabak, explains, this model calculates out-of-pocket damages using an event study to measure the amount of artificial inflation in Oracle stock on each day of the Class Period.  Rpt. at ¶¶59-60.  The event study isolates the decline in Oracle's stock price on the alleged disclosure dates related to Company-specific news.  *Id.*  Dr. Tabak then "review[s] the alleged corrective disclosures, relevant negative events, and documents produced by Defendants in discovery to determine whether any of the information disclosed or negative events were unrelated to Plaintiff's claims.  If so, the effects of such unrelated, 'confounding' information and events would be removed" through commonly used valuation tools and methods discussed in Dr. Tabak's report.  *Id.* at ¶61. "Thus, a common method for determining inflation at any date, and thus damages for any Class member, will be feasible." *Id.*

This out-of-pocket damages model has been, and continues to be, used to calculate damages in virtually every securities class action arising under Section 10(b).  *See, e.g.*, *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 288 (N.D. Cal. 2020) ("Plaintiff's proposed 'out of pocket' damages methodology, which uses an event study to determine the price inflation attributable to the alleged fraud, is widely accepted for calculating damages of a class of stockholders."); *RH*, 2018 WL 4931543, at *3 ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action," and collecting cases); *In re SanDisk LLC Sec. Litig.*, 2018 WL 4293336, at *2 (N.D. Cal. Sept. 4, 2018) ("The out-of-pocket method is widely considered an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation."); *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1129 n.20 (C.D. Cal. 2018) (collecting cases); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) (Plaintiffs' "proposed method—using an event study—is widely accepted for calculating damages of a class of stockholders"); *Baker v. SeaWorld Ent., Inc.*, 2017 WL 5885542, at *12-13 (S.D. Cal. Nov. 29, 2017) (rejecting argument that "Plaintiffs fail to proffer a class-wide method for computing damages" and offer only "a hypothetical damages model"

1   because "Plaintiffs contend that they will utilize the standard measures of damages in virtually

2   all Section 10(b) cases—the out-of-pocket methodology"); *Basile v. Valeant Pharm. Int'l, Inc.*,

3   2017 WL 3641591, at *14 (C.D. Cal. Mar. 15, 2017) (using the out-of-pocket method, "the

4   amount of price inflation during the period can be charted and the process of computing

5   individual damages will be virtually a mechanical task").

6        As noted above, Defendants fail to cite a single case in which a court refused to certify a

7   class invoking the "out-of-pocket" damages methodology on *Comcast* grounds.  This is not

8   surprising, as at least 75 post-*Comcast* cases have certified classes just like this one that propose

9   to use the "out-of-pocket" damages methodology, as noted above.  *See* Ex. A.

10       Notably, courts across the country have held that Dr. Tabak's articulation of this

11   methodology—the same description that he proffers here—satisfies *Comcast*.  *See, e.g.*, *Teva*,

12   2021 WL 872156, at *40 (joining "[n]umerous courts" in holding that Dr. Tabak's "proposed use

13   of [the same] three-step analysis" he articulates here satisfies *Comcast*); *Green Mountain*, 2017

14   WL 3149424, at *7 ("Plaintiffs have offered a damages methodology that can be applied on a

15   class-wide basis, and that is consistent with their theory of the case .... Dr. Tabak's analysis

16   proposes to calculate damages throughout the Class Period as alleged by the Plaintiffs, and based

17   upon their single theory of fraud perpetrated through November 2011.  That methodology does

18   not run afoul of *Comcast*."); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 516 (D.

19   Minn. 2015) ("For purposes of finding the predominance requirement satisfied in a securities

20   fraud case, courts commonly accept methodologies similar to Dr. Tabak's proposal for

21   determining individual damages.").

22       Moreover, contrary to Defendants' assertions, Dr. Tabak's description of the out-of-

23   pocket methodology mirrors the substance of other expert reports routinely approved by courts in

24   this District.  *See* Ex. B at ¶¶182-188 (P. expert report in *RH*); Ex. C at ¶¶74-79 (P. expert report

25   in *Teva*); Ex. D at ¶¶77-78 (P. expert report in *Hatamian*); Ex. E at ¶¶143-145 (P. expert report

26   in *Marvell*); Ex. F at ¶¶77-78 (P. expert report in *SanDisk*); Ex. G at ¶14 (P. expert report in

27   *Lendingclub*).

