# Exhibit F

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: SANDISK LLC SECURITIES LITIGATION | ) Case No. 3:15-cv-01455-VC<br>)<br>) Hon. Vince Chhabria<br>)<br>)<br>)<br>) |

# EXPERT REPORT OF CHAD COFFMAN, CFA

**January 19, 2018**

supports the conclusion that SanDisk Common Stock traded in an efficient market throughout the Class Period.

### K. ADDITIONAL FACTOR 5: OPTIONS

76. In addition to the factors analyzed above, there was also considerable option trading in SanDisk Common Stock during the Class Period.[75] Academic articles have demonstrated that options written on existing assets can improve efficiency by permitting an expansion of the contingencies that are covered by the market.[76] Empirical analysis has shown that option listings are associated with a decrease in bid-ask spread and increase in quoted depth, trading volume, trading frequency, and transaction size – an overall improvement of the market quality of the underlying stocks.[77] Thus, this factor also supports that SanDisk common stock traded in an efficient market throughout the Class Period.

## VIII. DAMAGES

77. Although I have not been asked to calculate class-wide damages in this action, which I understand will be subject to further discovery, it is clear that damages in this matter can be calculated using a methodology common to the class. Indeed, the standard and well-settled formula for assessing damages for each class member under Section 10(b) is the "out-of-pocket" method which measures damages as the artificial inflation per share at the time of purchase less the artificial inflation at the time of sale (or, if the share is not sold before full revelation of the

---

[75] For instance, according to Bloomberg, there were 933,031 SanDisk Common Stock put contracts and 1,195,079 SanDisk Common Stock call contracts that traded during the Class Period.

[76] Stephen A. Ross, *Options and Efficiency*, 90 Q. J. ECON. 75 (1976).

[77] Raman Kumar, Atulya Sarin & Kuldeep Shastri, The Impact of Options Trading on the Market Quality of the Underlying Security: An Empirical Analysis, 53 J. FIN. 717 (1998).

Case 3:15-cv-01455-VC Document 113-7 Filed 01/12/18 Page 4 of 5

fraud, the artificial inflation at the time of purchase, subject to the PSLRA's "90-day lookback" provision, a formulaic limit on damages that also can be applied class-wide).[78]

78. The methodology and evidence for establishing the artificial inflation per share in the market price on each day during the Class Period is also common to the class and can be measured class-wide. In particular, as is standard procedure in Section 10(b) cases, the most common methodology to quantify artificial inflation is to perform an event study that measures price reactions to disclosures that revealed the relevant truth concealed by the alleged material omissions and/or misrepresentations. This analysis, and the evidence supporting it, would be common to the class. Damages for any individual class member could then be calculated formulaically based upon information collected in the claims process (i.e., the investor's purchase and sale history for the security, which is routinely available from brokerage statements and/or other documents that provide evidence of securities transactions). Accordingly, although I have not been asked to calculate class-wide damages, based on my expertise and experience in dozens of similar matters and understanding the nature of the claims in this case, I conclude that damages in this action are subject to a well-settled, common methodology that can be applied to the class as a whole.

## IX. CONCLUSION

79. In sum, every factor analyzed supports my opinion that SanDisk Common Stock traded in an efficient market during the Class Period. Furthermore, class-wide damages in this matter can be calculated using a common methodology.

[78] Specifically, the PSLRA states: "…in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *See*, Private Securities Litigation Reform Act of 1995, dated December 22, 1995, 737, 748-49.

80. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 19, 2018

Chad Coffman