PAGES 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE BETH LABSON FREEMAN

IN RE:
ORACLE SECURITIES LITIGATION

CASE NO. 18-CV-04844 BLF

SAN JOSE, CALIFORNIA
THURSDAY, MARCH 24, 2022

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:00 A.M. - 9:24 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**
BERNSTEIN, LITOWITZ, BERGER & GROSSMAN
1251 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10020
**BY: JOHN RIZIO-HAMILTON, ESQUIRE**

**FOR DEFENDANT**
MORRISON & FOERSTER LLP
425 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94105-2482
**BY: JORDAN ETH, ESQUIRE**

***TRANSCRIBED BY: JOAN MARIE COLUMBINI, CSR #5435, RPR***
***RETIRED OFFICIAL COURT REPORTER, USDC***

THURSDAY, MARCH 24, 2022 9:00 A.M.

---OOO---

ELECTRONICALLY RECORDED PROCEEDINGS

**THE CLERK:** CALLING CASE 18-4844, CITY OF SUNRISE FIREFIGHTERS PENSION FUND VERSUS ORACLE CORPORATION, ET AL.

COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES? AND IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANT?

**MR. RIZIO-HAMILTON:** GOOD MORNING, YOUR HONOR. THIS IS JOHN RIZIO-HAMILTON FROM BERNSTEIN, LITOWITZ, BERGER & GROSSMAN FOR THE LEAD PLAINTIFF.

**THE COURT:** GOOD MORNING.

**MR. RIZIO-HAMILTON:** GOOD MORNING.

**MR. ETH:** GOOD MORNING, YOUR HONOR. JORDAN ETH FOR THE DEFENDANTS, AND IN THE GALLERY IS JAMES MAROULIS, SENIOR MANAGING COUNSEL FOR ORACLE.

**THE COURT:** GOOD. GOOD MORNING, AND NICE TO SEE YOU ALL. WE'RE INCHING BACK TO THE COURTROOM, BUT WE HAVEN'T DONE CIVIL MOTIONS YET, BUT WE'LL SEE WHEN THAT HAPPENS.

ALL RIGHT. THIS MOTION FOR CLASS CERTIFICATION IS ACTUALLY VERY STRAIGHTFORWARD. THERE'S ONLY ONE ISSUE IN CONTENTION REGARDING THE DAMAGES MODEL. AND I WANT TO BE JUST CANDID WITH YOU. I THOUGHT ABOUT TAKING IT OFF CALENDAR BECAUSE IT WAS SO STRAIGHTFORWARD, AND YOU'VE BOTH BEEN DOWN THIS ROAD BEFORE.

I ACTUALLY WANTED TO SEE YOU, AND I THOUGHT WE COULD -- I WANTED TO DISCUSS THE CASE A LITTLE BIT WITH YOU. SO THANK YOU FOR APPEARING.

I ACTUALLY THINK THAT THE PLAINTIFFS HAVE SUBMITTED SUFFICIENT EVIDENCE ON THE DAMAGES MODEL UNDER *COMCAST* TO BE -- IT IS ALIGNED WITH THEIR THEORY OF LIABILITY, AND *COMCAST* ISN'T -- I DIDN'T THINK *COMCAST* AND ITS PROGENY WERE PARTICULARLY RELEVANT TO THIS DISCUSSION.

MR. ETH, I'M SURE YOU'VE BRIEFED THIS A NUMBER OF TIMES ON SIMILAR ISSUES. MR. RIZIO-HAMILTON GAVE ME A LIST LONGER THAN MY ARM OF CASES. I THANK YOU. THAT'S (INDISCERNIBLE), AND I DID SPOT CHECK THOSE AND DO AGREE WITH HIM THAT IT SEEMS TO BE VIRTUALLY THE RULE THAT THIS BAREBONES KIND OF SHOWING IS SUFFICIENT AT THIS STAGE.

SO WITH THAT IN MIND, MR. ETH, IT IS YOUR -- I'M SORRY. MR. RIZIO-HAMILTON, IT'S YOUR MOTION FOR CLASS CERT, SO LET ME START WITH YOU.

**MR. RIZIO-HAMILTON:** THANK YOU SO MUCH, YOUR HONOR. GIVEN THOSE REMARKS, I'LL BE PRETTY BRIEF. I THINK THAT THERE'S JUST ONE OR TWO THINGS I WANT TO MENTION --

**THE COURT:** OKAY.

**MR. RIZIO-HAMILTON:** -- THAT WEREN'T HIGHLIGHTED, I THINK, AS MUCH AS THEY COULD HAVE BEEN IN THE BRIEFING, BECAUSE THEY STEM FROM THE TRANSCRIPT, IN PART, OF DR. TABAK'S DEPOSITION, AND I JUST WANT TO POINT OUT. AS YOUR HONOR IS

AWARE, DR. TABAK HAS IDENTIFIED THE OUT-OF-POCKET DAMAGES METHODOLOGY TO MEASURE DAMAGES, AND THAT, AS THE CASES SHOW, IS REALLY THE UNIVERSALLY ACCEPTED METHOD FOR CALCULATING DAMAGES IN THESE CASES.

