United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ORACLE CORPORATION, et al.,<br><br>Defendants. | Case No.  18-cv-04844-BLF<br><br>**ORDER GRANTING LEAD PLAINTIFF UNION ASSET MANAGEMENT HOLDING AG'S MOTION FOR CLASS CERTIFICATION**<br><br>[Re:  ECF No. 107] |

Before the Court is Lead Plaintiff Union Asset Management Holding AG's ("Union") motion for class certification.  This is a securities fraud class action against Defendant Oracle Corporation and its management (collectively, "Oracle") alleging violations of Sections 10b-5 and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  Union alleges that Oracle materially misrepresented its cloud business and its sales tactics related to its cloud products throughout the class period of May 10, 2017 through June 20, 2018 ("Class Period").  Union further alleges that the truth about Oracle's cloud business—including a faulty product and aggressive sales tactics seeking short-term revenue gains—was revealed through a series of disclosures between December 14, 2017 and June 19, 2018, causing Oracle's stock price to decline and damaging its shareholders who bought stock at artificially inflated prices.  Union brings its claims on behalf of all persons who purchased or acquired Oracle common stock during the Class Period (the "Class").

Union moves to certify the Class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). *See* Motion, ECF No. 107.  Oracle only challenges that Union has met one of the requirements of Rules 23(b)(3)—the predominance requirement.  *See* Opposition, ECF No. 112.  Oracle argues that Union's damages-related disclosures fail to meet the requirements of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because Union and its expert Dr. David Tabak do not disclose a damages model.

*See id.*  In response, Union argues that its disclosures related to its "out of pocket" damages model are sufficient under *Comcast*, and that Oracle prematurely seeks damages-related details that courts do not require at the class certification stage.  *See* Reply, ECF No. 113.

Based on the below reasoning, the Court hereby GRANTS Union's motion for class certification.

## I.    BACKGROUND

Oracle is a Delaware technology company with its headquarters in California.  *See* SAC, ECF No. 68 ¶ 32.  Oracle trades on the New York Stock Exchange under the ticker symbol "ORCL." *See id.*  Defendant Safra Catz was at all relevant times co-Chief Executive Officer at Oracle, and had been with the company in some capacity since 1999.  *See id.* ¶ 33.  Defendant Mark Hurd— who died in 2019 and is represented here by his estate—was at all relevant times the other co-Chief Executive Officer of Oracle.  *See id.* ¶ 34.  Defendant Lawrence J. Ellison was at all relevant times Chief Technology Officer of Oracle and Chairman of the company's Board of Directors.  *See id.* ¶ 35.  Defendant Ken Bond was at all relevant times Senior Vice President of Investor Relations at Oracle.  *See id.* ¶ 37.[1]  Lead Plaintiff Union is the parent holding company of Union Investment Group, a German company.  *See id.* ¶ 31.  Union allegedly purchased Oracle common stock during the Class Period and was damaged by Defendants' conduct.  *See id.*

In the Second Amended Complaint, Union alleged violations of (1) SEC Rule 10b-5 and (2) § 20(a) of the Exchange Act on the basis that Oracle and its management allegedly misrepresented the company's cloud business.  Union alleged that Oracle and its management publicly touted its cloud products and cloud-related revenue growth even though its products were deficient and sales of its cloud products were driven by aggressive sales tactics like product bundles and threats to audit existing clients that brought only short-term revenue.  Union identified fifty challenged statements in its Second Amended Complaint, which fell into several groups: (1) financial information filed with the SEC, which allegedly did not adequately disclose its

---

[1] Plaintiff also brought claims against Thomas Kurian—Oracle's President, Product Development from January 2015 to September 2018—and Steve Miranda—Oracle's Executive Vice President, Oracle Applications Product Development.  *See* SAC ¶¶ 36, 38.  The Court dismissed Plaintiff's claims against Kurian and Miranda with prejudice.  *See* Order, ECF No. 84.

United States District Court
Northern District of California

bundling practices; (2) statements about cloud revenue that allegedly did not identify Oracle's sales tactics; (3) statements about the drivers of cloud revenue growth with the same alleged issue; (4) statements about the technological strength of Oracle's cloud products that allegedly did not disclose the defects in those products; and (5) statements about the eventual deceleration in the growth of Oracle's cloud business, which allegedly did not disclose the impact of Oracle's short-sighted sales practices.  *See* Order, ECF No. 84 at 23–36; SAC, ECF No. 68.

