**BERNSTEIN LITOWITZ BERGER**
    **& GROSSMANN LLP**
MARK LEBOVITCH (admitted *pro hac vice*)
(markl@blbglaw.com)
JOHN RIZIO-HAMILTON (admitted *pro hac vice*)
(johnr@blbglaw.com)
ABE ALEXANDER (admitted *pro hac vice*)
(abe.alexander@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:     (212) 554-1400
Fax:     (212) 554-1444

        -and-

JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:     (310) 819-3470

*Counsel for Lead Plaintiff Union Asset*
*Management Holding AG and Lead Counsel*
*for the Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| *In re Oracle Corporation Securities Litigation* | <u>CLASS ACTION</u><br><br>Case No. 18-cv-04844-BLF<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Dept.:    Courtroom 3, 5th Floor<br>Judge:    Honorable Beth Labson Freeman<br><br>Hearing Date: September 15, 2022 |

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........................................................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.   PRELIMINARY STATEMENT ..................................................................................... 2

    A.   Factual Background ................................................................................ 4

    B.   The Parties' Settlement Negotiations ................................................... 7

II.  THE PROPOSED SETTLEMENT ................................................................................ 8

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 9

    A.   Standards Governing Approval of a Class Action Settlement ................................ 9

    B.   The Court "Will Likely Be Able to" Approve the Proposed
       Settlement Under Rule 23(e)(2) ........................................................... 11

       1.   Lead Plaintiff and Lead Counsel Have Adequately
          Represented the Class in This Action ...................................... 11

       2.   The Settlement Was Reached Through Extensive Arm's-
          Length Negotiations Between Experienced Counsel and with
          the Assistance of an Experienced Mediator ............................. 12

       3.   The Settlement Is Within the Range of Possible Approval ...................... 13

       4.   The Settlement Treats All Class Members Fairly ..................................... 15

       5.   Lead Plaintiff Has Identified All Agreements Made in
          Connection With the Settlement .............................................. 15

IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .................................. 16

V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE
    PROPOSED PLAN FOR PROVIDING NOTICE AND PROCESSING
    CLAIMS ........................................................................................................ 18

    A.   Retention of A.B. Data.......................................................................... 18

    B.   Proposed Notice Procedures ................................................................. 18

    C.   Claims Processing ................................................................................. 20

    D.   Estimated Notice and Administrative Costs ......................................... 21

VI.    ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES ........................................................................................ 21

VII.   PROPOSED SCHEDULE OF EVENTS ....................................................... 22

VIII.  CONCLUSION ............................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Headset Products Liability Litigation,*
654 F.3d 935 (9th Cir. 2011) ............................................. 11

*Burnthorne-Martinez v. Sephora USA, Inc.,*
2018 WL 5310833 (N.D. Cal. May 16, 2018) ........................................ 22

*Chavez v. Converse, Inc.,*
2020 WL 4047863 (N.D. Cal. July 8, 2020)........................................ 12

*Churchill Village., L.L.C. v. General Electric.,*
361 F.3d 566 (9th Cir. 2004) ........................................ 11

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992) ........................................ 9, 16

*Elliott v. Rolling Frito-Lay Sales, LP,*
2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ........................................ 9

*Hatamian v. Advanced Micro Devices, Inc.,*
Case No. 4:14-cv-00226-YGR, slip op. (N.D. Cal. Mar. 6, 2018), ECF No. 367 .................. 9

*Hefler v. Wells Fargo & Co.,*
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................ 16

*In re Heritage Bond Litig.,*
2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................ 9

*Huddlestun v. Harrison Glob., LLC,*
2018 WL 3752368 (S.D. Cal. Aug. 7, 2018) ........................................ 10

*In re LendingClub Sec. Litig.,*
2018 WL 1367336 (N.D. Cal. Mar. 16, 2018)........................................ 9

*In re Lenovo Adware Litig.,*
2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ........................................ 10

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234 (9th Cir. 1998) ........................................ 9

*Louie v. Kaiser Found. Health Plan, Inc.,*
2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ........................................ 13

*Luz Bautista-Perez v. Juul Labs, Inc.,*
2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ........................................ 10

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)......................................................................... 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................... 13, 22

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................................. 10

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ............................................................................................. 22

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 1991529 (N.D. Cal. June 30, 2007)................................................................... 20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ............................................................................................... 9

*Reynolds v. Direct Flow Med., Inc.*,
    2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) .................................................................... 13

*In re RH, Inc. Sec. Litig.*,
    2019 WL 5538215 (N.D. Cal. Oct. 25, 2019).................................................................... 20

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................................... 12

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................... 16

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .................................................................. 12

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................ 10

*Thomas v. MagnaChip Semiconductor Corp.*,
    2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).................................................................... 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................... 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ............................................................................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF UNOPPOSED MOTION**

<u>**FOR PRELIMINARY APPROVAL OF SETTLEMENT**</u>

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Lead Plaintiff Union Asset Management Holding AG ("Lead Plaintiff" or "Union") hereby moves for an order pursuant to Federal Rule 23(e)(1) that will: (1) preliminarily approve the proposed Settlement of this Action; (2) approve the form and manner of giving notice of the proposed Settlement to the Class; and (3) schedule a final settlement hearing before the Court to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be approved.[1]  Pursuant to Civil Local Rule 7-2 and Your Honor's Standing Order re Civil Cases, the motion is noticed for a hearing on September 15, 2022, at 9:00 a.m.  However, because the motion is unopposed, the Parties agree that it may be decided on the papers at this time and without a hearing—should the Court so desire.  This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties, the previous filings and orders in this case, and such other and further representations as may be made by counsel at any hearing on this matter.