28

C.    **Defendants' Remaining "*Comcast* Arguments" Are Without Merit**

Notwithstanding all the above, Defendants argue that Plaintiff's description of its damages methodology is insufficiently specific, asserting that Plaintiff must state how it will (1) "[a]djust[] the amount of any abnormal stock price declines" to account for price movements unrelated to the fraud—commonly referred to as "disaggregation";[3] (2) explain how inflation entered into Oracle common stock (*e.g.*, whether inflation was "maintained" or entered some other way); and (3) determine how the inflation ribbon would be constructed (*e.g.*, whether to use "constant dollar" or "constant percentage" methods).  Opp. at 5-6.  As courts have explained, Defendants merely raise veiled "loss causation" arguments that the Supreme Court has repeatedly held may not be considered at the class certification stage.  *See BofI Holding*, 2021 WL 3742924, at *5 ("The Supreme Court has held that plaintiffs need not establish loss causation at the class certification stage.").

Loss causation is a merits issue that "requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss." *Halliburton*, 563 U.S. at 812 ("*Halliburton I*").  Under the Supreme Court's holdings in both *Halliburton I* and *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013), "Defendants' concerns that [plaintiff] has not yet calculated an inflation ribbon or adequately addressed disaggregation are loss causation disputes that are not appropriate for resolution at class certification." *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 212–13 (D. Minn. 2020); *see also Symantec*, 335 F.R.D. at 288 ("[D]efendants' assert[ion] that plaintiff will be unable to disaggregate the artificial inflation from confounding events ... is an

---

[3]  Defendants also assert that Dr. Tabak must state how his event study will adjust for "any abnormal stock price declines on the corrective disclosure dates for changes due to market [or] industry" (Opp. at 6), but he has already done that.  The statistical regression accounts for market and industry-related price movements.  *See* Rpt. at Exhibit 8a.  The term "abnormal return" means return due to company-specific news; market and industry-related movements are, *by definition*, already accounted for.

inquiry into loss causation and loss causation need not be analyzed at the class certification stage."); *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27, 2017) (argument that plaintiff "has not shown how he will disaggregate price inflation attributable to confounding events is not, as defendants would have it, an attack on his damages model, but is rather an inquiry into loss causation. Loss causation, however, need not be analyzed at the class certification stage"); *Hatamian*, 2016 WL 1042502, at *9 ("[D]isaggregate[ing] the price inflation attributable to particular theories of liability ... is appropriately understood as a loss causation analysis" and "Plaintiffs need not show loss causation as a condition of class certification."); *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2018 WL 1535156, *3 (N.D. Ill. Mar. 29, 2018) (rejecting Defendants' same argument "that [under *Comcast*] in order to attain class certification the plaintiffs must establish that their damages calculation will fully account for the impact of other intermediate disclosures and confounding information" because, "those are [merits] questions of loss causation or materiality," and citing *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015)); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 327 & n.135 (S.D.N.Y. 2016) (rejecting Defendants' same argument "that [under *Comcast*] plaintiffs must demonstrate the mechanism by which confounding information," as well as inflation attributable to each of the "two distinct schemes" plaintiffs alleged, "can be identified and disaggregated in order to determine the precise level of price inflation" because "[w]hether plaintiffs will be able to prove loss causation or damages are questions that go to the merits and not to whether common issues predominate").

In reaching these conclusions, courts have explained that Defendants' arguments concern not the identification of a common *methodology* for calculating damages—which Dr. Tabak has done—but the calculation of the *inputs* into that common model and the ultimate quantification of damages.  As courts have held, this is not required by *Comcast* and, in any event, raises only common issues of loss causation that will be decided by the trier of fact:

> Securities class-action plaintiffs widely employ the "out-of-pocket" method to calculate damages for a class of stockholders: damages are equal to the artificial inflation at time of purchase less that at time of sale. [Plaintiffs' expert], asked to propose a method of class-wide damages calculation, suggests the out-of-pocket method, for which he would employ an "event study" to determine the two price

inflation levels. ***Calculating the actual inputs into the out-of-pocket method by parsing and scaling the abnormal returns requires an analysis of "loss causation." Loss causation requires a plaintiff to examine how "inflation per share may have evolved over the class period." This can be accomplished via "constant dollar inflation," "constant percentage inflation," or other methods***. This stage does not require proof of loss causation for any individual class member, it merely requires establishing that a class-wide approach can be employed once (and if) the aggrieved side meets its burden. *See Halliburton, supra*, 563 U.S. at 809.