THE KEY FIRST STEP IN THIS METHODOLOGY IS TO EMPLOY AN EVENT STUDY TO ISOLATE THE DECLINE IN ORACLE STOCK PRICE ON THE ALLEGED DISCLOSURE DATES RELATED TO COMPANY-SPECIFIC NEWS, AS (INDISCERNIBLE) MARKET OR INDUSTRY EFFECTS.

AND DR. TABAK HAS, IN FACT, PROVIDED DETAILS CONCERNING THE EVENT STUDY THAT HE WOULD USE TO MODEL DAMAGES IN THIS CASE. SO WHAT HE SUBMITTED HERE HAS REALLY GONE, AT LEAST SOMEWHAT, BEYOND JUST A BAREBONES RECITATION OF THE METHODOLOGY ITSELF.

AND, IN PARTICULAR, HE PROVIDED HIS MARKET MODEL, WHICH IS SUMMARIZED IN EXHIBIT 8B TO HIS REPORT. AND HE TESTIFIED AT PAGE 143 OF HIS DEPOSITION THAT THAT'S THE SAME MARKET MODEL, AND, THEREFORE, THE SAME EVENT STUDY THAT YOU WOULD USE TO MODEL DAMAGES IN THIS CASE.

SO HE'S DONE MORE THAN JUST SAY THAT HE WOULD USE THE OUT-OF-POCKET METHODOLOGY AND WOULD USE AN EVENTS STUDY. HE'S ACTUALLY PROVIDED THE MARKET MODEL AND THE EVENT STUDY THAT HE WOULD USE IN THIS --

**THE COURT:** SO, MR. RIZIO-HAMILTON, I WOULD ONLY SAY THAT SINCE YOU HAVE BEEN DOWN THIS ROAD SO MANY TIMES BEFORE, I'M SURPRISED YOU DIDN'T PREP HIM A LITTLE BIT MORE FOR HIS

DEPOSITION SO HE DIDN'T MAKE THOSE BROAD STATEMENTS THAT WALKED RIGHT INTO MR. ETH'S LINE OF SIGHT.

YOU KNOW, HE'S AN EXPERT. YOU HAVE TO REVEAL EVERYTHING HE SAYS IS -- CAN BE REVEALED, BUT THERE WERE SOME UNFORTUNATE COMMENTS IN THE DEPOSITION, I WOULD SAY.

**MR. RIZIO-HAMILTON:** I UNDERSTAND.

**THE COURT:** (INDISCERNIBLE.)

**MR. RIZIO-HAMILTON:** I UNDERSTAND WHAT YOU'RE SAYING. YOU KNOW, THE WAY I THINK ABOUT THAT IS THERE WAS A HANG UP OVER THE WORD "MODEL."

**THE COURT:** SURE.

**MR. RIZIO-HAMILTON:** WHEN DR. TABAK WAS TALKING ABOUT A MODEL, HE'S TALKING ABOUT QUANTIFYING AND FINALIZING THE ACTUAL MODEL, INCLUDING THE DISAGGREGATION ANALYSIS.

**THE COURT:** YEAH.

**MR. RIZIO-HAMILTON:** WHICH HE'S NOT REQUIRED TO DO AT THIS STAGE, AND, FRANKLY, HE HASN'T BEEN ASKED TO DO YET BECAUSE HE CAN'T DO THAT BEFORE THE CLOSE OF DISCOVERY.

**THE COURT:** SURE.

**MR. RIZIO-HAMILTON:** WHAT HE HAS DONE IS WHAT HE'S REQUIRED TO DO AT THIS STAGE, WHICH IS IDENTIFY THE METHODOLOGY THAT HE WOULD USE AS THE OUT-OF-POCKET METHODOLOGY SUPPORTED BY AN EVENT STUDY. HE'S PROVIDED THE MARKET MODEL HE WOULD USE IN THE EVENT STUDY TO ACTUALLY CALCULATE DAMAGES. AND HE HAS PROVIDED A DESCRIPTION OF THE TECHNIQUES THAT HE WOULD USE TO

DISAGGREGATE, SET FORTH IN PARAGRAPH 61 AND FOOTNOTE 43 OF HIS REPORT.