Oracle moved to dismiss Union's Second Amended Complaint and the Court granted the motion in part.  *See* Motion to Dismiss, ECF No. 72; Order, ECF No. 84.  The Court dismissed Union's claims based on all but around thirteen of the fifty originally identified challenged statements.  *See* Order, ECF No. 84 at 35.  The Court allowed Union to proceed on a "narrow omission theory of securities fraud" based on Oracle's affirmative representations about cloud growth deceleration and the drivers of cloud growth.  *See id.* at 35–36.  The Court made clear that this theory was not based on Oracle's standalone duty to disclose its allegedly coercive sales tactics.  *See id.* at 36.  Rather, Union could proceed on a theory that in representing that the cloud growth and cloud growth deceleration were the result of circumstances other than Oracle's allegedly coercive sales tactics, Oracle "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]."  *See id.* (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

Union now moves for class certification, arguing that it meets all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).  *See* Motion, ECF No. 107.  Oracle declines to contest that Union has met most of these requirements.[2]  *See* Opposition, ECF No. 112 at 3.  Oracle's only challenge pertains to the predominance requirement of Rule 23(b)(3).  Oracle argues that Union has failed to show this requirement is met under *Comcast*, which requires a plaintiff to show a class-wide damages model consistent with its liability theory.  *See Comcast*, 569 U.S. at 34–35.  Oracle argues that Union and its expert Dr. Tabak have failed to provide *any* damages model.  *See*

---

[2] Oracle indicates that it may file a motion for decertification at a later stage as to the adequacy and typicality requirements of Rule 23(a) based on Union's recent document production.  *See* Opposition, ECF No. 112 at 3.

United States District Court
Northern District of California

Opposition, ECF No. 112 at 3–6. Oracle points to excerpts from Dr. Tabak's report and deposition indicating that he was not retained to provide a damages model and did not construct one. *See id.* In response, Union argues that its disclosures and Dr. Tabak's expert testimony regarding Union's "out of pocket" damages model is in line with what courts have approved for securities class actions. *See* Reply, ECF No. 113 at 5–6. Further, Union argues that Oracle reads *Comcast* too broadly and seeks details regarding the inputs or loss causation aspect of Union's damages model that courts do not require at the class certification stage. *See id.* at 7–14.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification. "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of [Rule] 23." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (internal quotation marks and citation omitted). "As a threshold matter, a class must first meet the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Id*.

"In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least one of the three different types of classes set forth in Rule 23(b)." *Id.* (internal quotation marks and citation omitted). Union seeks certification under Rule 23(b)(3). *See* Motion, ECF No. 107 at 13–20. A class may be certified under Rule 23(b)(3) only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Further, parties seeking to certify a Rule 23(b)(3) class must also demonstrate that the class is sufficiently ascertainable." *Datta v. Asset Recovery Sols., LLC*, No. 15–CV–00188–LHK, 2016 WL 1070666, at *2 (N.D. Cal. Mar. 18, 2016).

## III.   DISCUSSION

### A.   Rule 23(a) Requirements

Rule 23(a) requires a party seeking class certification to meet four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Stromberg*, 14 F.4th at 1066. Union argues that it meets each requirement of Rule 23(a). *See* Motion,

ECF No. 107 at 8–13.  Oracle does not dispute that Union has met any of Rule 23(a)'s requirements.  *See* Opposition, ECF No. 112 at 3.  Nonetheless, the Court must consider each of the requirements of Rule 23(a) in turn.

### 1. Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *Litty v. Merrill Lynch & Co.*, No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity is presumed where the plaintiff class contains forty or more members." *Id.*  However, a class as small as twenty properly may be certified when the other Rule 23 factors are satisfied.  *See Rannis v. Recchia*, 380 Fed.Appx. 646, 650–51 (9th Cir. 2010) (affirming district court's certification of 20-member class).

Union argues that the trading metrics for Oracle common stock during the Class Period support numerosity.  *See* Motion, ECF No. 107 at 9–10.  Over 3.6 billion shares of Oracle common stock were outstanding and over 4 billion shares traded during the Class Period, with an average weekly trading volume of 63.1 million shares.  *See id.*; SAC ¶ 479; Expert Report of David I. Tabak, ECF No. 107-11 ("Tabak Rpt.") ¶¶ 17–18.  At the start of the Class Period, over 1,900 institutions collectively held over 2.4 billion Oracle shares.  *See* Tabak Rpt. ¶ 25.  Union argues that courts have found numerosity given more modest trading metrics.  *See* Motion, ECF No. 107 at 10 (citing, *e.g.*, *In re LendingClub Secs. Litig.*, 282 F.Supp.3d 1171, 1178 (N.D. Cal. 2017)).  Oracle does not oppose class certification on numerosity grounds.  *See* Opposition, ECF No. 112 at 3.

The Court agrees with Union.  Oracle's trading metrics during the class period—which indicate at least thousands of class members—support that the class easily meets the numerosity requirement.  *See* SAC ¶ 479; Tabak Rpt. ¶¶ 17–18; *Litty*, 2015 WL 4698475, at *3; *LendingClub*, 282 F.Supp.3d at 1178 (finding numerosity requirement satisfied where defendants did not challenge certification on this basis and "plaintiff estimates that there are thousands of members in the proposed class based on the over 394 million outstanding shares of . . . common stock.").

Accordingly, the Court finds that Union has met the numerosity requirement of Rule 23(a).

### 2. Commonality

Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement cannot be satisfied simply with common questions, however. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id.* at 349–50 (internal quotation marks and citation omitted). The claim of common injury must depend on a common contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 359 (internal quotation marks, citation, and alterations omitted); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").

Union argues that the legal and factual questions common to the Class include "(i) whether Defendants made materially false and misleading statements and omissions during the Class Period; (ii) whether Defendants acted with scienter; (iii) whether Defendants' alleged misrepresentations and omissions were material; and (iv) whether Defendants' alleged misconduct caused investors to suffer damages." Motion, ECF No. 107 at 10. Oracle does not oppose class certification on commonality grounds. *See* Opposition, ECF No. 112 at 3.