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

1.      Whether the proposed $17.5 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval so that notice of the Settlement and its terms can be disseminated to members of the certified Class.

2.      Whether the proposed form and manner of providing notice to the Class of pendency of the Action as a class action and of the proposed Settlement should be approved.

3.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated June 23, 2022 (the "Stipulation"), attached as Exhibit 1.

Litigation Expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Lead Plaintiff is pleased to report that, after nearly four years of hard-fought litigation, it has negotiated an agreement to settle this class action in exchange for a payment of $17.5 million in cash for the benefit of the Class, subject to the Court's approval.  Lead Plaintiff respectfully submits this memorandum of points and authorities in support of its motion, pursuant to Federal Rule 23(e)(1), for preliminary approval of the proposed settlement (the "Settlement").  The motion is unopposed, and all Parties agree that it may be decided on the papers at this time, subject to the Court's approval.

The Settlement, which is set forth in the Stipulation attached hereto as Exhibit 1, was reached only after more than three and a half years of vigorous litigation and after several months of arms'-length negotiations between the Parties.  The Parties participated in a formal mediation session with Jed Melnick of JAMS, an experienced mediator of securities class action and other complex disputes, in February 2022.  The mediation included the submission and exchange of detailed mediation briefs. While no agreement was reached at that mediation, the Parties continued their settlement negotiations with the assistance of Mr. Melnick in the months following the mediation.   The proposed Settlement is based on a mediator's recommendation made by Mr. Melnick, which the Parties accepted.

Lead Plaintiff and Lead Counsel had a very well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached.  Prior to reaching the Settlement, Lead Plaintiff and Lead Counsel had conducted an extensive investigation of the claims at issue, including a detailed review of publicly available information, interviews with multiple former Oracle employees, and consultation with experts in accounting, damages, and loss causation.  Lead Counsel drafted an original complaint, the detailed Consolidated Complaint filed by Lead Plaintiff on March 2019, and—following the Court's initial dismissal of the Consolidated Complaint—the Amended Consolidated Complaint (the "Complaint") in February 2020.  Lead Plaintiff and Lead Counsel had litigated two rounds of Defendants' motion to dismiss the Consolidated Complaint and Complaint

through extensive briefing and oral argument.   After the Court sustained certain claims in the Complaint in its March 2021 order, the Parties conducted substantial document discovery.   In addition, Lead Plaintiff and Lead Counsel litigated a contested class certification motion, which included submitting an expert report from Lead Plaintiff's expert witness and defending his deposition and resulted in the Court certifying the proposed Class in full.

Lead Plaintiff submits that the Settlement represents a favorable result for the Class and ultimately should be approved by this Court, given the substantial risks, costs, and delays of continued litigation, including the significant risk that there might be no recovery for the Class following Defendants' anticipated motion for summary judgment, or after trial, or after the appeals that would be taken from any verdict for the Class at trial.   This Court had initially dismissed Lead Plaintiff's allegations in their entirety and ultimately sustained only a portion of the claims based on a narrow "omissions" theory—that is, that Defendants' statements about the drivers of Oracle's Cloud revenue during the Class Period were misleading when made due to the omission of certain facts related to Oracle's Cloud sales practices.   Lead Plaintiff would have faced serious risks at summary judgment and trial in prevailing on these claims.   Defendants would argue that Oracle's revenue was accurately reported, and that Oracle's revenue guidance was also accurate.   Defendants would also argue that—even if any alleged improper sales practices had occurred—they concerned only an immaterial fraction of Oracle's Cloud revenue, and thus were not a material driver of Oracle's Cloud sales growth or deceleration.   Defendants would argue that, to the extent Lead Plaintiff's allegations involved discounts to customers of Oracle's Cloud products, such discounts were proper and could not be the basis for a claim of fraud.

Defendants would have further argued that, even if any of their omissions rendered their statements false or misleading, they did not have any intent to mislead investors and Lead Plaintiff would not be able to prove their scienter.   Defendants argued vigorously that they believed their statements to be true and that they had no motive to commit fraud.   Specifically, they contended that Defendants did not benefit from the alleged fraud, including by pointing to the significant amounts

of stock buybacks Oracle initiated during the Class Period, and the significant amount of stock retained by multiple Defendants through the Class Period.