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 WL 229310, at *7 (N.D. Cal. Jan. 21, 2021); *see also In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 630 (N.D. Cal. 2018) ("Defendants attack not the methodology of the proposed model, but the fact that Plaintiffs' expert has not yet calculated damages for the Class's alleged claims.").

Defendants improperly conflate these two distinct concepts.  For instance, the amount of fraud-related inflation dissipated on an alleged corrective disclosure date is a question of loss causation—a question about the causal connection between the alleged misrepresentation and the decline in Oracle stock—that is common to the class and thus irrelevant to class certification. Critically, and as courts have repeatedly recognized, ***no matter how*** the trier of fact ultimately answers this question—whatever the jury concludes the appropriate quantum of inflation is—that answer can be plugged into the common "out-of-pocket" damages methodology described by Dr. Tabak and will return a class-wide computation of damages.[4]  The argument therefore does not

---

[4] For instance, if the trier of fact determines that Plaintiff has identified *no* fraud-related information that was a "substantial factor" in Oracle's stock price declines, then a zero is inputted into the model and returns zero damages.  Even then, the methodology returns a *class-wide* answer.  Defendants fail to grasp this point when they attempt to criticize Dr. Tabak for stating that nothing in the out-of-pocket *methodology* would change no matter how the jury decided questions of liability.  Opp. at 6.  As the *RH* court noted, the fact that the methodology need not change whatever the jury decides regarding liability "seems to reflect the fact that securities fraud cases fit Rule 23 'like a glove,' rather than suggest that class treatment is inappropriate." 2018 WL 4931543, at *3.  Of course, as Dr. Tabak explained (which Defendants

---

REPLY IN SUPPORT OF CLASS CERTIFICATION                                     9
Case No. 18-cv-04844-BLF

defeat predominance.  *See, e.g.*, *RH*, 2018 WL 4931543, at *4 (Defendants' "criticism prematurely addresses the quantification and allocation of damages, which courts consistently find are not appropriately raised at the class certification stage"); *Basile*, 2017 WL 3641591, at *14; *Marvell*, 2017 WL 4865559, at *5 (rejecting Defendants' same contention here that plaintiff's expert proposes only a "generic approach"); *SanDisk*, 2018 WL 4293336, at *2 ("The admittedly short portion of the [expert] report addressing this damages methodology, coupled with its general acceptance, suffices to show for class certification purposes that classwide 'damages can be determined without excessive difficulty and attributed to [the plaintiffs'] theory of liability.'") (citing *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017)); *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 139 (D.D.C. 2017) (rejecting defendants' criticism of plaintiffs' expert's "unadorned incantation that he might use an 'event study' sometime in the future to calculate damages"); *see also In re Acuity Brands, Inc. Sec. Litig.*, 2020 WL 5088092, at *10 (N.D. Ga. Aug. 25, 2020) ("Any argument that Plaintiffs' damages model fails to accurately account for inflation or is otherwise inaccurate is an argument that goes to the merits of Plaintiffs' claims regarding damages and is not a part of this Court's inquiry on Plaintiffs' Motion for Class Certification."); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) (argument that "Plaintiffs' model fails to account for factual evidence of varied inflation ... is an argument that goes to the merits" of loss causation and damages).

Defendants incorrectly assert that Dr. Tabak acknowledged his description of his proposed damages model was incomplete.  Opp. at 1, 4-7.  Defendants ignore and mischaracterize Dr. Tabak's report and testimony.  Defendants state, for example, that Dr. Tabak "candidly acknowledged [that] an event study is 'just one part' of a damages model." *Id*. at 1.  But Dr. Tabak never opined that the universally-accepted out-of-pocket method involves nothing more than an event study.  Dr. Tabak's report states that, once the event study is completed, the "abnormal return" is adjusted based on a review of "the alleged corrective disclosures, relevant

ignore), the *inputs* to the common methodology would change: "to the extent something solely applies to dismissed allegations and was a component of a price decline."  Tr. at 111:14-112:15.