AND AS COURTS REALLY UNIVERSALLY HOLD, THAT SUFFICES AT THE CLASS CERTIFICATION STAGE TO SATISFY THE RELATIVELY MODEST *COMCAST* REQUIREMENT THAT THE DAMAGES METHODOLOGY ALIGN WITH THE THEORY OF LIABILITY.

THAT'S REALLY ALL I HAVE TO ADD BEYOND THE AUTHORITY AND THE PAPERS.

**THE COURT:** OKAY.

**MR. RIZIO-HAMILTON:** SO THANK YOU VERY MUCH FOR THE OPPORTUNITY TO SPEAK, YOUR HONOR.

**THE COURT:** OKAY. MR. ETH.

**MR. ETH:** YES. THANK YOU, YOUR HONOR.

AND I AGREE WITH MUCH OF WHAT THE COURT HAS SAID. I THINK THIS IS STRAIGHTFORWARD. I THINK IT IS *COMCAST*. WHILE WE HAVE NOT BRIEFED THIS SIMILAR ISSUE, WHAT WE DO HAVE HERE IS WHAT THE COURT SAID WERE UNFORTUNATE WORDS. AND I THINK IT'S VERY IMPORTANT TO KEEP IN MIND THAT *COMCAST* SAYS THE PLAINTIFFS HAVE A BURDEN. THE BURDEN IS NOT MINIMAL. IT'S NOT MINOR. THE COURT HAS TO ENGAGE IN A RIGOROUS REVIEW.

AND *COMCAST* SAYS PLAINTIFFS HAVE TO PROVIDE EVIDENTIARY PROOF, AND WHAT WE ACTUALLY HAVE IS EVIDENTIARY PROOF THAT THEY DO NOT NOW AT CLASS CERTIFICATION HAVE A MODEL.

WE HAVE DR. TABAK, WHO'S BEEN AT THIS FOR 26 YEARS WHO LISTS 243 REPORTS IN HIS INSTANCES OF TESTIMONY. HE KNOWS

WHAT A MODEL IS. AND HE SAID, I WASN'T EVEN ASKED TO DO A MODEL, I WASN'T EVEN ASKED. WE HAVE COUNSEL THIS MORNING CONFIRMING THAT HE HAS NOT DONE A MODEL. HE SAID FLAT OUT -- COUNSEL JUST SAID, THIS IS WHAT HE WOULD USE, THIS IS WHAT HE WILL DO, HE NEEDS DISCOVERY.

WELL, *COMCAST* SAYS NOW IS THE TIME, CLASS CERTIFICATION, AND IT'S NOT WHAT WOULD YOU DO DOWN THE ROAD, WHAT COULD YOU DO, WHAT MIGHT HAPPEN. TABAK ISN'T EVEN THE DAMAGES EXPERT. HE SAID HE HOPES HE GETS HIRED. HE LITERALLY SAID THAT, I HOPE I GET HIRED, BUT I'M NOT THE DAMAGES EXPERT.

SO THIS IDEA THAT YOU COULD JUST SAY, WELL, THIS IS THE WAY IT WORKS IN THESE CASES AND DOWN THE ROAD. IN TERMS OF IT BEING --

**THE COURT:** MR. ETH --

**MR. ETH:** YES.

**THE COURT:** -- LET'S REALLY ROLL IT BACK TO WHAT *COMCAST* SAYS. *COMCAST* WAS LOOKING AT A MASSIVE CASE INVOLVING INITIALLY FOUR THEORIES OF LIABILITY. THE DAMAGES REPORT WAS DONE ASSUMING ALL FOUR OF THEM. THREE OF THEM WENT BY THE BY. AND WITH ONE LEFT THE EXPERT COULD NOT SAY THAT THE MODEL WAS THE DAMAGES FOR THAT THEORY OF LIABILITY.

AND I READ *COMCAST* AS SAYING TO LITIGANTS, TO PLAINTIFFS, YOU HAVE TO BE ABLE TO DRAW A STRAIGHT LINE FROM YOUR THEORY TO YOUR DAMAGES. I DON'T SEE *COMCAST* AS REQUIRING PLAINTIFFS TO PENCIL OUT THE AMOUNT OF DAMAGES.

SO HERE WE HAVE A SINGLE THEORY OF LIABILITY. IT'S THE SAME THEORY OF LIABILITY YOU GET IN EVERY ONE OF THESE CASES. THE LINE IS AS STRAIGHT AS COULD BE, AND THE DETAILS AREN'T THERE.

SO I SUPPOSE, IF YOU REALLY WANTED, I COULD REQUIRE YOU TO PRODUCE ALL THAT DISCOVERY ON AN EXPEDITED BASIS SO THAT WE COULD REDO THIS MOTION. AND IF ORACLE WINS THIS CASE, THEN MR. RIZIO-HAMILTON'S FIRM IS LEFT HOLDING THE BAG ON THE EXPERT FEES. BUT IF YOU SETTLE OR YOU LOSE THE CASE, THEN YOU GET TO PAY FOR ALL OF IT.