The Court agrees with Union. As outlined in Union's class certification motion and its Second Amended Complaint, the core factual and legal issues underlying Union's allegations are the same for all members of the putative class. *See* Motion, ECF No. 107 at 10; SAC ¶ 480; *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011).

Accordingly, the Court finds that Union has met the commonality requirement of Rule 23(a).

### 3. Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105,

1   1124 (9th Cir. 2010) (internal quotation marks and citation omitted).   "The requirement is

2   permissive, such that representative claims are typical if they are reasonably coextensive with those

3   of absent class members; they need not be substantially identical."   *Just Film, Inc. v. Buono*,

4   847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted).   However, "[a]

5   court should not certify a class if there is a danger that absent class members will suffer if their

6   representative is preoccupied with defenses unique to it."   *Id*. (internal quotation marks and citation

7   omitted).

8   Union argues that it has met the typicality requirement because it purchased Oracle common

9   stock at artificially inflated prices due to Oracle's misrepresentations and omissions—just like all

10   other Class members.   *See* Motion, ECF No. 107 at 11–12.   Further, Union alleges that it was

11   damaged in the same way as the rest of the Class—through the corrective disclosure of concealed

12   facts.   *See id.*   Oracle does not oppose class certification on typicality grounds at this stage.   *See*

13   Opposition, ECF No. 112 at 3.   However, Oracle reserves that right to challenge Union's typicality

14   as a class representative at a later stage.   *See id.*

15   The Court agrees with Union.   Union's claims are reasonably coextensive with those of the

16   rest of the Class.   *See Just Film*, 847 F.3d at 1116.   Union claims that it bought Oracle common

17   stock at a price inflated by the same omissions as all other Class members.   And Union claims that

18   it was damaged based on the same corrective disclosures as the rest of the Class.   Accordingly,

19   Union has shown that its claims are typical of the Class.   *See Hodges*, 274 F.R.D. at 267 ("All

20   members of the putative class were allegedly injured by the same course of conduct, even if not to

21   the same degree."); *In re Silver Wheaton Corp. Secs. Litig.*, Nos. 2:15–cv–05146–CAS (JEMx),

22   2:15–CV–05173–CAS (JEMx), 2017 WL 2039171, at *7 (C.D. Cal. May 11, 2017).

23   Accordingly, Union has met the typicality requirement of Rule 23(a).

24   **4.  Adequacy**

25   To determine Union's adequacy as a class representative, the Court "must resolve two

26   questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

27   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

28   on behalf of the class?"   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal

United States District Court
Northern District of California

1    quotation marks and citation omitted).

2          Union argues that it meets both elements of the adequacy requirement—as does its counsel,

3    Bernstein Litowitz Berger & Grossman LLP ("BLB&G").  *See* Motion, ECF No. 107 at 12–13.

4    Union argues that neither it nor BLB&G have any conflicts of interest with other Class members.

5    *See id.* at 12.  Further, Union argues that as a large institutional investor, it understands its fiduciary

6    duties to the Class and is the kind of plaintiff Congress intended to serve as a class representative.

7    *See id.* (citing, *e.g.*, H.R. Rep. No. 104-369, at 32 (1995)).  Further, Union argues that it has worked

8    and will continue to work diligently to protect the Class's interests, pointing to its efforts so far in

9    this litigation in filing two Amended Complaint, opposing Oracle's motion to dismiss, negotiating

10   a protective order and discovery protocol, and engaging in discovery.  *See id.* at 13.  Union

11   additionally argues that BLB&G has substantial experience in securities class actions, including in

12   the Ninth Circuit.  *See id.*  Oracle does not oppose class certification on adequacy grounds at this

13   stage.  *See* Opposition, ECF No. 112 at 3.  However, Oracle reserves the right to challenge Union's

14   adequacy as a class representative at a later stage.  *See id.*

15         The Court agrees with Union.  Under the first element of the adequacy requirement, there is

16   no indication that there are any conflicts of interest between Union or BLB&G and any other Class

17   members.  *See Ellis*, 657 F.3d at 985.  Under the second element of the adequacy requirement, the

18   Court finds that Union has sufficiently shown that it and BLB&G will vigorously prosecute the

19   action on behalf of the Class.  *See id.*  Union has pointed to ample efforts both it and BLB&G have

20   made in prosecuting the action thus far.  *See* Motion, ECF No. 107 at 12–13.  Additionally, the fact

21   that Union is a large institutional investor and BLB&G is experienced with securities class actions

22   provides further support that they will adequately represent the Class.  *See* Rizio-Hamilton Decl.,

23   ECF No. 107-1, Exs. K, M; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands,*

24   *Inc.*, 244 F.3 1152, 1162 (9th Cir. 2001).