Finally, Defendants would argue that Lead Plaintiff could not establish loss causation because certain of the alleged disclosures did not correct earlier-reported Cloud revenue or growth rates, and that the vast majority of alleged corrective disclosures did not reference allegedly improper sales practices. Accordingly, Defendants would argue that most, if not all, of the stock price declines at issue in the Complaint could not be causally connected to the alleged misrepresentations. In light of these significant risks and the costs and delays of further litigation, Lead Plaintiff and Lead Counsel believe the $17.5 million Settlement represents a favorable resolution of the Action for the Class.

Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation and as Exhibit 2 hereto. The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (the "Settlement Hearing"); (ii) preliminarily approves the Settlement as fair, reasonable, and adequate to the Class, pending the final hearing; (iii) approves the form and method of disseminating notice to the Class; and (iv) establishes procedures and deadlines for Class Members to request exclusion from the Class, submit Claim Forms for payments from the Net Settlement Fund, and object to the Settlement, Plan of Allocation, and/or requested fees and expenses.

## A.    Factual Background

On August 10, 2018, a class action complaint, styled *City of Sunrise Firefighters' Pension Fund v. Oracle Corporation, et al.*, Civil Action No. 5:18-cv-04844-BLF (N.D. Cal.), was filed in the Court asserting violations of federal securities laws against Oracle and certain Individual Defendants. ECF No. 1. In accordance with the PSLRA, notice to the public was issued stating the deadline by which putative class members could move the Court for appointment as lead plaintiff.

Union moved for appointment as Lead Plaintiff on October 9, 2018. ECF No. 17. No other class member filed a motion for appointment as Lead Plaintiff. On December 21, 2018, the Court

entered an Order which appointed Union as Lead Plaintiff for the Action, and approved its selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the class.  ECF No. 22.

On March 8, 2019, Lead Plaintiff filed and served the Consolidated Class Action Complaint (ECF No. 40) asserting claims against Oracle and certain Individual Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants Safra A. Catz, Paula R. Hurd, as Trustee of the Hurd Family Trust, and Lawrence J. Ellison under Section 20(a) of the Exchange Act, and against Defendant Thomas Kurian under Section 20A of the Exchange Act (the "Consolidated Class Action Complaint").  Lead Plaintiff alleged that, during the Class Period, Defendants made materially false and misleading misstatements and omissions about the drivers of Oracle's Cloud revenue.  Lead Plaintiff further alleged that the price of Oracle's common stock was artificially inflated as a result of Defendants' allegedly false and misleading misstatements and omissions, and declined when the truth was revealed.

On April 19, 2019, Defendants filed and served a motion to dismiss the Consolidated Class Action Complaint, which included a request that the Court consider documents incorporated by reference in the Consolidated Complaint and take judicial notice of other documents submitted to the Court.  ECF No. 44.  On May 31, 2019, Lead Plaintiff filed and served a memorandum of law in opposition to Defendants' motion to dismiss and request for judicial notice.  ECF No. 48.  On June 21, 2019, Defendants filed and served reply papers in support of their motion.  ECF No. 49.

The Court held oral argument on Defendants' motion to dismiss the Consolidated Class Action Complaint on October 17, 2019.  ECF No. 56.  On December 17, 2019, the Court entered an Order which granted Defendants' motion to dismiss, with leave for Lead Plaintiff to file an amended complaint.  ECF No. 65.

On February 17, 2020, Lead Plaintiff filed and served the Amended Consolidated Class Action Complaint (ECF No. 68) (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, against the Individual

Defendants under Section 20(a) of the Exchange Act, and against Defendants Kurian, Catz, and Hurd under Section 20A of the Exchange Act.  ECF No. 68.

On April 23, 2020, Defendants filed and served a motion to dismiss the Complaint (ECF No. 72), which included a request that the Court consider documents incorporated by reference in the Complaint and take judicial notice of other documents submitted to the Court (ECF No. 73).  On June 30, 2020, Lead Plaintiff filed and served a memorandum of law in opposition to Defendants' motion to dismiss and request for judicial notice.  ECF No. 76.  On July 30, 2020, Defendants filed and served reply papers in support of their motion.  ECF No. 77.

The Court held oral argument on Defendants' motion to dismiss the Complaint on September 24, 2020.  ECF No. 80.  On March 22, 2021, the Court entered an Order which granted in part and denied in part Defendants' motion to dismiss.  ECF No. 84.  The Court's March 22, 2021 order dismissed claims against Defendants Thomas Kurian and Steve Miranda (the "Former Defendants") with prejudice.  *See id.*

Discovery in the Action commenced in April 2021.  Lead Plaintiff prepared and served initial disclosures, requests for production of documents, and interrogatories on Defendants, exchanged letters with Defendants concerning discovery issues, and served document subpoenas on third parties.  Defendants and third parties produced a total of over 330,000 pages of documents to Lead Plaintiff, and Lead Plaintiff produced nearly 200,000 pages of documents to Defendants in response to their requests.