negative events, and documents produced by Defendants in discovery to determine whether any of the information disclosed or negative events were unrelated to Plaintiff's claims.  If so, the effects of such unrelated, 'confounding' information and events would be removed." Rpt. at ¶61. Dr. Tabak made this clear at his deposition as well, though Defendants elide this portion of his testimony: "What I've determined is that an event study is a first step.  As I said in the report, we talked about, what was it, further adjustments, and I recognize that those adjustments are standard adjustments that are made all the time." Tr. at 133:18-24.  Again, numerous courts, including in this District, have repeatedly held that this articulation of the out-of-pocket methodology satisfies *Comcast*, and that these "further adjustments" concern loss causation.

Defendants also mischaracterize Dr. Tabak's testimony by, again, conflating his articulation of a common ***methodology*** for calculating damages with a determination of how to quantify the ***inputs*** to that common formula, which concerns issues of loss causation that are determined by a trier of fact on a full record and are common to the Class.  For instance, Defendants cite Dr. Tabak's testimony that he was not "retained to put together a damages model," but, again, Dr. Tabak: (1) identified his methodology, and (2) is not required to quantify the inputs into the out-of-pocket methodology he identified because doing so is an exercise in loss causation that can only be accomplished after full discovery on the merits and which, in all events, touches on exclusively ***common*** issues.  *See* Tr. at 85:4-87:19 (Dr. Tabak testifying that while he has explained the steps involved in the out of pocket methodology, he has not quantified the adjustment to the abnormal return that may be necessary as the second step of the methodology "because this is not a damages report" and he cannot do so "until I look at the actual numbers"); 103:16-18 (Dr. Tabak again explaining that he has not decided how he would quantify the inputs to the damages methodology, specifically adjustments to abnormal return, because "this is not a damages report" and, as such, he has not determined whether there is any non-fraud related decline on the alleged disclosure dates in the first instance).  Likewise, Defendants attempt to criticize Dr. Tabak for failing to explain at the class certification stage, and prior to the completion of fact discovery, precisely how artificial inflation entered Oracle stock as a matter of loss causation.  But they ignore Dr. Tabak's testimony that this is "a

1    damages question which can be dealt with whether the answer is yes or no," *i.e.*, how inflation

2    entered Oracle stock is a class-wide question with a class-wide answer. *Id.* at 92:24-94:4.

3          Purporting to quote Dr. Tabak's testimony, Defendants also assert that he stated he had

4    not determined "what 'inflation methodology' would apply to each disclosure." Opp. at 5.  But

5    the vague phrase "inflation methodology" appears nowhere in Dr. Tabak's testimony.  Instead,

6    the excerpted testimony largely consists of Defense counsel reading Dr. Tabak snippets from

7    documents he refused to allow Dr. Tabak to review and asking if he agreed with those snippets.

8    Tr. at 79:7-84:21; 91:4-95:23; 98:3-99:4; 106:17-108:4; 115:25-117:8.  As above, Dr. Tabak

9    explained that each of the issues raised by counsel concerned an assessment of the **inputs** to the

10   common damages methodology (*e.g.*, when inflation entered the stock, the extent to which

11   confounding company information—if any—will be disaggregated, etc.), are all loss causation

12   questions, and do not change the common methodology that will be employed in this case.

13         Finally, ignoring the mountain of authority rejecting the same arguments they make here,

14   Defendants rely on a handful of cases that are either inapposite or undermine their arguments.  In

15   *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ("*BP I*"), the plaintiffs

16   advanced two distinct damages theories for two subclasses.  For the "post-explosion" subclass,

17   the plaintiffs put forward the same out-of-pocket damages model at issue in this case—and the

18   court certified that subclass.  *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *13-14 (S.D. Tex.