I MEAN, IT DOESN'T MATTER TO ME. WE CAN SPEND ANOTHER FOUR MONTHS DOING THE DISCOVERY. IS THAT WHAT YOU'RE ASKING FOR?

**MR. ETH:** NO, THAT IS NOT WHAT I'M ASKING FOR.

**THE COURT:** YOU WANT ME TO DENY CLASS CERT, WHICH I'D DO WITHOUT PREJUDICE TO BRINGING BACK A MODEL?

**MR. ETH:** WELL --

**THE COURT:** THAT'S WHERE I WOULD END UP, AND THEN I WOULD EXPEDITE DISCOVERY. SO YOU WOULD HAVE TO GET YOUR DUMP TRUCKS READY TO SEND THE STUFF OVER.

**MR. ETH:** SO, YOUR HONOR, FIRST OF ALL, I DON'T THINK THAT DISCOVERY HAS ANYTHING TO DO WITH IT. WHAT I DO THINK IS IMPORTANT IS THAT IN THIS CASE, THE COURT ACTUALLY REJECTED MOST OF THE THEORIES.

**THE COURT:** I DID.

**MR. ETH:** SO WHAT'S -- WHAT THE PLAINTIFF HASN'T DONE IS, WELL, IF YOU REJECTED THE THEORIES, HOW IS THIS GOING TO WORK, WHAT KIND OF MODEL DO YOU HAVE? MAYBE THEY WILL HAVE A MODEL.

**THE COURT:** SO I'M NOT SURE -- LET ME BACK UP ON THAT BECAUSE --

**MR. ETH:** SURE.

**THE COURT:** -- THIS IS, AS I CALLED IT, A NARROW OMISSIONS THEORY IS WHAT'S LEFT.

**MR. ETH:** CORRECT, YOUR HONOR.

**THE COURT:** BUT OF THE 50 ALLEGED FALSE STATEMENTS -- AND THIS WAS PAINFUL, I'LL NEVER FORGET ALL THE WORK WE PUT INTO THIS. I MEAN, I PUT IT THROUGH A FINE SIEVE AND CAME OUT WITH 11 FALSE STATEMENTS THAT I WOULDN'T LET GET PAST THE PLEADING STAGE. AND MUCH TO YOUR CREDIT, MR. ETH, IN REALLY HIGHLIGHTING ALL OF THAT, AND IT WAS -- YOU KNOW, IT WAS NOT ULTIMATELY COMPLETELY SUCCESSFUL, BUT LARGELY.

SO WE HAVE AN OMISSIONS THEORY, AND THE MEASURE OF DAMAGES FOR THAT THEORY IS NOT -- I'M NOT AWARE THAT IT'S ANY DIFFERENT THAN THE MEASURE OF DAMAGES FOR THE OVERTLY FALSE STATEMENTS OF -- AS OPPOSED TO AN OMISSIONS THEORY OF FAILURE TO REVEAL CERTAIN INFORMATION THAT WAS KNOWN. THAT'S THE DIFFERENCE THAT I SEE HERE, IS THAT, YES, IT'S A DIFFERENT THEORY, BUT IT'S NOT, IT DOESN'T LEAD TO A DIFFERENT DAMAGES CALCULATION OR MODEL.

**MR. ETH:** YOUR HONOR, I AGREE THAT IT'S NOT ABOUT QUANTIFYING THE DAMAGES AT THIS POINT.

**THE COURT:** OKAY.

**MR. ETH:** IT'S CERTAINLY NOT ABOUT QUANTIFYING.

THE QUESTION HERE IS HOW IS THIS MODEL, WHICH WE DON'T HAVE, GOING TO ELIMINATE EFFECTS OF THOSE THEORIES THAT THE COURT HAS REJECTED. SO THAT'S -- THAT'S WHAT I'M GETTING AT.

I DID ALSO WANT TO ADDRESS JUST A COUPLE OF OTHER THINGS.

THERE ARE -- PLAINTIFFS SAY IN THEIR PAPERS THAT WE HAVE CITED NO CASE THAT GOES OUR WAY ON THIS. THAT'S JUST NOT -- THAT'S JUST NOT TRUE. WE'VE CITED FOUR CASES.

AND IN THE PLAINTIFF'S ATTEMPT TO DISTINGUISH THOSE CASES, THEY REALLY JUST POINT OUT THAT THEY ACTUALLY DID GO OUR WAY. FOR EXAMPLE, THE *BP* CASE, THE COURT SAID, WE'LL GIVE YOU ANOTHER CHANCE, PLAINTIFFS, BUT THAT'S BECAUSE *COMCAST* CAME DOWN IN THE MIDDLE OF THE BRIEFING.