25         Accordingly, Union has met the adequacy requirement of Rule 23(a).

26   **B.    Rule 23(b)**

27         Union seeks class certification under Rule 23(b)(3).  *See* Motion, ECF No. 107 at 2.

28   Rule 23(b)(3) requires that (1) the class is ascertainable; (2) questions of law or fact common to

United States District Court
Northern District of California

class members predominate over any questions affecting only individual members; and (3) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Rule 23(b)(3); *Datta*, 2016 WL 1070666, at *2. Oracle only disputes that Union has met the predominance requirement of Rule 23(b)(3) because of the inadequacy of its damages-related disclosures under *Comcast*. Nonetheless, the Court will consider each of the requirements of Rule 23(b)(3) in turn.

### 1. Ascertainability

"[A] class is ascertainable if the class is defined with objective criteria and if it is administratively feasible to determine whether a particular individual is a member of the class." *Huynh v. Harasz*, No. 14–CV–02367–LHK, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015) (internal quotation marks and citation omitted).

Union's class definition is "all persons who purchased or acquired Oracle common stock from May 10, 2017 until June 20, 2018, inclusive[.]" Motion, ECF No. 107 at 2. The Court finds that the putative Class is ascertainable based on Union's class definition.

### 2. Predominance

Union argues that it has established predominance because (1) it is entitled to a presumption of reliance and (2) damages are to be calculated through the class-wide "out of pocket" method. *See* Motion, ECF No. 107 at 14–20. The Court will consider each issue in turn.

#### a. Reliance

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). A plaintiff is entitled to a presumption of reliance if he or she can demonstrate (1) that the alleged misrepresentations were publicly known; (2) that the stock traded in an efficient market; and (3) that the relevant transaction took place between the time misrepresentations were made and the time the truth was revealed. *See id.* at 811 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988)).

Regarding the first and third requirements for the presumption of reliance, Union points to its allegations that (1) Oracle made material misrepresentations in public statements and (2) Union purchased shares between the time the statements were made and the truth was revealed. *See*

United States District Court
Northern District of California

SAC ¶¶ 221–304, 455–72.  Regarding the second requirement, Union argues that Oracle common stock traded in an efficient market based on Dr. Tabak's analysis using the factors outlined in *Cammer v. Bloom*, 711 F.Supp. 1264 (D.N.J. 1989): (1) average weekly trading volume; (2) analyst coverage; (3) market makers and arbitrageurs; (4) SEC Form S-3 eligibility; and (5) price reaction to unexpected information.  *See Cammer*, 711 F.Supp. at 1286–87.  Union's evidence of an efficient market includes the following:

- Trading volume:  Dr. Tabak states that the market-maker-adjusted trading volume of Oracle common stock during the Class Period was 1.53 percent of outstanding shares on average with a median of 1.40 percent of outstanding shares.  *See* Tabak Rpt. ¶ 18.  Union argues that courts have found turnover in excess of one percent of outstanding shares to warrant a "substantial presumption" of market efficiency.  *See* Motion, ECF No. 107 at 16 (citing *In re Banc of Cal. Secs. Litig.*, 326 F.R.D. 640, 649 (C.D. Cal. 2018)).

- Analyst coverage:  Dr. Tabak states that the average number of analysts included in the Institutional Brokers' Estimate System consensus earnings estimate for Oracle for each month in the Class Period was approximately 31—placing Oracle in the 99th percentile of analyst coverage, *i.e.* "among the very top" of firms.  *See* Tabak Rpt. ¶ 21; *id.*, Ex. 4.  Further, Dr. Tabak states that a Thomson Reuters database search for Oracle analyst reports over the Class Period yields hundreds of results.  *See id.* ¶ 22.

- Market makers and arbitrageurs:  Dr. Tabak states that since Oracle traded on the New York Stock Exchange, it had a designated market maker.  *See* Tabak Rpt. ¶ 23.  Further, in support of there being significant arbitrageur activity in Oracle, Dr. Tabak opines that (1) 81.54 percent of institutional investors with a positive holding in one quarter reported a different holding figure in the next quarter during the Class Period and (2) there were significant changes in short interest.  *See id.* ¶¶ 25–28; *id.*, Exs. 5–6.

- SEC Form S-3 Eligibility:  Dr. Tabak states that during the Class Period, Oracle was eligible to register shares using SEC Form S-3, which required (1) a float with a value of at least $75 million and (2) that the issuer was current in its SEC filings.  *See* Tabak Rpt. ¶¶ 29–30.  Dr. Tabak states that Oracle's market capitalization exceeded $130 billion and Oracle was

United States District Court
Northern District of California

1    not delinquent in its SEC filings throughout the Class Period.  *See id.*

2    •    Price reaction to unexpected information:  Dr. Tabak conducted an event study and found

3         that during the Class Period, Oracle stock was more than forty times more likely to have a

4         statistically significant abnormal return on "earnings" announcement days" than on "non-

5         news days."  *See* Tabak Rpt. ¶¶ 31–44.

6    Union argues that Dr. Tabak's report supports that Oracle stock traded in an efficient market during

7    the Class Period.  *See* Motion, ECF No. 107 at 16–19.  Oracle does not dispute that Union has

8    established the elements necessary to show that it is entitled to a presumption of reliance.

9         The Court finds that Union is entitled to a presumption of reliance in support of

10   Rule 23(b)(3) predominance.  Union's claims are based on Oracle's public statements, and Union

11   alleges that it purchased Oracle stock during the Class Period.  *See* SAC ¶¶ 31, 221–304, 455–72.