On October 8, 2021, Lead Plaintiff filed its motion for class certification, which was accompanied by a report from Lead Plaintiff's expert, Dr. David Tabak, who opined that Oracle's common stock traded in an efficient market during the Class Period and that per-share damages could be measured for all Class Members using a common methodology.  ECF No. 107.  On December 9, 2021, Defendants filed their opposition to the class certification motion.  ECF No. 112. Defense counsel deposed Dr. Tabak in connection with the motion for class certification.  Lead Plaintiff filed its reply papers in further support of the class-certification motion on February 9, 2022. ECF No. 113.

On March 24, 2022, the Court held oral argument on Lead Plaintiff's motion for class certification. ECF No. 117. On May 9, 2022, the Court granted the motion, certifying the proposed Class, appointing Lead Plaintiff as Class Representative, and appointing BLB&G as Class Counsel. ECF No. 122. On May 23, 2022, Defendants filed a petition to appeal the Court's order certifying the Class to the Court of Appeals for the Ninth Circuit pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. ECF No. 123. Lead Plaintiff opposed this petition on June 2, 2022.

### B.    The Parties' Settlement Negotiations

While discovery was ongoing and Lead Plaintiff's class certification motion was pending before the Court, the Parties held a private mediation before JAMS Mediator Jed Melnick. On February 11, 2022, the Parties exchanged detailed mediation statements addressing both liability and damages issues accompanied by numerous exhibits. The mediation statements were also submitted to Mr. Melnick. A full-day mediation session with Mr. Melnick was held on February 18, 2022. At the mediation session, the Parties engaged in vigorous settlement negotiations with the assistance of Mr. Melnick, but were not able to reach an agreement.

Following certification of the Class in May 2022, and while the Parties' discovery efforts continued, the Parties continued to discuss the possible resolution of the Action through settlement, with the assistance of Mr. Melnick. After continued discussions with the Parties, Mr. Melnick issued a mediator's recommendation on May 26, 2022 that the Parties settle the Action for $17.5 million. The Parties accepted Mr. Melnick's recommendation on May 27, 2022. On June 2, 2022, the Parties entered into a Term Sheet setting forth the key terms of the Parties' agreement to settle and release all claims against Defendants in return for a cash payment of $17,500,000.

On June 23, 2022, the Parties entered into the Stipulation, which sets forth the terms and conditions of the Settlement. On the same day, Lead Plaintiff and Oracle also entered into a confidential Supplemental Agreement, which gives Oracle the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Oracle.

## II.   THE PROPOSED SETTLEMENT

The Settlement provides that Oracle will cause $17.5 million in cash to be paid into an interest-bearing escrow account.   The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court.   The Settlement is not a claims-made settlement: if the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted.   *See* Stipulation ¶ 16.

The Settlement Class Is The Same As The Certified Class.   The Settlement will apply to the same Class that was certified by the Court in its May 9, 2022 Order (ECF No. 122).   The Class includes all persons and entities who purchased or otherwise acquired the common stock of Oracle during the Class Period, and who were damaged thereby.   *See* Stipulation ¶ 1(i).  Excluded from the Class are "(i) Defendants; (ii) Immediate Family Members of the Individual Defendants; (iii) any person who was an Officer or director of Oracle during the Class Period; (iv) any firm or entity in which any Defendant has or had a controlling interest; (v) parents or subsidiaries of Oracle; (vi) the legal representatives, agents, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such; and (vii) any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court" *Id.*

The Release Is Appropriate.   In exchange for the payment of the Settlement Amount, Class Members will release the "Released Plaintiffs' Claims."   Stipulation ¶ 1(rr).   The Settlement's release provision is tailored to the Class's claims and the Class certified by the Court.   Specifically, the release is limited to (1) the actual claims asserted in the Complaint; or (2) unasserted claims that could have been brought but only if they arise out of or are based upon "the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Action" and "relate to the purchase, sale, acquisition, or retention of Oracle common stock during the Class Period" (or claims that relate to the conduct of the Action itself).   *Id.*   In addition, the

Settlement's release provision does not release the claims asserted in *In re Oracle Stockholder Derivative Action*, No. 5:19-cv-00764-BLF (N.D. Cal.), the pending derivative action purportedly on behalf of Oracle against certain current and former Oracle offices and directors (including the Individual Defendants here) arising out the same factual predicate. *Id.*

The proposed release is, therefore, tailored to the conduct at issue in this Action and is consistent with release provisions approved by courts in this District. *See, e.g.*, *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (approving release in securities class action that was "anchored to 'the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period'"); *Hatamian v. Advanced Micro Devices, Inc.*, Case No. 4:14-cv-00226-YGR, slip op. at 7 (N.D. Cal. Mar. 6, 2018), ECF No. 367 (approving similar release); *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations).