19   May 20, 2014) ("*BP II*"), *aff'd sub nom. Ludlow*, 800 F.3d 674.  In contrast, for the "pre-

20   explosion" subclass, the plaintiffs **"expressly eschew[ed]"** the out-of-pocket model Plaintiff

21   proposes here, and instead sought consequential damages, which Plaintiff here does not seek.  *Id.*

22   at *11-12; *see also Hatamian*, 2016 WL 1042502, at *9 (distinguishing *BP I*, on the grounds that

23   "all of Plaintiffs' theories of liability rest upon a fraud-on-the-market theory of reliance," just as

24   they do in this case).  In endorsing the out-of-pocket method, the Fifth Circuit rejected the same

25   argument Defendants make here—namely, that the plaintiff must say how it will disaggregate

26   any confounding information in order to satisfy *Comcast*—noting that "it is in tension with

27   *Halliburton I*'s holding that no proof of loss causation is required at the class certification stage."

28   *Ludlow*, 800 F.3d at 687–88; *BP II*, 2014 WL 2112823, at *13 (also rejecting Defendants'

argument that Plaintiffs must "disaggregate[e] inflation by type of misrepresentation 'corrected'"); *Id.* at *17-18 n.14 ("[T]he 'out-of-pocket' measure of damages employed in most securities fraud cases is particularly consonant with the 'fraud-on-the-market' theory.").

In *Loritz v. Exide Technologies*, unlike this case, "Plaintiffs failed to set forth any model of damages (let alone one tied to their theory of liability)." 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015). In a subsequent decision, Judge Wilson distinguished his decision in *Loritz* and rejected the defendants' *Comcast* arguments because the plaintiff there proposed to use the same out-of-pocket model proposed by Dr. Tabak that "relies on an event study, where an expert estimates company-specific price movement relative to price movement caused by other factors such as overall market conditions or dissemination of other material but non-fraudulent information relayed by the company." *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 217 (C.D. Cal. 2019). As in *Snap*, Dr. Tabak's report gives specific examples of how this methodology would apply to the corrective disclosures at issue in this case. *See* Rpt. at ¶61 n. 43.

Defendants similarly rely on *Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corporation* but ignore that the expert there had failed to demonstrate that the stock at issue traded in an efficient market—an issue that Defendants do not contest here. In light of that failure, defendants' expert offered affirmative evidence that plaintiff would be ***unable*** to develop a methodology to measure inflation in the issuer's stock due to the alleged misstatement. 2018 WL 3861840, at *18-20 (N.D. Ohio Aug. 14, 2018). In *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014), plaintiffs sought to certify a single class comprised of different investors in myriad tranches of illiquid mortgage-backed securities. The plaintiffs did not even attempt to show that the market for these exotic securities was efficient and, therefore, "the market price of the Certificates may have been below the underlying securities' true value." *Id.* at 141-42. The expert failed to explain "how Plaintiffs' plan to engage in the difficult process of valuing the complex asset-backed securities that underlie the Certificates," in the absence of an efficient market. *Id.* at 142. This is simply not an issue here.

Finally, Defendants observe that this Court has "applied *Comcast* on multiple occasions," citing *AdTrader, Inc. v. Google LLC*, 2020 WL 1922579, at *15 (N.D. Cal. Mar. 24, 2020) and *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018).  Opp. at 4.  Neither of these cases are securities fraud class actions—where the out-of-pocket methodology is well-established—and, in any event, this Court granted class certification.  In *AdTrader*, this Court specifically observed that a plaintiff need not present a full damages calculation: "at this stage, Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability." *AdTrader*, 2020 WL 1922579, at *16 (quotations omitted).  Likewise in *Broomfield*, this Court explained, "[a]ny calculations put forth in the model need not be exact at the certification stage … the goal is merely to put forth a model that can show that the plaintiffs' damages stemmed from the defendant's actions that created the legal liability." *Broomfield*, 2018 WL 4952519, at *13.

## III.   CONCLUSION

For the foregoing reasons and those stated in its opening submission, Plaintiff requests that the Court certify this action as a class action pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiff as Class Representative, and appoint Lead Counsel as Class Counsel.

Dated: February 9, 2022

/s/    *John Rizio-Hamilton*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
MARK LEBOVITCH (*pro hac vice*)
(markl@blbglaw.com)
JOHN RIZIO-HAMILTON (*pro hac vice*)
(johnr@blbglaw.com)
ABE ALEXANDER (*pro hac vice*)
(abe.alexander@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 188574)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars
Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3472

*Counsel for Lead Plaintiff*
*Union Asset Management Holding AG and*
*Lead Counsel for the Class*