OR IN THE CASE FROM OHIO, THE PLAINTIFFS POINT OUT, WELL, EFFICIENCY WAS IMPROVED THERE. WELL, THAT WAS ANOTHER PROBLEM. THAT WAS A SEPARATE PROBLEM. AND SO ON. SO THERE ARE CASES.

AND THE PLAINTIFFS -- I THINK WHAT'S REALLY GOING ON HERE IS THAT WHAT THE PLAINTIFFS ARE ADVOCATING IS WHAT THEY HAVE IN THEIR FOOTNOTE 2, WHICH IS, WELL, IT'S A SECURITIES

CLASS ACTION, THESE THINGS -- YOU KNOW, DOESN'T REALLY APPLY; YOU KNOW, *COMCAST* DOESN'T REALLY APPLY HERE. AND THEY SAY COURTS WIDELY RECOGNIZE THAT. AND WHAT THEY CITE IS A THIRD CIRCUIT CASE INVOLVING CONSUMER CLASS ACTIONS, DOESN'T SAY A WORD ABOUT SECURITIES CLASS ACTIONS.

SO WHAT WE'RE BOTTOM LINE SAYING IS, IF IT APPLIES -- IF THE PLAINTIFFS CAN SAY, WELL, IT'S A SECURITIES CASE, AND EVEN THOUGH OUR EXPERT WASN'T ASKED TO DO A DAMAGES MODEL, THIS IS GOOD ENOUGH, THEN *COMCAST* MAY NOT APPLY IN THESE CASES, AND IT MAY JUST BE ALL THEY HAVE TO DO IS SAY EVENT STUDY, THIS IS THE WAY IT GOES, AND THEY'RE OFF TO THE RACES.

SO WHAT WE'RE SAYING IS, WHEN THEIR OWN EXPERT SAYS, I WASN'T EVEN ASKED TO DO IT --

**THE COURT:** YEAH.

**MR. ETH:** -- NEEDS TO BE HELD TO THE PROOF, NEEDS TO BE HELD TO THE PROOF. THAT'S WHY I AGREED WITH THE COURT'S OPENING STATEMENT THAT IT'S PRETTY STRAIGHTFORWARD.

**THE COURT:** ALL RIGHT. MR. RIZIO-HAMILTON, LET ME HEAR YOUR FINAL RESPONSE.

**MR. RIZIO-HAMILTON:** THE FINAL POINT I WOULD MAKE, YOUR HONOR, ARE THE CASES THAT WE'VE CITED IN THE BRIEFING REALLY DO APPLY VERY MUCH TO OMISSION THEORIES, AS WELL AS MISSTATEMENTS THEORIES. IF YOU LOOK AT THE *SYMANTEC* CASE, THE *RH* CASE, THE *SEAWORLD* CASE, THEY TALK ABOUT THIS OUT-OF-POCKET METHODOLOGY BEING THE STANDARD METHODOLOGY TO QUANTIFY

ARTIFICIAL INFLATION RELATED TO ALLEGED MISSTATEMENTS AND/OR OMISSIONS. THEY DON'T DISTINGUISH BETWEEN WHETHER THE THEORY IS ONE OF AN AFFIRMATIVE MISSTATEMENT AN OMISSION MISSTATEMENT.

AND I'M NOT AWARE OF ANY CASE, FRANKLY, THAT EVER HAS REJECTED THE OUT-OF-POCKET DAMAGES METHODOLOGY SUPPORTED BY AN EVENT STUDY ON THE GROUND THAT IT WAS APPLIED TO AN OMISSION. THAT'S POINT ONE.

POINT TWO, AS TO THE CASES THAT MR. ETH REFERENCED THAT THEY CITED, YOU KNOW, WE VERY MUCH STAND BY HOW WE DISTINGUISH THEM IN OUR BRIEF. THE ONLY POINT I'LL MAKE IN RESPONSE TO WHAT HE SAID IS THAT THE FAILING TO SHOW MARKET EFFICIENCY IS FATAL TO AN OUT-OF-POCKET DAMAGES METHODOLOGY BECAUSE IT RELIES, BY DEFINITION, ON THE EXISTENCE OF AN EFFICIENT MARKET --

**THE COURT:** YES.

**MR. RIZIO-HAMILTON:** -- BECAUSE IT IS ONLY IN AN EFFICIENT MARKET WHERE ONE CAN SHOW THAT ALLEGEDLY WITHHELD INFORMATION DISTORTED A STOCK PRICE. AND THAT'S WHY THE FAILURE OF MARKET EFFICIENCY THERE NATURALLY RESULTED IN THE FAILURE OF THE DAMAGES MODEL IN THAT CASE.