12   Further, Union provides ample evidence through Dr. Tabak's expert report—including for each of

13   the *Cammer* factors—that Oracle traded in an efficient market throughout the Class Period.  *See*

14   Motion, ECF No. 107 at 14–19; Tabak Rpt. ¶¶ 13–56.  Accordingly, Union has established each

15   element necessary to show that it is entitled to the presumption of reliance.  *See Halliburton*,

16   563 U.S. at 810.  Oracle does not dispute that Union has established reliance.

17        Accordingly, the Court finds that Union has established reliance on the allegedly fraudulent

18   statements in support of Rule 23(b)(3) predominance.

19              **b.  Damages**

20        The parties dispute whether Union has disclosed a damages model sufficient to meet the

21   Rule 23(b)(3) predominance requirement.  "Rule 23(b)(3)'s predominance requirement takes into

22   account questions of damages."  *Just Film*, 847 F.3d at 1120.  The Supreme Court has held that

23   absent an appropriate methodology for measuring damages on a classwide basis, "[q]uestions of

24   individual damage calculations will inevitably overwhelm questions common to the class."

25   *Comcast*, 569 U.S. at 34.  "Calculations need not be exact."  *Id.* at 35.  In fact, the Ninth Circuit has

26   made clear both before and after *Comcast* that "'damage calculations alone cannot defeat

27   certification.'"  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama*

28   *v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).  However, "at the class-

certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast*, 569 U.S. at 35 (internal quotation marks and citation omitted). "If the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

Union points to the "out of pocket" damages model proposed by Dr. Tabak in support of Rule 23(b)(3) predominance. *See* Motion, ECF No. 107 at 19–20. Dr. Tabak opines that it is possible to formulate a common damages model based on the artificial inflation in Oracle's stock price resulting from the alleged fraud. *See* Tabak Report ¶ 57. However, Dr. Tabak states that he was not asked to determine the level of that inflation. *See id.* Dr. Tabak indicates that a damages model will be constructed to show damages attributable to "Defendants' stated reasons for cloud revenue growth and explanations for the subsequent slowing of that growth in light of alleged contrary factual circumstances known to them at the time"—quoting from the Court's order denying Oracle's motion to dismiss as to Union's "narrow omission theory." *See id.* ¶ 61 (quoting Order, ECF No. 84 at 54). Dr. Tabak opines that the level of artificial inflation based on the alleged fraud is the same for all investors, since all investors face the same market price at any given point in time. *See id.* ¶¶ 58, 62. Further, Dr. Tabak opines on techniques generally used to construct an "out of pocket" damages model. *See id.* ¶¶ 59–62. Dr. Tabak opines that the starting point is the artificial inflation at the time of purchase, which is determined through an event study on the dates of the alleged corrective disclosures. *See id.* ¶¶ 59–60. Dr. Tabak opines that adjustments are made if the amount of inflation declines for reasons other than a corrective disclosure. *See id.* Dr. Tabak opines that such "confounding" information is determined by valuations of business practices and reviews of analyst reports to determine the relative importance of different aspects of the alleged corrective disclosures. *See id.*; *see also id.* at 28 n.43.

Oracle argues that Dr. Tabak's damages-related disclosures are inadequate under *Comcast*. Oracle argues that *Comcast* held that a plaintiff must provide a damages model common to the class that measures only those damages attributable to a plaintiff's liability theory. *See* Opposition, ECF No. 112 at 4 (citing *Comcast*, 569 U.S. at 34–35). Oracle argues that Union fails to propose

United States District Court
Northern District of California

1    *any* damages model, so it has not met the *Comcast* requirements.  *See* Opposition, ECF No. 112

2    at 4.  Oracle points to deposition testimony from Dr. Tabak indicating that he was not retained to

3    propose a particular damages model and he did not do so.  *See id.* at 4–6 (citing Tabak Dep. Tr.

4    at 41:21–24, 72:5–11, 75:5–76:4, 94:5–10, 143:24–25, 153:25–154:18).   Oracle argues that Dr.

5    Tabak's "bare invocation" of an event study is insufficient, since he opines that an event study is

6    merely a starting point for a damages model that is followed by other steps he did not perform.  *See*

7    *id.* at 5–6 (citing Tabak Report ¶ 60; Tabak Dep. Tr. at 132:14–21, 133:12–24, 82:6–87:19,

8    138:8–143:25, 103:11–18).  Oracle argues that following *Comcast*, courts have disapproved of such

9    "generalized assertions about potential 'tools,' 'techniques,' and 'methodologies.'"  *See id.* at 8–9.

10   Further, Oracle argues that, similar to the plaintiffs in *Comcast*, Dr. Tabak failed to provide a

11   damages model that accounted for the narrow theory of liability the Court allowed Union to proceed

12   with in its order on Oracle's motion to dismiss.  *See id.* at 6.

13       In response, Union argues that courts have consistently found the "out of pocket" damages

14   methodology to satisfy *Comcast*'s "minimal burden" in securities fraud cases because it measures

15   damages attributable to Union's artificial inflation-based theory of fraud.  *See* Reply, ECF No. 113

16   at 4–6.    Further, Union argues that Dr. Tabak's description of the "out of pocket" damages

17   methodology is similar to damages-related expert disclosures approved by other courts.  *See id.* at 6;

18   Rizio-Hamilton Reply Decl., ECF No. 113-1, Exs. B–G.  Additionally, Union argues that Oracle's

19   objections pertain to loss causation, which courts decline to analyze at the class certification stage.