## III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of a Class Action Settlement

In the Ninth Circuit, there is a strong judicial policy in favor of voluntarily settlement of litigation, and particularly so in class actions. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits."). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. A district court's review of a proposed class action settlement is a two-step process. <u>First</u>, the court

performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). <u>Second</u>, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2); *see also Huddlestun v. Harrison Glob., LLC*, 2018 WL 3752368, at *2 (S.D. Cal. Aug. 7, 2018).

A court grants preliminary approval to authorize notice to the Class upon a finding that it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing. Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law that provided that courts should grant preliminary approval after considering whether the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See, e.g., Luz Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022); *In re Lenovo Adware Litig.*, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

At final approval, the Court will have to determine whether the proposed Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,* 895 F.3d 597, 610 (9th Cir. 2018); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015). In considering whether a settlement is fair, reasonable, and adequate at final approval, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Court also considers the factors identified by the Ninth Circuit in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946-47 (9th Cir. 2011), many of which overlap with the Rule 23(e) factors.  Each of these factors supports approval of the Settlement and, thus, preliminary approval is appropriate here.

**B.      The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class in This Action**

In determining whether to approve a class-action settlement, the Court should first consider whether Lead Plaintiff and Lead Counsel "have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis includes "the nature and amount of discovery" undertaken in the litigation.  *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

The Court in certifying the Class found that Lead Plaintiff and Lead Counsel had no conflicts of interest with the Class and that they had sufficiently shown that they would vigorously prosecute the action on behalf of the Class.  ECF No. 122, at 8.  Lead Plaintiff and Lead Counsel have vigorously conducted this litigation for nearly four years, including by: (1) completing an extensive pre-suit investigation of the claims at issue, including interviews with former Oracle employees; (2) preparing and filing an initial complaint, a detailed consolidated complaint, and an amended consolidated complaint; (3) briefing and arguing in opposition to Defendants' two rounds of motions to dismiss; (4) obtaining certification of the Class through a contested class certification motion; and (5) conducting substantial fact discovery, including obtaining and reviewing over 330,000 pages of documents from Defendants and non-parties.  As a result of these efforts, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached.

### 2. The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Experienced Counsel and with the Assistance of an Experienced Mediator

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

Here, the Settlement was reached after several months of arm's-length settlement negotiations between Parties that were represented by counsel experienced in litigating securities class actions. The settlement negotiations included mediation before Jed Melnick of JAMS, an experienced private mediator of complex disputes. A full-day mediation session with Mr. Melnick was held on February 18, 2022, following the Parties' exchange of detailed mediation statements. While no agreement was reached at the formal mediation session, the Parties continued their negotiations, with the assistance of Mr. Melnick, over the following months. The Settlement was ultimately reached based on mediator's recommendation of Mr. Melnick.

This settlement process demonstrates that the Settlement was hard-fought and negotiated at arm's length. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse, Inc.*, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020) ("The assistance of an experienced neutral mediator during the settlement process supports the Court's conclusion that the Agreement is non-collusive.").

Courts have also given considerable weight to the opinion of experienced and informed counsel who support settlement. In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25,

2017); *accord In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same). Here, Lead Counsel has a thorough understanding of the merits and risks of the Action.   Lead Counsel's and Lead Plaintiff's beliefs in the fairness and reasonableness of this Settlement warrant a presumption of reasonableness.

In addition, as noted above, the Parties reached the agreement to settle only after conducting extensive litigation, which included extensive briefing of Defendants' motions to dismiss, litigating class certification, and conducting substantial document discovery.   The detailed investigation and discovery conducted provided Lead Plaintiff and Lead Counsel with ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the $17.5 million Settlement was fair and reasonable given the risks of the case.

In sum, the extent of the litigation, the arm's-length nature of the negotiations, and the participation of a mediator and sophisticated counsel support a finding that the proposed Settlement is fair, reasonable, and adequate to justify notice to the Class and a hearing on final approval.

### 3.     The Settlement Is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, *see* Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement "falls within the range of possible approval."   *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019).   Because the $17.5 million Settlement represents a favorable recovery for the Class in light of the risks of the litigation and the potential outcomes at trial, Lead Plaintiff believes that the Settlement is well within the range of possible approval.

Lead Plaintiff agreed to settle this Action on these terms based on its careful investigation and evaluation of the facts and law relating to the allegations in the Complaint remaining after the Court's decision on Defendants' motion to dismiss and careful consideration of the evidence developed in discovery.   *See Louie v. Kaiser Found. Health Plan, Inc.*, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

Lead Plaintiff and Lead Counsel believe the $17.5 million Settlement is a favorable result of the Class in light of the substantial risks that Lead Plaintiff and the Class would face in proving all of the elements of the asserted claims.   To defeat summary judgment and prevail at trial, Lead Plaintiff would have been required to prove not only that Defendants' statements were false, but that Defendants knew that their statements were false when made or were deliberately reckless in making the statements, and that the disclosures concerning Defendants' false and misleading statements caused declines in the price of Oracle's stock.  In addition, Lead Plaintiff would have had to establish the amount of per share damages.