OTHER THAN THAT, I WILL SAY, THE LAST POINT IS THAT DR. TABAK HAS DONE WHAT HE'S REQUIRED TO DO AT THIS STAGE. HE'S IDENTIFIED THE METHODOLOGY THAT HE WOULD USE IN HIS REPORT. HE HAS PROVIDED HIS MARKET MODEL, AND HE HAS TESTIFIED THAT THAT IS THE SAME MARKET MODEL AND EVENT STUDY THAT HE

WOULD USE TO CALCULATE DAMAGES, AND HE'S GOING TO BE OUR DAMAGES EXPERT. I MEAN, I'LL SAY THAT NOW. YOU KNOW, WE HAVEN'T ASKED HIM TO CALCULATE DAMAGES IN THIS CASE AND DO A FULL LOSS CAUSATION ANALYSIS BECAUSE WE'RE NOT AT THAT STAGE OF THE CASE YET, BUT --

**THE COURT:** RIGHT.

**MR. RIZIO-HAMILTON:** BUT HE'S OUR GUY. SO...

**THE COURT:** OKAY. ALL RIGHT. WELL, THANK YOU.

I'M INCLINED TO GRANT THIS MOTION TO CERTIFY THE CLASS, AND I'LL TAKE A LOOK AT THE -- I MEAN, I READ YOUR CASES, MR. ETH. I'LL LOOK AT THEM AGAIN JUST TO SEE IF I THINK THAT IT'S WORTH SENDING THE PLAINTIFFS BACK TO THE DRAWING BOARD TO EXPAND ON DR. TABAK'S REPORT.

I WANTED TO -- I WANTED TO JUST SPEND A COUPLE MINUTES TALKING TO YOU ABOUT WHAT IS NEXT. OBVIOUSLY, IF I DON'T CERTIFY CLASS, THEN WE'RE DONE, AND THE CASE WILL SETTLE IN ABOUT ONE MINUTE, BUT -- OR WILL BE APPEALED, I SUPPOSE.

BUT IF I DO CERTIFY THE CLASS, WHICH I'M INCLINED TO DO, WE GET INTO THE REALM OF A CASE THAT IS LESS COMMON, ALMOST TO BEING UNCOMMON, IN SECURITIES CASES, AND WE ARE -- FROM MY STANDPOINT, I'M HEADED TO SUMMARY JUDGMENT MOTIONS. AND FROM YOUR STANDPOINT, I WOULD IMAGINE YOU HAVE SIGNIFICANT DISCOVERY THAT NEEDS TO BE DONE.

SO MR. RIZIO-HAMILTON, WHY DON'T YOU JUST LAY THAT OUT FOR ME A LITTLE BIT?

**MR. RIZIO-HAMILTON:** SURE. SO I THINK THERE WERE A COUPLE OF MILESTONES THAT HAVE OCCURRED, AND THERE ARE A COUPLE OF MEDIUM TERM MILESTONES YET TO OCCUR.

SO AS YOUR HONOR MAY RECALL, YOUR HONOR ORDERED US TO ENGAGE IN MEDIATION PRIOR TO THE HEARING, WHICH ACTUALLY WAS A FANTASTIC CASE MANAGEMENT TOOL, I THOUGHT. I WISH OTHER -- MORE JUDGES DID THAT. BUT WE DID, AND NOW THAT WE'VE HAD THIS HEARING --

**THE COURT:** SO LET ME JUST BACK UP. DID YOU HAVE A PRIVATE MEDIATOR OR MAGISTRATE JUDGE?

**MR. RIZIO-HAMILTON:** WE HAD A PRIVATE MEDIATOR.

**THE COURT:** OKAY. AND THAT'S SOMEONE WHO IS EFFECTIVE FOR YOU?

**MR. RIZIO-HAMILTON:** I THINK SO. JORDAN, DO YOU AGREE?

**MR. ETH:** YEAH, ABSOLUTELY. THIS IS SOMEONE WHO IS VERY EXPERIENCED IN THIS AREA WHO BOTH MR. RIZIO-HAMILTON AND I HAVE WORKED WITH BEFORE.

**THE COURT:** GOOD. OKAY.

**MR. RIZIO-HAMILTON:** YOU KNOW, I CAN SAY FROM THE LEAD PLAINTIFF SIDE, WE'RE CONTINUING TO SPEAK WITH HIM AND ENGAGE IN A DIALOGUE WITH HIM. WE'LL SEE WHERE THAT GOES.