20   *See Reply*, ECF No. 113 at 7–8.  Oracle seeks disclosure of the inputs to the "out of pocket" damages

21   model, but Union argues this is for a later stage of the case and makes no difference to the class-

22   wide nature of the damages model.  *See id.* at 9–11.

23       The Court agrees with Union.  Union has adequately disclosed a class-wide damages model

24   under *Comcast*.   Dr. Tabak opines that a class-wide "out of pocket" damages model based on

25   omission-based price inflation is feasible in this case to show damages attributable to the "narrow

26   omission theory" of liability on which the Court allowed Union to proceed.  *See* Tabak Rpt.

27   ¶¶ 61–62; Order, ECF No. 84 at 35; *City of Miami Gen. Employees' & Sanitation Employees'*

28   *Retirement  Tr.  v.  RH,  Inc.*,  No. 17–cv–00554–YGR,  2018 WL 4931543,  at *3  (N.D. Cal.

United States District Court
Northern District of California

Oct. 11, 2018) ("As a preliminary matter, the out-of-pocket, or event study, method is the standard measurement of damages in Section 10(b) securities cases.").  Dr. Tabak additionally provides details on how such a model could be constructed, including by using an event study and removing the effects of confounding information and events.  *See* Tabak Rpt. ¶¶ 59–62.  The Court finds these disclosures to be sufficient to satisfy Rule 23(b)(3).  *City of Miami*, 2018 WL 4931543, at *3 ("[P]laintiffs' damages method is specifically tied to plaintiffs' claims under Section 10(b) and provides for damages equal to the inflation of [defendant's] stock price that is attributable to the alleged misstatements and omissions.").

*Comcast* does not require anything more than the damages-related evidence Union provides here in support of class certification.  In *Comcast*, the Supreme Court found that the plaintiffs in an antitrust class action had not adequately disclosed a class-wide damages model at the certification stage.  *See* 569 U.S. at 31.  Plaintiffs sought class certification on four separate theories of antitrust impact, and the district court only allowed Plaintiffs to proceed on one of the theories.  *See id.* Plaintiffs' damages theory relied solely on expert testimony that did not isolate damages resulting from any one theory of antitrust impact, so the Supreme Court found that Plaintiffs damages theory was not "consistent with [Plaintiffs'] liability case" and therefore insufficient under Rule 23(b)(3). *Id.* at 36.  In the present case, the Court limited Union to only a fraction of the alleged misstatements it originally identified in its Second Amended Complaint.  *See* Order, ECF No. 84 at 35.   But Dr. Tabak tied his damages disclosures to the narrowed liability theory.  *See* Tabak Rpt. ¶ 61.  And at this stage, Dr. Tabak's damages-related testimony—and his opinion that a class-wide damages model could be constructed—does not depend on the fifty challenged statements originally identified being at issue.  *See* Foster Decl., ECF No. 112-1, Ex. 1 at 111:14–113:4.  In contrast, in *Comcast*, the only supporting expert testimony "identifie[d] damages that are not the result of the wrong" and "assum[ed] a market that contained none of the four distortions that respondents attributed to petitioners' actions."  *See Comcast*, 569 U.S. at 36–37.  The Court does not consider *Comcast* to be analogous to the present case.  *See also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374 (3d Cir. 2015) ("A close reading . . . [of *Comcast*] makes it clear that the predominance analysis was specific to the antitrust claim at issue.").

United States District Court
Northern District of California

1         Other courts in this District agree regarding the sufficiency of damages disclosures like Dr.

2  Tabak's.  Since *Comcast*, several courts in this District have granted class certification in cases

3  involving expert disclosures similar to Dr. Tabak's, including disclosures that provide less detail.

4  *See, e.g.*, Rizio-Hamilton Reply Decl., ECF No. 113-1, Ex. F, Expert Report of Chad Coffman in *In*

5  *re: SanDisk LLC Secs. Litig.*, No. 3:15–cv–01455–VC (N.D. Cal.) ("Although I have not been asked

6  to calculate class-wide damages in this action, which I understand will be subject to further

7  discovery, it is clear that damages in this matter can be calculated using a methodology common to

8  the class.") (class certification granted in *In re SanDisk LLC Secs. Litig.*, No. 15–cv–01455–VC,

9  2018 WL 4293336, at *3 (N.D. Cal. Sep. 4, 2018)); Rizio-Hamilton Reply Decl., ECF No. 113-1,

10  Ex. B, Expert Report of Steven P. Feinstein in *In re RH Secs. Litig.*, No. 4:17–00554–YGR (N.D.

11  Cal.) ("It should be noted that I have not conducted a loss causation analysis at this time and reserve

12  the right to address such issues at the appropriate stage.") (class certification granted in *City of*

13  *Miami*, 2018 WL 4931543, at **3–4); Rizio-Hamilton Reply Decl., ECF No. 113-1, Ex. E, Expert