Defendants would have had substantial arguments to make concerning each of these issues. For example, after initially dismissing Lead Plaintiff's allegations entirely, the Court sustained a portion of Lead Plaintiff's Amended Complaint on a narrow "omissions" theory.   Lead Plaintiff would face significant challenges in proving that Defendants' statements about the drivers of Oracle's Cloud revenue were misleading when made due to the omission of statements related to Oracle's Cloud sales practices.   Defendants would argue that Oracle's revenue was accurately reported at all times during the Class Period, and that Oracle's revenue guidance was also accurate. They would also argue that—to the extent the alleged improper sales practices occurred at all—they affected only a small fraction of Oracle's Cloud revenue, and thus any such omissions could not be material.   Defendants would also argue that, to the extent that Lead Plaintiff's allegations involve discounts to Cloud customers, such discounts were proper and the failure to disclose such discounts did not constitute securities fraud.

Further, Defendants would argue that, even if any of their statements were false or misleading, they did not have an intent to mislead investors and believed their statements to be true. Indeed, Defendants argued vigorously that they had no motive to commit fraud and that the Individual Defendants did not benefit from the alleged fraud.   On the contrary, Defendants could point to the significant amounts of stock buybacks Oracle initiated during the Class Period as indicating that Defendants did not believe the price of Oracle common stock was artificially inflated at that time.   In light of these circumstances, Lead Plaintiff and the Class would have faced

significant challenges in proving Defendants' scienter—even if they could establish that Defendants had made materially misleading omissions.

Finally, Defendants would argue that Lead Plaintiff could not establish loss causation because certain of the disclosures were not corrective of the previously alleged misstatements. Defendants would contend that the alleged disclosures do not correct earlier-reported Cloud revenue or growth rates, and that the vast majority of alleged corrective disclosures do not reference allegedly improper sales practices at all.

Thus, while Lead Plaintiff's allegations were sufficiently supported for certain of Lead Plaintiff's claims to be sustained at the pleading stage, surviving summary judgment and proving the claims at trial here was far from certain.  In light of these risks, Lead Plaintiff and Lead Counsel believe that the $17.5 million Settlement reached is a favorable outcome for the Class.

### 4.     The Settlement Treats All Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Class.  All Class Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court.

At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan of Allocation").  The Plan of Allocation provides a formula for the distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in Oracle common stock related to the alleged fraud.  As discussed further below, the formula to apportion the Net Settlement Fund among Class Members was developed by Lead Counsel based on the damages analysis prepared by Lead Plaintiff's damages expert, and Lead Counsel believes it provides an equitable method for allocating the Net Settlement Fund among injured Class Members.

### 5.     Lead Plaintiff Has Identified All Agreements Made in Connection With the Settlement

In addition to the Stipulation, Lead Plaintiff and Oracle have entered into a confidential Supplemental Agreement regarding requests for exclusion ("opt-outs") from the Class.  *See*

Stipulation ¶ 41.  This agreement establishes the conditions under which Oracle may terminate the Settlement if the opt-outs received exceed an agreed-upon threshold.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *see also Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (same).  As is also standard in securities class actions, agreements of this kind are not made public to avoid incentivizing individuals to leverage the opt-out threshold to exact individual settlements at the Class's expense.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").  In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice to be mailed to Class Members.  The Court's review of the proposed Plan of Allocation under Rule 23 is governed by the same standards of review applicable to the settlement itself—the plan must be fair and reasonable.  *See Class Plaintiffs*, 955 F.2d at 1284.  The Plan of Allocation, which Lead Counsel developed based on the damages analysis prepared by Lead Plaintiff's expert, provides a fair, reasonable and equitable basis to allocate the Net Settlement Fund among Class Members who submit acceptable Claim Forms.

The Plan of Allocation sets forth the estimated amount of artificial inflation in the per-share price of Oracle common stock allegedly caused by Defendants' alleged misstatements at various stages of the Class Period.  *See* Notice at 20 (Table A).  Lead Plaintiff's expert calculated the estimated amount of artificial inflation in the Oracle common stock by considered the price changes in the stock in reaction to the disclosures that allegedly corrected the alleged misrepresentations and adjusting for market and industry factors.  Notice ¶¶ 58-59

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Oracle common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Notice ¶¶ 70-71. In general, Recognized Loss Amounts will be the lower of: (i) the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, and (ii) the difference between the actual purchase price and sales price. *Id*. ¶¶ 61, 71. For shares sold during or after the 90-day period following the end of the Class Period, the Plan also limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA. *Id*. ¶¶ 71C, 71D. Under the Plan, claimants who purchased shares during the Class Period but did not hold those shares through at least one of the alleged corrective disclosures will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *Id*. ¶¶ 60-61, 71.

The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim," Notice ¶ 72, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶ 80.