I THINK THE DATE FOR SUBSTANTIAL COMPLETION OF DOCUMENT PRODUCTION IS APPROXIMATELY THE END OF APRIL, AND I THINK THAT'S THE NEXT SIGNIFICANT MILESTONE IN TERMS OF CASE

MANAGEMENT.

**THE COURT:** OKAY.

**MR. RIZIO-HAMILTON:** AND ONCE THAT HAS OCCURRED, DEPOSITIONS WILL BEGIN. AND IF MEMORY SERVES BACK, DISCOVERY IS SCHEDULED TO BE COMPLETE APPROXIMATELY MID SEPTEMBER, AND BOTH SIDES HAVE BEGUN TO NOTICE DEPOSITIONS.

I THINK THAT, YOU KNOW, WE'VE HAD SOME DISAGREEMENTS OVER DISCOVERY, BUT, FORTUNATELY, THROUGH MEET AND CONFER PROCESS, WE'VE BEEN ABLE TO RESOLVE THEM WITHOUT COURT INTERVENTION.

**THE COURT:** GOOD.

**MR. RIZIO-HAMILTON:** AND WE'LL CONTINUE TO WORK COOPERATIVELY IN THAT FASHION.

AND I THINK YOU'RE RIGHT, YOUR HONOR, THAT AFTER THE COMPLETION OF FACT AND THEN EXPERT DISCOVERY, THE NEXT MAJOR MARK WOULD BE THE SUMMARY JUDGMENT PHASE.

**THE COURT:** OKAY. SO WHAT IS THE NEXT -- WELL, LET ME BACK UP.

YOUR MEDIATOR WILL CONTINUE TO HAVE AN OPEN DOOR AND DIALOGUE WITH YOU, PROBABLY REACHING OUT AT VARIOUS TIMES TO YOU. BUT I WOULD LIKE TO ENSURE THAT THERE IS A -- A NEXT POINT WHEN I ORDER YOU BACK TO MEDIATION. AND IT'S NOT CLEAR TO ME WHETHER THAT'S BEST DONE BEFORE YOU FILE -- YOU WRITE YOUR SUMMARY JUDGMENT MOTIONS OR AFTER.

SO WHAT'S YOUR THINKING ON THAT?

**MR. RIZIO-HAMILTON:** MY INITIAL THOUGHT IS THAT THERE'S A PRETTY LONG STRETCH OF TIME BETWEEN NOW AND WHEN SUMMARY JUDGMENT WOULD BE BRIEFED.

**THE COURT:** YES.

**MR. RIZIO-HAMILTON:** SO I WOULD IMAGINE THAT IT WOULD PROBABLY -- AND AS THE RECORD TAKES SHAPE, THE DOCUMENTARY RECORD, AS DEPOSITIONS GO, I THINK THE PARTIES, YOU KNOW, SORT OF SEE WHERE THE CASE IS LIKELY HEADED, AND SO I THINK IT PROBABLY WOULD MAKE SENSE, FROM MY PERSPECTIVE, TO HAVE ANOTHER MEDIATION SESSION BEFORE SUMMARY JUDGMENT WAS BRIEFED, BUT I DON'T KNOW IF MR. ETH FEELS DIFFERENTLY.

**MR. ETH:** YOUR HONOR, I THINK THE MEDIATOR IS STILL ENGAGED, AND THE PARTIES HAVE BEEN THROUGH THIS, AND WE CAN DO THAT, BUT I ALSO UNDERSTAND THE COURT'S INTEREST IN HAVING SOMETHING FIRMLY SET. SO THAT WILL BE FINE IF THE COURT WANTS TO SET A DATE BY WHICH FURTHER MEDIATION WILL OCCUR. EITHER WAY IS FINE. EITHER WAY IS FINE.

**THE COURT:** OKAY. WELL, I THINK IT MAKES SENSE, GIVEN THIS LONG TIME PERIOD, FOR THERE TO BE A REQUIREMENT THAT YOU HAVE A FURTHER FORMAL MEDIATION SESSION BEFORE YOU COMMENCE BRIEFING ON SUMMARY JUDGMENT.

NOW, I DON'T THINK PLAINTIFFS WILL BE FILING SUMMARY JUDGMENT. THAT WOULD BE A LITTLE BIT UNUSUAL, BUT NOTHING PROHIBITS IT.

MR. ETH, THAT REALLY IS YOU. I DON'T KNOW WHETHER

YOU'VE AGREED TO A BRIEFING SCHEDULE ON SUMMARY JUDGMENT THAT IS MORE THAN THE 35 DAYS THAT THE RULES ALLOW. I HOPE YOU HAVE BECAUSE THESE ARE BIG MOTIONS.