14  Report of Steven P. Feinstein in *Luna v. Marvell Tech. Grp., Ltd.*, No. 5:15–cv–05447–WHA (N.D.

15  Cal.) ("It should be noted that I have not conducted a loss causation analysis at this time and reserve

16  the right to address such issues at the appropriate stage.") (class certification granted in *Luna v.*

17  *Marvell Tech. Grp., Ltd.*, No. C 15–05447 WHA, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27,

18  2017) ("That lead plaintiff has not yet provided a loss-causation model does not defeat

19  predominance.")); *see also Hatamian v. Adv. Micro Devices, Inc.*, No. 14–cv–00226 YGR,

20  2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016) (finding similar expert disclosures sufficient to

21  disclose damages theory under *Comcast* at class certification stage in securities case).

22         The details about Union's damages theory Oracle seeks pertain to loss causation issues that

23  courts generally do not consider at the class certification stage.  *See Police Ret. Sys. of St. Louis v.*

24  *Granite Constr. Inc.*, No. C 19–04744 WHA, 2021 WL 229310, at *7 (N.D. Cal. Jan. 21, 2021)

25  ("Calculating the actual inputs into the out-of-pocket method by parsing and scaling the abnormal

26  returns requires an analysis of 'loss causation.'"); *City of Miami*, 2018 WL 4931543, at *4 (courts

27  consistently find that issues related to "quantification and allocation of damages" are "not

28  appropriately raised at the class certification stage"); *Hatamian*, 2016 WL 1042502, at *8 ("The

1    ultimate question, then, is not as Defendants suggest, but rather is whether 'damages could feasibly

2    and efficiently be calculated once the common liability questions are adjudicated.'") (quoting *Leyva*,

3    716 F.3d at 514); *City of Miami*, 2018 WL 4931543, at \*4.

4         Oracle argues that Union has not met its burden under *Comcast* because Dr. Tabak testified

5    that he did not propose *any* particular damages model.  *See* Opposition, ECF No. 112 at 4–6.  Oracle

6    points to testimony indicating that Dr. Tabak "certainly [doesn't] recall" putting together a damages

7    model (Foster Decl., ECF No. 112-1, Ex. 1 at 41:21–24); that he "doesn't propose a particular

8    damages model" (*id.* at 72:5–11); that his report is "not a damages report" (*id.* at 75:5–76:4); that it

9    is "possible" that "whatever damages model [he] come[s] up with" could be applied on a class-wide

10   basis (*id.* at 111:14–113:4); and that he has yet to perform various steps necessary to construct his

11   damages model (*id.* at 82:6–87:19, 86:25–87:19, 96:24–97:25, 103:11–18, 132:14–21, 133:12–24,

12   138:8–143:25); *see also* Tabak Rpt. ¶ 60.

13        While Dr. Tabak's statements are likely not what Union wanted to hear from its expert, the

14   Court does not find that these statements are sufficient to show that Union has failed to comply with

15   *Comcast*.  Dr. Tabak's deposition testimony does not erase the disclosures in his expert report that

16   identify a class-wide "out of pocket" damages model and provide details on how such a model could

17   be constructed—which other courts have found to be sufficient.  *See* Tabak Rpt. ¶¶ 57–62; *SanDisk*,

18   2018 WL 4293336, at \*3; *City of Miami*, 2018 WL 4931543, at \*\*3–4; *Marvell*, 2017 WL 4865559,

19   at \*6.  Further, Dr. Tabak's testimony appears to be in line with what he states in his expert report:

20   "While I have not yet been asked to determine the level of inflation in Oracle's stock prices, I have

21   been asked to provide an opinion on whether such analyses can be performed on a Class-wide basis

22   for its common stock."  *See* Tabak Rpt. ¶ 57.  Dr. Tabak's testimony indicating that he has yet to

23   put together a damages model appears to be further confirmation that specifics will be developed at

24   a later stage of the case.  Dr. Tabak could have made this clearer—for example, in Union's briefing,

25   they contrast their general "out of pocket" damages model with the more specific "inputs" and "loss

26   causation" details that they plan to disclose at a later stage.  *See* Reply, ECF No. 113 at 7–9.

27   Nonetheless, the Court finds Dr. Tabak's damages-related disclosures sufficient despite his

28   deposition testimony.

United States District Court
Northern District of California

1          Oracle argues that this Court has applied *Comcast* on multiple occasions, citing the *AdTrader*

2   and *Broomfield* cases.  *See* Opposition, ECF No. 112 at 4 (citing *AdTrader, Inc. v. Google LLC*,

3   No. 17–CV–07082–BLF, 2020 WL 1922579, at *15 (N.D. Cal. Mar. 24, 2020); *Broomfield v. Craft*

4   *Brew All., Inc.*, No. 17–CV–001027–BLF, 2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018)).

5   But these were cases in which the Court *granted* class certification—and the actions in question did

6   not involve securities fraud.  *See AdTrader*, 2020 WL 1922579, at **15–16 (finding in breach of

7   contract case that "'[a]t this stage, Plaintiffs need only show that such damages can be determined

8   without excessive difficulty and attributed to their theory of liability,' and Plaintiffs have proposed

9   as much here") (quoting *Just Film*, 847 F.3d at 1121); *Broomfield*, 2018 WL 4952519, at **16–18

10  (finding in false advertising case that "[n]one of [defendant's] arguments demonstrate that Plaintiffs'

11  damages model is not tied to their theory of liability or harm.").  Accordingly, the Court does not

12  see how these cases indicate that class certification should be denied here.