One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. Notice ¶ 83. The Plan of Allocation also identifies the Investor Protection Trust as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to all eligible Claimants have been completed. *Id*. The Investor Protection Trust, a 501(c)(3) nonprofit organization devoted to investor education, is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue, and courts in this District have approved it as a *cy pres* recipient in other similar actions. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, Case No. C 18-02902-WHA (N.D. Cal.); *In re RH, Inc. Sec. Litig.*, Case No. 4:17-00554-YGR (N.D. Cal.); *Hefler v. Wells Fargo & Co.*, Case No. 3:16-cv-05479-JST

(N.D. Cal.).  BLB&G has no relationship with the Investor Protection Trust other having selected it as a *cy pres* recipient in other securities class actions.  Payment will only be made to the Investor Protection Trust when the residual amount left for re-distribution to Class Members is so small that a further re-distribution would not be cost effective (for example, where the costs would subsume the funds available).  Notice ¶ 83.

Thus, Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims.

## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND THE PROPOSED PLAN FOR PROVIDING NOTICE AND PROCESSING CLAIMS

### A.   Retention of A.B. Data

Lead Plaintiff proposes that the notice and claims process be administered by A.B. Data, Ltd. ("A.B. Data"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions.  *See* Declaration of Jack Ewashko ("Ewashko Decl."), attached hereto as Exhibit 3, at ¶¶ 1-2.  A copy of A.B. Data's firm resume is attached to the Ewashko Decl. as Exhibit A.  Lead Counsel selected A.B. Data after a competitive bidding process in which three firms submitted proposals.  *See* Declaration of John Rizio-Hamilton ("Rizio-Hamilton Decl."), attached hereto as Exhibit 4, at ¶¶ 2-4.  All of the proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Class Members through brokers and nominee owners.  *Id*. ¶ 4.  Lead Counsel has engaged A.B. Data to serve as notice or settlement administrator in 14 cases other than *Oracle* in the past two years (as compared to a total of 27 such new engagements during the same period, or roughly one half of such cases).  *Id*. ¶ 5.  Lead Counsel has found A.B. Data to be a very reliable administrator for these types of cases, with competitive pricing compared to similar claims administrator firms.  *Id.* ¶ 6.

### B.   Proposed Notice Procedures

Lead Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Stipulation, Exs. A-1 and A-3.  The Notice is written in

1   plain language and clearly sets out the relevant information and answers to most questions that Class

2   Members will have.  Consistent with Rule 23(e), the Notice apprises Class Members of the terms of

3   the Settlement and the options available to them.  The Notice also satisfies the requirements imposed

4   by the PSLRA, *see* 15 U.S.C. § 78u-4(a)(7), in that it, among other things, states the amount of the

5   Settlement on an absolute and per-share basis; states the amount of attorneys' fees and Litigation

6   Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead

7   Counsel who will be available to answer questions from Class Members; and provides a brief

8   statement explaining the reasons why the Parties are proposing the Settlement.  *Id.*

9        The Notice also meets the requirements of the Northern District of California Procedural

10  Guidance for Class Action Settlements in that it includes, among other things, (1) "contact

11  information for class counsel to answer questions"; (2) the address for the settlement website; and

12  (3) "instructions on how to access the case docket."  N.D. Cal. Proc. Guidance for Class Action

13  Settlements, at ¶ 3.  The Notice will also disclose the date, time, and location of the Settlement

14  Hearing and the procedures and deadlines for exclusions from the Class, the submission of Claim

15  Forms, and objections to any aspect of the Settlement, the Plan of Allocation, or the requested

16  attorneys' fees and expenses.

17       The proposed method for disseminating notice, which is set forth in the Preliminary Approval

18  Order submitted herewith, also readily meets the standards under the Federal Rules and due process.

19  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice

20  that is practicable under the circumstances, including individual notice to all members who can be

21  identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires

22  the court to "direct notice in a reasonable manner to all class members who would be bound" by a

23  proposed settlement, voluntary dismissal, or compromise.  Fed. R. Civ. P. 23(e)(1).

24       If the Court preliminarily approves the Settlement, Oracle will provide A.B. Data with the

25  names and addresses of the record holders or purchasers of Oracle common stock during the Class

26  Period, to the extent reasonably available to Oracle, for the purpose of identifying and giving notice

27  to the Class.  *See* Stipulation ¶ 24.  A.B. Data will mail the Notice and Claim Form (the "Notice

28

Packet") to all such identified potential Class Members.  A.B. Data will also send notice to brokerage firms and other nominees who purchased Oracle common stock during the Class Period on behalf of other beneficial owners.   These nominee purchasers will be required to either forward the Notice Packet to their customers or provide the names and addresses of the beneficial owners to A.B. Data, which will then promptly send the Notice Packet by first-class mail to such identified beneficial owners (or by email if provided).  A.B. Data will also cause the Summary Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published once in *The Wall Street Journal* and transmitted over the *PR Newswire*, a national business-oriented wire service, and will publish the Notice and Claim Form and other materials on a website to be developed for the Settlement.