SO I THINK WHAT I'D LIKE YOU TO DO IS LOOK AT YOUR SCHEDULES, TALK BETWEEN YOURSELVES, AND SEND ME A STIP AND PROPOSED ORDER ON THE LAST DAY TO COMPLETE THE COURT-ORDERED MEDIATION BEFORE SUMMARY JUDGMENT.

I JUST DON'T WANT TO ARBITRARILY PICK A DATE. AND SO IF WE'RE LOOKING FOR EFFICIENCY, I WANT TO BACK IT UP SO YOU CAN PRESERVE THE COST OF BRIEFING A MOTION IF MEDIATION COULD BE SUCCESSFUL.

SO I THINK YOU TWO COULD LOOK AT CALENDARS. IT MIGHT TAW FEW MINUTES, AND YOU'D KNOW THE DATE. JUST SUBMIT THAT TO ME, AND THAT WILL BECOME THE ORDER FOR THE MEMBERS MEDIATION.

**MR. ETH:** YOUR HONOR, JUST TO BE CLEAR, THAT WOULD BE FOR THE MEDIATION TO TAKE PLACE BEFORE THE FILING OF A SUMMARY JUDGMENT MOTION?

**THE COURT:** THAT'S WHAT I'M LOOKING AT, YES.

**MR. ETH:** OKAY, OKAY. FINE. JUST WANTED TO --

**THE COURT:** AND THEN IF THAT DOESN'T DO ANYTHING, THEN I'D BE LOOKING AT -- I WOULD BE SENDING YOU BACK AFTER I RULE ON SUMMARY JUDGMENT. THEN AT THAT POINT I'D BE LOOKING AT WHETHER YOU WANT TO STICK WITH YOUR MEDIATOR OR COME INTO THE MAGISTRATE JUDGE.

IN THESE SPECIALIZED CASES, I THINK THE MEDIATORS WHO

YOU KNOW AND HAVE WORKED WITH HAVE A REALLY SPECIAL PLACE IN UNDERSTANDING THE SCOPE OF THE DAMAGES THAT CAN BE LOOKED AT, HOW THE TRIALS PLAY OUT. THERE AREN'T VERY MANY OF THEM, SO -- AND I DON'T KNOW WHAT YOUR OWN STOREHOUSE OF EXPERIENCE IS IN TRYING THESE CASES TO VERDICT. I KNOW THAT LITIGATORS CAN SPEND A CAREER AND HAVE EXACTLY ZERO THAT GO TO TRIAL, SO...

**MR. ETH:** WELL, I'VE DONE ONE IN THE NORTHERN DISTRICT, AND I'VE ANOTHER ONE SCHEDULED FOR ABOUT TWO WEEKS FROM NOW --

**THE COURT:** OH, FOR GOODNESS SAKES.

**MR. ETH:** -- IN ANOTHER DISTRICT.

**THE COURT:** OKAY. THAT'S GOOD.

**MR. ETH:** SO IT DOES HAPPEN.

**THE COURT:** ALL RIGHT.

**MR. ETH:** BUT IT IS RARE. IT IS RARE.

**THE COURT:** WELL, I'M LOOKING AT YOUR GRAY HAIR, MR. ETH, AND SAYING THAT'S A LONG CAREER THAT'S --

**MR. ETH:** SOMETHING HAD TO CAUSE IT, RIGHT?

**THE COURT:** THERE YOU GO.

**MR. ETH:** BESIDES MY CHILDREN.

**THE COURT:** YES, EQUAL PARTS.

ALL RIGHT. WELL, THAT'S GOOD. THAT'S HELPFUL. I WILL GET THIS ORDER OUT. YOU MAKE MY JOB EASY ON NOT CONTESTING ALL THE OTHER ASPECTS OF IT, SO THAT WON'T TAKE ME AS LONG. BUT I THINK YOU CAN BE PRETTY CERTAIN THAT I'M GOING

TO CERTIFY THE CLASS, SO YOU SHOULD KEEP WORKING ON THE CASE WITH YOUR DEADLINES. ALL RIGHT?

AND THANK YOU FOR THIS. THE CASE MANAGEMENT PART WAS HELPFUL, AND I DON'T NEED TO CALL A SPECIAL CASE MANAGEMENT CONFERENCE. SO IF ANYTHING COMES UP FOR CASE MANAGEMENT, OF COURSE JUST REACH OUT, OTHERWISE, THE DISCOVERY ISSUES WILL GO TO THE MANAGEMENT JUDGE.

**MR. RIZIO-HAMILTON:** THANK YOU, YOUR HONOR.

**MR. ETH:** THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. THANK YOU BOTH.

(PROCEEDINGS ADJOURNED AT 9:24 A.M.)

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

jmcolumbini

JOAN MARIE COLUMBINI

MARCH 31, 2022