13         Otherwise, Oracle can only cite distinguishable, out-of-district cases in support of the

14  deficiency of Union's damages-related disclosures.  *See* Opposition, ECF No. 112 at 8–9.  Oracle's

15  only case from a Ninth Circuit district court is *Loritz v. Exide Techs.*, No. 2:13–CV–02607–SVW–E,

16  2015 WL 6790247 (C.D. Cal. July 21, 2015).  In that case, a Central District of California court

17  found that the plaintiffs had failed to tie their damages theory to their theory of liability in a securities

18  class action.  *See Loritz*, 2015 WL 6790247, at **22–23.  Plaintiffs failed to set forth any model of

19  damages in their class certification motion; defendants pointed to a variety of issues that would

20  make damages calculation "problematic" in opposition; and on reply, plaintiffs provided a rebuttal

21  expert report that generally described "some techniques" but failed to tie them to the facts of the

22  case.  *See id.* at *23.  While some facts are similar to the present case, the Court finds *Loritz*

23  distinguishable, since Oracle does not raise any of the specific damages-related complications the

24  defendants raised in *Loritz*, and the court cited damages-related concerns that do not appear to be at

25  issue here.  *See Loritz*, 2015 WL 6790247, at *22.  Further, Union points out that the judge in

26  *Loritz*—Central District of California Judge Wilson—distinguished *Loritz* in a later case where he

27  granted class certification given damages-related expert disclosures similar to Dr. Tabak's.  *See In*

28  *re Snap*, 334 F.R.D. 209, 217 (C.D. Cal. 2019).  Accordingly, *Loritz* does not support denying class

1    certification here.

2         Otherwise, Oracle points to *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,

3    No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018), where the court found an expert's

4    disclosures regarding an out-of-pocket damages theory based on price inflation were insufficient

5    under *Comcast*.  But that case involved testimony from defendants' expert affirmatively supporting

6    that a class-wide damages model could *not* be constructed—which is not at issue in the present case.

7    *See Ohio Pub. Emps.*, 2018 WL 3861840, at *19.  The *Fort Worth* case Oracle points to is similarly

8    distinguishable—it involved mortgage-backed securities sold in a market that was "not particularly

9    liquid," so the court found "it is unclear at this stage how Plaintiffs plan to engage in the difficult

10   process of valuing the complex asset-backed securities that underlie the Certificates."  *See Fort*

11   *Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014).  And unlike

12   the present case, the *In re BP* case Oracle cites involved "various theories of liability."  *See*

13   *In re BP P.L.C. Secs. Litig.*, No. 10–md–2185, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013)

14   ("Without a more complete explication of how Plaintiffs propose to use an event study to calculate

15   class members' damages, and how that event study will incorporate—and, if necessary, respond

16   to—the various theories of liability, the Court cannot certify this litigation for class action

17   treatment."); *see also Hatamian*, 2016 WL 1042502, at *9 (distinguishing *BP*).

18        Accordingly, the Court finds that Union has disclosed a damages model sufficient to meet

19   the Rule 23(b)(3) predominance requirement under *Comcast*.

20                                        * * *

21        Based on the above reasoning, the Court finds that Union has met the predominance

22   requirement of Rule 23(b)(3).

23

24        **3.  Superiority**

25        To satisfy Rule 23(b)(3), Union also must demonstrate that "a class action is superior to

26   other available methods for fairly and efficiently adjudicating the controversy."

27   Fed. R. Civ. P. 23(b)(3).  Rule 23 lists the following factors that Courts should consider in making

28   this determination:  "(A) the class members' interests in individually controlling the prosecution or

defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Union argues that each of the Rule 23(b)(3) factors demonstrates that a class action is a superior method of adjudicating its claims.  *See* Motion, ECF No. 107 at 20.  For the first factor, Union argues that the Class consists of a large number of geographically dispersed individuals with small damages—which renders individual litigation prohibitively expensive.  *See id.*  For the second factor, Union indicates that it is unaware of any other litigation asserting these claims on behalf of individual class members.  *See id.*  For the third factor, Union argues that it is undisputed that this venue is desirable and convenient, since it is "home" to Oracle.  *See id.*  For the fourth factor, Union argues that managing this case as a class action presents no unusual difficulties.  *See id.*  Oracle does not dispute that a class action is a superior method of adjudication here.

The Court agrees with Union.  The Rule 23(b)(3) factors support that a class action is a superior method of adjudicating Union's claims.  *See, e.g.*, *Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 376 (N.D. Cal. 2007).

Accordingly, Union has met the superiority requirement of Rule 23(b)(3).

\* \* \*

Given that Union has met all requirements for class certification under Rule 23(a) and Rule 23(b)(3), the Court GRANTS Union's motion for class certification.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Union's motion for class certification is GRANTED.

Dated:  May 9, 2022

BETH LABSON FREEMAN
United States District Judge