In addition, the Parties have agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), *et seq.* ("CAFA").  *See* Stipulation ¶ 25.

The proposed plan for providing notice is the same method that has been used in numerous other securities class actions.  Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process.  *See In re RH, Inc. Sec. Litig.,* 2019 WL 5538215, at *2 (N.D. Cal. Oct. 25, 2019) (approving similar notice plan in securities class action); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances'").

### C.    Claims Processing

The net proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to A.B. Data.  A.B. Data will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and

will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

A.B. Data estimates that a total of 1,000,000 Notice Packets will be mailed based on A.B. Data's analysis of the trading volume of Oracle common stock during the Class Period, and that approximately 250,000 claims will be received, based on an estimated 25% response rate, which A.B. Data finds reasonable and typical.  *See* Ewashko Decl. ¶¶ 10-11.  Summary information for three recent cases in which BLB&G acted as lead counsel and A.B. Data was retained as the settlement administrator is attached to the Ewashko Decl. as Exhibit B.

### D.      Estimated Notice and Administrative Costs

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the notices, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  Because the costs are dependent on how many Notice Packets are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided.  Based on the estimates of the number of Notice Packets expected to be mailed and claims expected to be received discussed above, A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $1,577,000.  *See* Ewashko Decl. ¶ 12.  This amount includes the costs for printing and mailing the Notice Packet, related costs such as maintaining the website and P.O. Box and fielding Class Member calls, and the cost of processing claims received.  The Notice and Administration Costs are necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated total administrative costs represent 9% of the Settlement Amount).  The Notice and Administration Costs will be paid from the Settlement Fund. *See* Stipulation ¶¶ 12, 17.

## VI.    ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES

As explained in the Notice (Stipulation, Ex. A-1, at p. 2 & ¶ 39), Lead Counsel intends to seek an award of attorneys' fees of up to 20% of the Settlement Fund (*i.e.*, 20% of the Settlement

Amount, or $3,500,000, plus interest earned at the same rate as the Settlement Fund), and payment of Litigation Expenses not to exceed $900,000.  Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the final Settlement Hearing.

However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel will request, *i.e.*, 20%, is on the lower end of the range of percentage fees awarded in comparable class securities class actions.  Indeed, the 20% fee that will be requested is substantially below both the 25% benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and the 30% award that courts have recognized as "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"  *Burnthorne-Martinez v. Sephora USA, Inc.*, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018); *Omnivision*, 559 F. Supp. 2d at 1047-48.

Moreover, Lead Counsel has devoted roughly 20,000 hours to the Action and anticipates that the lodestar multiplier for the fee requested will be below one.  Such a multiplier is well below the range of multipliers commonly awarded in class actions and other similar cases.  *See generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers commonly range from 1.0 to 4.0).

Lead Counsel also intends to seek payment for Litigation Expenses in an amount not to exceed $900,000, which will include costs for retention of experts, mediation fees, online legal and factual research, and document management, among other costs.  As part of this application, Lead Counsel will seek an award under the PSLRA for Lead Plaintiff Union in an amount not to exceed $65,000, in reimbursement for the time that Union's employees dedicated to the Action.

## VII.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.  The Parties respectfully propose the schedule

set out in Appendix 1 for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order. Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. As this motion is unopposed, the Parties request the Court consider this motion for preliminary approval on the papers at this time.

## VIII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

Dated: July 11, 2022

Respectfully submitted,

/s/      *John Rizio-Hamilton*
BERNSTEIN LITOWITZ BERGER &
    GROSSMANN LLP
JOHN RIZIO-HAMILTON (*pro hac vice*)
(johnr@blbglaw.com)
MARK LEBOVITCH (*pro hac vice*)
(markl@blbglaw.com)
ABE ALEXANDER (*pro hac vice*)
(abe.alexander@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

JONATHAN D. USLANER (Bar No. 188574)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars
Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3472

*Counsel for Lead Plaintiff*
*Union Asset Management Holding AG and*
*Lead Counsel for the Class*

**Appendix 1**

**Proposed Schedule of Events**

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing the Notice and Claim Form to potential Class Members ("Notice Date") | 15 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶ 4(b).) |
| Deadline for publishing Summary Notice | 10 business days after Notice Date (*Id.* ¶ 4(d).) |
| Deadline for filing final approval papers | 35 calendar days prior to the Settlement Hearing (*Id.* ¶ 23.) |
| Deadline for receipt of exclusion from the Class or objections to the Settlement | 21 calendar days before the Settlement Hearing (*Id.* ¶¶ 10, 13, 14.) |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing (*Id.* ¶ 23.) |
| Settlement Hearing | 100 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (*Id.* ¶ 2.) |
| Postmark deadline for submitting claim forms | 120 calendar days after the Notice Date (*Id.* ¶ 7.) |