**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
MARK LEBOVITCH (admitted *pro hac vice*)
(markl@blbglaw.com)
JOHN RIZIO-HAMILTON (admitted *pro hac vice*)
(johnr@blbglaw.com)
ABE ALEXANDER (admitted *pro hac vice*)
(abe.alexander@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

        -and-

JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

*Counsel for Lead Plaintiff Union Asset*
*Management Holding AG and*
*Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| *In re Oracle Corporation Securities Litigation* | <u>CLASS ACTION</u><br><br>Case No. 5:18-cv-04844-BLF<br><br>**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Dept.:  Courtroom 3, 5th Floor<br>Judge:  Honorable Beth Labson Freeman<br><br>Hearing Date:<br>January 12, 2023 at 9:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ....................................................................................ii

NOTICE OF MOTION............................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

PRELIMINARY STATEMENT ............................................................................. 2

ARGUMENT .......................................................................................................... 6

I.     The Proposed Settlement Warrants Final Approval ...................................... 6

     A.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Class.................................................................................................. 7

     B.     The Settlement Was Reached After Substantial Discovery and Arm's-Length Negotiations Between Experienced Counsel, and with the Assistance of an Experienced Mediator................................ 8

     C.     The Relief that the Settlement Provides for the Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors .............................................................. 11

          1.     The Amount of the Proposed Settlement.............................. 11

          2.     The Strengths and Weaknesses of the Case and the Significant Risks of Continued Litigation ............................ 12

          3.     The Duration and Costs of Continued Litigation.................. 16

          4.     All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement .................................................. 18

     D.     The Settlement Treats Class Members Equitably ............................ 19

     E.     Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement ............................................................. 20

II.     The Plan of Allocation Is Fair and Reasonable .......................................... 21

III.     Notice to the Class Satisfied the Requirements of Rule 23 and Due Process.............. 23

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014)..................................................9

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)....................................14, 15, 17, 20

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)............................................................9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................................16

*In re Aqua Metals, Inc. Sec. Litig.*,
   2022 WL 612804 (N.D. Cal. Mar. 2, 2022).................................................12

*Baker v. SeaWorld Ent., Inc.*,
   2020 WL 4260712 (S.D. Cal. July 24, 2020) ............................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................9, 10

*In re Capstone Turbine Corp. Sec. Litig.*,
   2020 WL 7889062 (C.D. Cal. Aug. 26, 2020)............................................23

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ...........................................15

*Churchill Village L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................................7, 20, 24

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................7, 21

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) .........................................................15

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................11, 17, 24

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................7

*Fleming v. Impax Labs. Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022)............................................23

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................6

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................7, 8, 11

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................................17

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ............................................................24

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4. 2018) ............................................................19

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 17, 2018) ............................................................23

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................16, 21

*IBEW Local 697 v. Int'l Game Tech.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ............................................................12

*In re Illumina, Inc. Sec. Litig.*,
    2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ............................................................23

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................14

*Jaffe Pension Plan v. Household Int'l, Inc.*,
    No. 1:02-cv-05893, Verdict Form (N.D. Ill. May 7, 2009) ............................................................17

*Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893, Final Judgment
    and Order of Dismissal With Prejudice (N.D. Ill. Nov. 10, 2016) ............................................................17

*Kirkorian v. Borelli*,
    695 F. Supp. 446 (N.D. Cal. 1988) ............................................................20

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................13

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................7

*Lembeck v. Arvest Cent. Mortg. Co.*,
    2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ............................................................9

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ............................................................7

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)..............................................................16

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir.
   1998) ..............................................................................................................9

*Luna v. Marvell Tech. Grp.*,
   2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ........................................24

*McPhail v. First Command Fin. Planning, Inc.*,
   2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ..........................................12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................11

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV*,
   221 F.R.D. 523 (C.D. Cal. 2004).............................................................20

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..........................................9

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .............................................................7, 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................6, 21

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ..........................................21

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................8

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................11

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016).............................................................24

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ..................................................................6

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..............................................................12, 16

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
   2018 WL 828199 (S.D. Cal. Feb. 9, 2018) ............................................17

*Vivendi Universal, S.A. Sec. Litig.*,
　Civ. No. 02-5571 (RJH/HBP), Verdict Form (S.D.N.Y. Feb. 2, 2010)...................................17

*Vivendi Universal, S.A. Sec. Litig.*,
　Civ. No. 02-5571 (RJH/HBP), Final Judgment Approving Class Action
　Settlement of All Remaining Claims (S.D.N.Y. May 9, 2017) ................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
　2019 WL 2077847 (N.D. Cal. May 10, 2019) ..........................................................................7

STATUTES AND RULES

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(7) .................................22, 24, 25

Fed. R. Civ. P. 23 .................................................................................................... *passim*

## NOTICE OF MOTION FOR FINAL APPROVAL
## OF SETTLEMENT AND PLAN OF ALLOCATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 134) ("Preliminary Approval Order"), Lead Plaintiff Union Asset Management Holding AG ("Union" or "Lead Plaintiff") will and hereby does move the Court, before the Honorable Beth Labson Freeman, on January 12, 2023, at 9:00 a.m. in Courtroom 3 – 5th Floor of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, or at such other location and time as set by the Court, for (1) entry of a judgment granting final approval of the proposed settlement of this Action (the "Settlement") and (2) entry of an order granting approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Declaration of Jonathan D. Uslaner in Support of (A) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Uslaner Declaration" or "Uslaner Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and any additional information or argument that may be required by the Court.  The proposed Judgment and a proposed Order approving the Plan of Allocation will be submitted with Lead Plaintiff's reply submission, after the deadline for submission of any objections and requests for exclusion has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve the proposed Settlement of this securities class action as fair, reasonable, and adequate under Rule 23(e)(2); and

2.      Whether the Court should approve the Plan of Allocation as fair and reasonable.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of itself and the Class, respectfully submits this memorandum in support of its motion for final approval of the proposed Settlement and the plan of allocation of the settlement proceeds.[1]

## PRELIMINARY STATEMENT

Lead Plaintiff is pleased to present for the Court's approval its agreement to settle this securities class action in exchange for a cash payment of $17,500,000.00 for the benefit of the Class.  Lead Plaintiff respectfully submits that the proposed Settlement is a very favorable result for the Class in light of the serious risks that it faced in proving the securities fraud claims at issue, including the substantial risks to proving falsity, materiality, scienter, loss causation, and damages at summary judgment or trial, as well as the delays attendant to continued litigation.  The proposed Settlement was achieved after more than three and a half years of vigorous litigation, which included the Court's initial dismissal of the entire case and extended through certification of the Class and substantial fact discovery.  The Settlement is also the product of extended arm's-length negotiations between experienced and well-informed counsel, which included a formal mediation session before an experienced mediator, Jed D. Melnick of JAMS, and further discussions assisted by Mr. Melnick.  The Settlement was based on a mediator's recommendation by Mr. Melnick.  As detailed in the accompanying Uslaner Declaration and summarized herein, the proposed Settlement provides a substantial, certain, and immediate recovery for the Class while avoiding the significant risks of continued litigation, including the risk that the Class could recover less than the Settlement amount—or nothing at all—after years of additional litigation, appeals, and delay.

The proposed Settlement is the result of Lead Plaintiff and Lead Counsel's substantial litigation efforts.  Those efforts started over four years ago when Lead Counsel began a detailed

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated June 23, 2022 (ECF No. 128-1) (the "Stipulation") or in the Uslaner Declaration.  Unless otherwise noted, citations to "¶ __" herein refer to paragraphs in the Uslaner Declaration, which is an integral part of this motion, and citations to "Ex. __" refer to exhibits to the Uslaner Declaration.

1    investigation of the claims at issue, which included an extensive review of public SEC filings,

2    conference calls, analyst reports, and news articles; interviews with dozens of former Oracle

3    employees; and consultation with experts in accounting, damages, and loss causation. ¶¶ 8-14, 54.

4    Based on this extensive investigation, Lead Plaintiff prepared a detailed 101-page Consolidated

5    Complaint.   ¶ 15.   Lead Plaintiff then opposed Defendants' comprehensive motion to dismiss,

6    through extensive briefing and oral argument.   ¶¶ 16-22.   Next, after the Court dismissed the

7    Consolidated Complaint on the grounds that it failed to adequately allege falsity and scienter, Lead

8    Plaintiff prepared another detailed Amended Complaint based on additional information obtained

9    through Lead Counsel's continued investigation and responded to another round of motion-to-

10   dismiss briefing from Defendants.   ¶¶ 23-30.   This dedication paid off for the Class, as the Court

11   subsequently sustained certain of Lead Plaintiff's claims in the Amended Complaint.   ¶ 31.

12        Lead Plaintiff then filed for and briefed class certification, which involved the submission

13   of an expert report from Lead Plaintiff's expert on market efficiency and class-wide damages, and

14   deposition of that expert—and was successful in obtaining certification of the Class in full.   ¶¶ 48-

15   52.   Lead Plaintiff also conducted substantial fact discovery, which included the exchange of initial

16   disclosures, document requests, and interrogatories, and resulted in Lead Counsel obtaining and

17   analyzing nearly 330,000 pages of documents produced by Defendants and third parties and the

18   production of more than 200,000 pages of documents to Defendants by Lead Plaintiff.   ¶¶ 33-47.

19   As a result of all of these efforts, Lead Plaintiff and Lead Counsel possessed a very well-developed

20   understanding of the strengths and weaknesses of the claims when the Settlement was reached.

21        The proposed Settlement resulted from extensive arm's-length negotiations, including a

22   full-day mediation session before JAMS Mediator Jed D. Melnick on February 18, 2022.   ¶¶ 57-

23   58.   Prior to that mediation, the Parties exchanged detailed mediation statements addressing both

24   liability and damages issues accompanied by numerous exhibits.   ¶ 58.   At the mediation session,

25   the Parties engaged in vigorous settlement negotiations with the assistance of Mr. Melnick, but

26   were not able to reach an agreement.   *Id.*   Following the certification of the Class in May 2022,

27   and while the Parties' discovery efforts continued, the Parties continued to discuss the possible

28   resolution of the Action through settlement with the assistance of Mr. Melnick.   ¶ 59.   After

1    continued discussions with the Parties, Mr. Melnick issued a mediator's recommendation on May

2    26, 2022 that the Parties settle the Action for $17.5 million, which the Parties accepted on May 27,

3    2022. *Id*.

4         Lead Plaintiff and Lead Counsel believe the proposed Settlement is a very favorable result

5    for the Class given the significant risks that Lead Plaintiff faced in proving its securities fraud

6    claims, as well as the costs and delays that would accompany continued litigation.  As discussed

7    below and in the Uslaner Declaration, Lead Plaintiff faced meaningful risks in establishing each

8    element of its claims.  This Court had initially dismissed Lead Plaintiff's allegations in their

9    entirety and ultimately sustained only a portion of the claims based on a narrow "omissions"

10   theory—that is, that Defendants' statements about the drivers of Oracle's Cloud revenue during

11   the Class Period were misleading when made due to the omission of certain facts related to

12   Oracle's Cloud sales practices.   Lead Plaintiff would have faced serious risks at summary

13   judgment, trial, and on appeal in prevailing on these claims.  ¶¶ 64-76.  Defendants would argue

14   that Oracle's revenue was accurately reported, and that Oracle's revenue guidance was also

15   accurate.  ¶¶ 66-69.  Defendants would also argue that—even if any alleged improper sales

16   practices had occurred—they concerned only a small fraction of Oracle's Cloud revenue, and thus

17   were not a material driver of Oracle's Cloud sales growth or deceleration.  ¶ 70.  Moreover,

18   Defendants would argue that, to the extent Lead Plaintiff's allegations involved discounts to

19   customers of Oracle's Cloud products, such discounts were proper and could not be the basis for

20   a claim of fraud.  ¶ 67.

21        Defendants would have further argued that, even if any of their omissions rendered their

22   statements false or misleading, they did not have any intent to mislead investors and Lead Plaintiff

23   would not be able to prove their scienter.  ¶¶ 71-72.  Defendants argued vigorously that they

24   believed their statements to be true and that they had no motive to commit fraud.  Specifically,

25   they contended that Defendants did not benefit from the alleged fraud, including by pointing to the

26   significant amounts of stock buybacks Oracle initiated during the Class Period, and the significant

27   amount of stock retained by multiple Defendants through the Class Period.  *Id*.

28

1   In addition, Defendants vigorously disputed loss causation and damages.  Defendants
2   would argue that Lead Plaintiff could not establish loss causation because certain of the alleged
3   disclosures did not correct earlier-reported Cloud revenue or growth rates, and that the vast
4   majority of alleged corrective disclosures did not reference allegedly improper sales practices.
5   Accordingly, Defendants would argue that most, if not all, of the stock price declines at issue in
6   the Complaint could not be causally connected to the alleged misrepresentations.  ¶ 74.  Damages
7   would also be hotly disputed, including based on the argument that the allegedly financially
8   engineered deals at issue (the non-disclosure of which Lead Plaintiff alleged rendered Oracle's
9   statements about revenue misleading) represented only a small portion of Oracle's overall Cloud
10  revenues.  ¶ 76.  In light of these various significant risks and the costs and delays of further
11  litigation, Lead Plaintiff and Lead Counsel believe the $17.5 million Settlement represents a
12  favorable resolution of the Action for the Class.

13      Further, the Settlement has the full support of Lead Plaintiff, a sophisticated institutional
14  investor which took an active role in supervising the litigation.  In addition, although the deadline
15  to object to the Settlement has not yet passed, to date, after mailing of more than 979,000 Notices
16  to potential Class Members, no Class Members have objected to the Settlement.  (The Court-
17  ordered deadline for submission of objections is December 22, 2022.  Should any objections be
18  received, Lead Plaintiff will address them in its reply papers.)

19      In light of these considerations and the other factors discussed below, Lead Plaintiff
20  respectfully submits that the Settlement is fair, reasonable, and adequate and warrants final
21  approval by the Court.  Additionally, Lead Plaintiff requests that the Court approve the Plan of
22  Allocation, which was set forth in the Notice mailed to potential Class Members.  The Plan of
23  Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages
24  expert, provides a reasonable method for allocating the Net Settlement Fund among Class
25  Members who submit valid claims based on damages they suffered on purchases of Oracle
26  common stock that were attributable to the alleged fraud.

27
28

1

## ARGUMENT

2

## I.     The Proposed Settlement Warrants Final Approval

3

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

4
settlement of class-action claims.  *See* Fed. R. Civ. P. 23(e).  A class-action settlement should be

5
approved if the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

6

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly

7
where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095,

8
1101 (9th Cir. 2008); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D.

9
Cal. 2008) ("Ninth Circuit[] policy favor[s] settlement, particularly in class action law suits").

10
Class actions readily lend themselves to compromise because of the difficulties of proof, the

11
uncertainties of the outcome, and the typical length of the litigation.  The settlement of complex

12
cases like this one also promotes efficient utilization of scarce judicial resources and the speedy

13
resolution of claims.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10

14
(N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of

15
continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the []

16
class.").

17

In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court

18
should consider whether:

19

(A)    the class representatives and class counsel have adequately represented the

20

class;

21

(B)    the proposal was negotiated at arm's length;

22

(C)    the relief provided for the class is adequate, taking into account, [among other

23

things,] the costs, risks, and delay of trial and appeal […]; and

24

(D)    the proposal treats class members equitably relative to each other.

25
Fed. R. Civ. P. 23(e)(2).

26

In addition, the Ninth Circuit has held that district courts should consider the following

27
factors in evaluating the fairness of a class action settlement:

28

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors … and the factors identified in" Ninth Circuit case law).

The Ninth Circuit has explained that courts' review of class-action settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

At the settlement approval stage, the first Rule 23 consideration is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Here, Lead Plaintiff's claims are typical of and coextensive with those of the Class, and it does not have any interests that are antagonistic to the interest of other members of the Class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at

1   1020.  Lead Plaintiff—like all other Class Members—has an interest in obtaining the largest

2   possible recovery from Defendants.  *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y.

3   2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there

4   is no conflict of interest between the class representatives and other class members.").  Indeed, in

5   granting class certification, the Court found that Lead Plaintiff was adequate to serve as Class

6   Representative, and Lead Counsel was fit to serve as Class Counsel.  *See* ECF No. 122, at 8.

7        Further, Lead Plaintiff and Lead Counsel have adequately represented the Class in both

8   their vigorous prosecution of the Action during the past four years and in the negotiation and

9   achievement of the proposed Settlement.  The institutional investor Lead Plaintiff played an active

10  role in supervising and participating in the litigation, and retained counsel who are highly

11  experienced in securities litigation and have successfully prosecuted many complex class actions

12  throughout the United States.  See Ex. 7 (Lead Counsel's firm resume).  Lead Plaintiff and Lead

13  Counsel vigorously prosecuted the Class's claims, which included (by way of brief summary)

14  (i) conducting an extensive investigation into the alleged fraud; (ii) drafting two detailed

15  complaints based on the investigation; (iii) opposing two rounds of Defendants' motion to dismiss

16  through briefing and argument; (iv) successfully moving for certification of the Class; (v) opposing

17  Defendants' Rule 23(f) petition; (vi) conducting substantial fact discovery; and (vii) participating

18  in extended arm's length settlement negotiations, including a full-day mediation session with a

19  professional mediator.  ¶¶ 3, 8-60.

20        Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they have

21  adequately—indeed, zealously—represented the Class.

22   **B.    The Settlement Was Reached After Substantial Discovery and Arm's-Length**
         **Negotiations Between Experienced Counsel, and with the Assistance of an**
23       **Experienced Mediator**

24        The next Rule 23 consideration is whether the settlement "was negotiated at arm's length."

25  Fed. R. Civ. P. 23(e)(2)(B).  This includes consideration of related circumstances bearing on the

26  procedural fairness of the settlement, including (i) counsel's understanding of the strengths and

27  weakness of the case based on factors such as "the extent of discovery completed and the stage of

28  the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion,

*see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator.

Here, the proposed Settlement was reached only after several months of arm's-length negotiations between the Parties, including a full-day mediation session with Jed D. Melnick of JAMS, an experienced mediator of class actions and other complex litigation.  ¶¶ 56-60.  The Parties prepared and exchanged detailed mediation statements before participating in the February 2022 mediation and exchanged their views on the merits and risks of the case.  ¶ 58.  No agreement to settle was reached at the February 2022 mediation, but as the litigation progressed, the Parties continued settlement negotiations with the assistance of Mr. Melnick.  ¶¶ 58-59.  In May 2022, following the certification of the Class and in connection with the Parties' ongoing negotiations, Mr. Melnick made a mediator's recommendation that the Action be settled for $17.5 million, which the Parties accepted.  ¶ 59.

As courts in this District have explained, the fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel after conducting substantial discovery creates a presumption of its fairness.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).  The involvement of an experienced mediator in the settlement process, like Mr. Melnick here, further "confirms that the settlement is non-collusive."  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); *see also Lembeck v. Arvest Cent. Mortg. Co.*, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021) (finding that a settlement "was negotiated at arms' length and under circumstances evidencing a lack of collusion" where it was reached following a mediation with Mr. Melnick); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (finding that

settlement was "reached in good faith after a well-informed, arms-length negotiation, and that it is therefore entitled to a presumption of fairness" where the parties had "reached an agreement in principle with the assistance of an experienced mediator [Mr. Melnick] following an in-person mediation at which the parties were initially unable to come to agreement.").

In addition, as noted above, Lead Plaintiff and Lead Counsel possessed a thorough understanding of the strengths and weaknesses of the case before reaching the proposed Settlement. As detailed in the Uslaner Declaration and summarized in the preceding section, Lead Counsel conducted a thorough, substantive investigation, drafted two detailed complaints and briefed two rounds of motions to dismiss, filed a successful motion for class certification, and conducted substantial fact discovery. Lastly, the Parties engaged in extensive settlement negotiations assisted by an experienced mediator, which further informed the Parties of the strength of each side's arguments. ¶¶ 56-59.

The proposed Settlement has none of the indicia of possible collusion identified by the Ninth Circuit (*see Bluetooth*, 654 F.3d at 947), such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants. *See* Stipulation ¶ 19 ("Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation."); Stipulation ¶ 16 ("The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever.").

In short, the Settlement was reached after extensive arm's-length negotiations supervised by an experienced mediator and conducted by well-informed counsel after years of vigorous litigation, including extensive investigation and substantial discovery, and was not a product of fraud, overreaching, or collusion among the Parties.

**C.    The Relief that the Settlement Provides for the Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

Next, Rule 23 requires courts to determine whether a class-action settlement is "fair, reasonable, and adequate," including by "taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  This analysis essentially encompasses four of the seven factors of the traditional *Hanlon* analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement.  *See Hanlon*, 150 F.3d at 1026.  Here, each of these factors supports approval.

### 1.    The Amount of the Proposed Settlement

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class."  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).  However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the Class potentially could recover at trial, discounted for risk, delay, and expense.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  *Officers for Justice*, 688 F. 2d at 624; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (holding that a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Here, the proposed Settlement amount—$17.5 million in cash, plus interest—represents a favorable recovery for the Class in light of the risks of the claims.  The maximum possible damages here, accounting for the percentage of Oracle Cloud revenue that Lead Counsel determined was attributable to the allegedly improper "financially engineered" deals at issue and assuming that

Lead Plaintiff prevailed on all elements of its claim and for each of the corrective disclosures, would be approximately $236 million.  ¶ 79.  Thus, the $17.5 million Settlement represents approximately 7.4% of the maximum damages that could be realistically be obtained for the Class, even if Lead Plaintiff prevailed at trial on **all** issues of falsity, materiality, scienter, and loss causation.  *Id.*  Importantly, such success was far from certain.  Indeed, as discussed further below and detailed in the Uslaner Declaration, Defendants advanced substantial arguments regarding all elements of liability and loss causation that, if accepted, would have substantially lowered the maximum damages or eliminated them entirely.

Nevertheless, the recovery under the proposed Settlement is reasonable even when considered in light of these maximum damages.  Courts have routinely approved and lauded settlements with comparable or lower percentage recoveries than obtained here as fair and reasonable.  *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) ("Class Counsel contends that this settlement offer constitutes 7.3% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants.  ... The Court agrees that this recovery is in line with comparable class action settlements."); *IBEW Local 697 v. Int'l Game Tech.,* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years"); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding that securities-class-action settlement recovery of 7% of estimated damages "weigh[s] in favor of final approval").

### 2. The Strengths and Weaknesses of the Case and the Significant Risks of Continued Litigation

Courts evaluating proposed class action settlements consider the strength of the plaintiff's case and the risks of further litigation.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and

1    certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

2        In considering whether to agree to the proposed Settlement, Lead Plaintiff, represented by

3    Lead Counsel with considerable experience in securities litigation, weighed the risks inherent in

4    establishing the elements of its claims, including risks at trial of proving to a jury the elements of

5    falsity, scienter, loss causation, and full damages.  Each of these elements is addressed below.

6        ***Falsity.***  Lead Plaintiff and Lead Counsel recognized that they faced challenges in proving

7    that Defendants' statements were materially false and misleading when made.  Specifically, after

8    initially dismissing Lead Plaintiff's allegations entirely, the Court had sustained a portion of the

9    Amended Complaint on a narrow "omissions" theory:  that Defendants' statements about Oracle's

10   Cloud revenue were misleading when made due to the omission of certain information related to

11   Oracle's sales practices.  The Court's order made clear that the decision to allow Lead Plaintiff to

12   pursue this narrow omission-based theory hinged on two core allegations that the Court assumed

13   true at the pleading stage: (i) that Oracle's alleged coercive sales practices "constituted a material

14   portion of Oracle's Cloud Revenues," with 90% of certain cloud deals alleged to be financially

15   engineered; and (ii) that Oracle's top executives approved of the Company's coercive sales tactics.

16   ECF No. 84.  The Court had cautioned that these allegations would "be reviewed with the benefit

17   of a more developed record" at the summary judgment stage.  *Id*. at 23.

18       Lead Plaintiff would have faced significant challenges in proving that Defendants'

19   statements were misleading based on this omission theory.  Defendants would argue that Oracle's

20   revenue was accurately reported at all times during the Class Period, and that Oracle's revenue

21   guidance was also accurate.  ¶ 66.  Defendants would further argue that Oracle's senior executives

22   did not approve Oracle's challenged sales practices and instructed sales personnel to not enter into

23   financially engineered deals.  ¶ 67.  Specifically, Defendants will contend that Oracle did not try

24   to boost Cloud revenue through financially engineered deals, but, on the contrary, its senior

25   officers tried to stop the Company's sales personnel from offering such deals.  *Id*.

26       Moreover, Defendants would argue that those efforts were largely successful and that

27   Oracle sales personnel only occasionally violated the senior executives' prohibition and attempted

28   to induce customers to enter financially engineered deals.  ¶ 68.  Defendants would argue that only

LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL                              13
OF SETTLEMENT AND PLAN OF ALLOCATION
Case No. 5:18-cv-04844-BLF

a small fraction of Oracle customers entered into these financially engineered deals and that only an immaterial percentage of Oracle's Cloud revenues came from these deals.  ¶¶ 68, 70.

Finally, Defendants would argue that the fact that the SEC had investigated Oracle's Cloud sales practices and related representations to investors prior to and during the Class Period, and had declined to take any enforcement action against Oracle or its officers, supported their position that no fraud occurred.  ¶ 66.

*Materiality*.  Defendants would have further contended that Lead Plaintiff would be unable to establish materiality.  For example, Defendants would argue that—to the extent the alleged improper sales practices occurred at all—they affected only a small fraction of Oracle's Cloud revenue, and thus any such omissions could not have been material to investors.  ¶ 70.

*Scienter*.  Assuming Lead Plaintiff were able to prove to a jury that Defendants' statements were materially false or misleading, it would still need to prove that Defendants made the alleged false statements with the intent to mislead investors or with deliberate recklessness.  As courts have recognized, defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence."  *See, e.g., In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to establish at trial").

Here, Defendants would contend that, even if any of their statements were false or misleading, they believed their statements to be true and did not have an intent to mislead investors.  ¶ 71.  Indeed, Defendants argued vigorously that they had no motive to commit fraud and that the Individual Defendants did not benefit from the alleged fraud.  ¶¶ 71-72.  In support of this argument, Defendants would likely point to the significant amounts of stock buybacks Oracle initiated during the Class Period as indicating that Defendants did not believe the price of Oracle common stock was artificially inflated at that time.  ¶ 72.  In light of these circumstances, Lead Plaintiff and the Class would have faced significant challenges in proving Defendants' scienter— even if they could establish that Defendants had made materially misleading omissions.

***Loss Causation and Damages***.  Defendants would also have vigorously disputed loss causation and damages.  Defendants would argue that Lead Plaintiff could not establish loss causation because certain of the disclosures were purportedly not corrective of the previously alleged misstatements.  Defendants would contend that the alleged disclosures do not correct earlier-reported Cloud revenue or growth rates, and that the majority of the alleged corrective disclosures do not reference allegedly improper sales practices at all, and thus could not be connected back to the narrow set of claims that the Court sustained on the motion to dismiss.  ¶ 74.  The elimination of any of the alleged corrective disclosures would reduce the overall damages for the Class.

Further, Defendants had meaningful arguments to make about the calculation of damages based on the portion of overall decline in Oracle's Cloud revenue that could be connected to the reduction in financially engineered deals.  ¶ 76.  Under the federal securities laws, investors can recover only those damages that are actually caused by Defendants' material misstatements and omissions—and not damages caused by other factors.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  The percentage of financially engineered deals in comparison to Oracle's overall Cloud revenues would have been a highly disputed factual question if the Action had proceeded, and Defendants would have contended that these deals accounted for, at most, only a small fraction of Oracle's Cloud revenues, and, thus, any damages should be substantially limited. ¶ 76.

The resolution of these disputed issues regarding damages and loss causation would have boiled down to a "battle of experts," and Defendants would certainly have been able to present a well-credentialed expert to opine at trial that the Class's damages were nonexistent or very limited. As Courts have long recognized, the uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk in securities actions.  *See Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020) (the fact that "Plaintiffs' ability to prove loss causation and damages would 'come down to an unpredictable battle of the experts,'" supported approval of the securities class action settlement); *Amgen*, 2016 WL 10571773, at *3 (finding that risks related to the "battle of experts" weighed in favor of settlement approval); *In re*

*Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (same).

**Class Certification Risks**.  Defendants had filed a petition for appellate review of the Court's order certifying the Class under Rule 23(f) and that petition was still pending when the agreement to settle was reached.  ¶ 77.  Defendants argued that the order certifying the Class should be reversed because Lead Plaintiff had not presented a valid model for calculating damages on a class-wide basis attributable to its theory of liability.  *Id*.  If the Ninth Circuit had adopted Defendants' view on that issue and reversed the certification of the Class, this would have precluded any recovery for the Class.  *Id*.

In sum, the proposed Settlement is fair and reasonable in light of the significant risks of continued litigation.

### 3.    The Duration and Costs of Continued Litigation

Courts consistently recognize that the likely duration and costs of continued litigation are key factors in evaluating the reasonableness of a settlement.  *See, e.g.*, *Torrisi*, 8 F.3d at 1376 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair).  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).  Due to the "notorious complexity" of securities class actions in particular, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials."  *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that securities class actions have well-deserved reputation for complexity).

Here, without the proposed Settlement, continued litigation would have required (i) completion of ongoing fact discovery, including depositions of key Oracle officers and employees; (ii) an expert discovery process that was expected to include, at a minimum, experts on loss causation and damages from both Lead Plaintiff and Defendants; (iii) an anticipated motion for summary judgment brought by Defendants; and then—assuming Lead Plaintiff was successful in opposing that motion—(iv) extensive pre-trial motion practice, such as motions *in limine* and

*Daubert* motions; (v) a trial requiring a substantial amount of detailed factual and expert testimony; (vi) likely post-verdict challenges to individual Class Members' damages; and, finally, (vii) an appeal from any verdict in favor of the Class.  The continued litigation and appeals would have been costly and would have substantially delayed any recovery for Class Members, possibly for years.  *See Zynga*, 2016 WL 537946, at *10; *Amgen*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case … [as here] … could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").

And, even if a favorable trial verdict was affirmed on appeal, the Class would have faced a potentially complex, lengthy, and contested claims-administration process.  In other securities-fraud class actions that have gone to trial, the time from a verdict to a final judgment has been as long as seven years.  *See Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-05893, Verdict Form, ECF No. 1611 (N.D. Ill. May 7, 2009) & Final Judgment and Order of Dismissal With Prejudice, ECF No. 2267 (N.D. Ill. Nov. 10, 2016); *see also Vivendi Universal, S.A. Sec. Litig.*, Civ. No. 02-5571 (RJH/HBP), Verdict Form, ECF No. 998 (S.D.N.Y. Feb. 2, 2010) (jury verdict issued on Jan. 29, 2010) & Final Judgment Approving Class Action Settlement of All Remaining Claims, ECF No. 1317 (S.D.N.Y. May 9, 2017).

Absent the proposed Settlement, there is no question that the resolution of this case would take considerable time and require additional expenses, with the end result not remotely certain. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

Thus, the risk, complexity, and likely duration of further litigation support approval of the proposed Settlement.  The present value of a certain and substantial recovery now, as opposed to the mere chance of a possibly greater one many months or even years later, supports approval of a settlement that eliminates the expense and delay of continued litigation and the risk that the Class could receive no recovery.  *See Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018) (holding that courts "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere

possibility of relief in the future, after protracted and expensive litigation").

**4.      All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement**

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors also supports approval of the proposed Settlement or is neutral and does not suggest any basis for a finding that the Settlement is inadequate.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation.  The proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to the Court-approved Claims Administrator, A.B. Data, Ltd. ("A.B. Data").  A.B. Data, an independent company with extensive experience administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.  This type of claims processing is standard in securities class actions and has long been used and found to be effective.  This claim procedure is necessary because neither Lead Plaintiff nor Defendants possess data regarding investors' transactions in Oracle common stock that would allow the Parties to create a claims-free process to distribute Settlement funds.

Second, the relief provided for the Class in the Settlement is also adequate when the terms and timing of the proposed award of attorney's fees are taken into account.  As discussed in the Fee Memorandum, the 20% fee requested, to be paid upon the Court's approval, is reasonable in light of Lead Counsel's efforts, the recovery obtained, and the risks in the litigation.  The requested

fee is below the 25% benchmark for percentage fee awards in the Ninth Circuit and the range of percentage fees that courts within this Circuit award for similarly sized settlements. Moreover, the requested fee represents a "negative lodestar" multiplier and, as such, represents a significant discount to Lead Counsel's total lodestar devoted to the prosecution of this Action. With respect to the Court's consideration of the fairness of the Settlement, the approval of the requested attorneys' fees is entirely separate from approval of the Settlement, and neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 20.

Lastly, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation itself was a confidential Supplemental Agreement regarding requests for exclusion (*see* Stipulation ¶ 41). The Supplemental Agreement gives Oracle the right to terminate the Settlement if the valid requests for exclusion received from persons and entities entitled to be members of the Class exceeds an amount agreed to by Lead Plaintiff and Oracle. *Id.* This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4. 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### D.    The Settlement Treats Class Members Equitably

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court must also consider whether the Settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement does so. As discussed below in Part II (discussing the Plan of Allocation), eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on damages they suffered that were attributable to the alleged fraud. No subset of the Class is receiving any special treatment and Lead Plaintiff will receive the same level of *pro rata* recovery under the Plan of Allocation (based on its Recognized Claims as calculated under the Plan) as all other Class Members.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.   Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement

Two additional factors considered by the Ninth Circuit in assessing a proposed settlement are "the experience and views of counsel" and "the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575.  Each of these factors also supports the Settlement.

As courts in this Circuit have explained, "[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *see Nat'l Rural Telecommc'ns Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'").  Here, Lead Counsel—based on a thorough understanding of the strengths and weaknesses of the Action—concluded that the proposed Settlement represents an excellent outcome for Class Members given the risks and the range and probability of potential outcomes.

Likewise, the positive reaction of the Class to the Settlement to date is another factor that favors approval of the Settlement.  *See Amgen*, 2016 WL 10571773, at *4.  Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, has mailed a total of 979,887 copies of the Court-approved Notice and Claim Form (collectively, the "Notice Packet") to potential Class Members and nominees as of December 6, 2022.  *See* Ewashko Decl. (Ex. 3) at ¶ 8.  In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and over the *PR Newswire* on October 18, 2022.  *See id.* ¶ 11.  The Notice set out the essential terms of the Settlement and informed potential Class Members of, among other things, their additional opportunity to request exclusion from the Class or object to any aspect of the proposed Settlement.  While the December 22, 2022 deadline for Class Members to exclude themselves or object has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have been received.  *See* Uslaner Decl. ¶ 87.  In addition, to date, only fifteen (15) requests for exclusion from the Class have been received.  Ewashko Decl. ¶ 17.  Lead Plaintiff will discuss all requests for exclusion and any objections that may be received in its reply papers, to be

filed by January 5, 2023.

In sum, all of the factors to be considered under Rule 23(e)(2) support a finding that the proposed Settlement is fair, reasonable, and adequate.

## II.      The Plan of Allocation Is Fair and Reasonable

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks approval of the proposed Plan of Allocation for the Settlement proceeds.  The Plan of Allocation is set forth at pages 12 to 16 of the Settlement Notice mailed to Class Members.  It is the same Plan of Allocation as that which was contained in the Settlement Notice approved by the Court in its Preliminary Approval Order.  ECF No. 134 at 27-33.

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate."  *Class Plaintiffs*, 955 F.2d at 1284-85; *see also Omnivision*, 559 F. Supp. 2d at 1045.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel, as here.  *See Heritage Bond*, 2005 WL 1594403, at *11.  Courts hold that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's damages expert.  ¶ 89.  The Plan provides for the distribution of the Net Settlement Fund to Class Members on a *pro rata* basis based on the extent of their injuries attributable to the alleged fraud. *Id*.  In developing the Plan of Allocation, Lead Plaintiff's expert calculated the estimated amount of artificial inflation in the per-share closing prices of Oracle common stock that was allegedly proximately caused by Defendants' alleged false and misleading statements and omissions.  ¶ 91. To calculate the estimated artificial inflation, Lead Plaintiff's expert considered the price changes in Oracle common stock in reaction to the public disclosures that allegedly corrected the alleged misrepresentations and omissions, adjusting for price changes attributable to market or industry factors.  *Id*.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Oracle common stock during the Class Period that is listed in the Claim Form and for which

adequate supporting documentation is provided.  The calculation of Recognized Loss Amounts will depend upon several factors, including when the claimant's stock was purchased and sold and the purchase or sale price.  In general, Recognized Loss Amounts will be the lower of: (i) the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, and (ii) the difference between the actual purchase price and sales price.  Notice ¶¶ 61, 71.  For shares sold during or after the 90-day period following the final corrective disclosure, the Plan also limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA.  *Id.* ¶¶ 71.C(ii), 71.D(ii).  Under the Plan of Allocation, claimants who purchased shares during the Class Period but did not hold those shares through at least one of the alleged corrective disclosures will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud.  *Id.* ¶¶ 60-61.

The sum of a Claimant's Recognized Loss Amounts for all their Class Period purchases is the Claimant's "Recognized Claim."  Notice ¶ 72.  The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Oracle common stock during the Class Period.  A Claimant's Recognized Claim will be limited to the amount of his, her, or its market loss in Oracle common stock transactions during the Class Period, and Claimants who have an overall market gain are not eligible for a recovery.  *Id.* ¶¶ 78-79.  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  *Id.* ¶¶ 80-81.

One hundred percent of the Net Settlement Fund will be distributed to Class Members who submit eligible claims.  If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions will also be conducted.  Notice ¶ 83.  In the event any residual funds remain after all cost-effective distributions of the Net Settlement Fund to eligible claimants have been completed, the Plan of Allocation identifies the Investor Protection Trust ("IPT") as the proposed *cy pres* recipient.  *Id.* The IPT is a 501(c)(3) nonprofit organization devoted to investor education (Uslaner Decl. ¶ 97) and is an appropriate *cy pres* recipient because its mission relates to the nature of the securities

fraud claims asserted in the Action, and courts in this District have approved it as a *cy pres* recipient in other securities fraud class actions in recent years. *See, e.g.*, *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at \*2 (N.D. Cal. July 15, 2022) (approving IPT as *cy pres* recipient based on a finding of a "sufficient nexus between the Class and the [IPT], which shares the Class Members' interests in protecting investors and preventing fraud"); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at \*9 (S.D. Cal. Mar. 17, 2021) (approving IPT as *cy pres* recipient); *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at \*2 (C.D. Cal. Aug. 26, 2020) (same); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*11 (N.D. Cal. Dec. 17, 2018) ("the Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary"). As noted, payment will only be made to this charity when the residual amount left for re-distribution to Class Members is so small that a further re-distribution would not be cost effective—for example, in the event the administrative costs of conducting an additional distribution would largely subsume the funds available.

As of December 6, 2022, more than 979,000 copies of the Notice, which contains the Plan of Allocation and advises Class Members of their right to object to the Plan, have been mailed to potential Class Members. *See* Ewashko Decl. ¶ 8. To date, no objections to the Plan of Allocation have been received. *See* Uslaner Decl. ¶ 98.

In sum, Lead Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

## III. Notice to the Class Satisfied the Requirements of Rule 23 and Due Process

In accordance with the Court's Preliminary Approval Order, A.B. Data, the Court-approved Claims Administrator, began mailing copies of the Notice Packet to potential Class Members and nominees on October 6, 2022. *See* Ewashko Decl. ¶¶ 4-5. As of December 6, 2022, A.B. Data had mailed a total of 979,887 copies of the Notice Packet by first-class mail to potential Class Members and nominees. *See id.* ¶ 8. In addition, A.B. Data arranged for the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on October 18, 2022. *See id.* ¶ 11. A.B. Data also established a dedicated settlement website, www.OracleSecuritiesLitigation.com, to provide potential Class Members with information

concerning the Settlement and access to downloadable copies of the Notice, Claim Form, and Stipulation, among other documents. *See id*. ¶ 16. Copies of the Notice and Claim Form were also made available on Lead Counsel's website, www.blbglaw.com. *See* Uslaner Decl. ¶ 86.

The Notice disseminated to the Class in accordance with the Court's Preliminary Approval Order satisfied all the requirements of due process, Rule 23, and the PSLRA. For a class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given notice of the class action and their right to request exclusion that is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Rule 23(e)(1)(B). The notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575; *see also Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (same); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

The notice program's combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in widely circulated publications, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23 and due process. *See, e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (approving similar notice program); *Zynga*, 2016 WL 537946, at *7 (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances").

The contents of the Notice, which was approved by the Court in the Preliminary Approval Order, provided the necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B), the PSLRA (15 U.S.C. § 78u-4(a)(7)), and this District's Procedural Guidelines for Class Action

Settlements.  The Notice informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the reasons why the parties are proposing the Settlement; (5) the estimated average recovery per affected class member; (6) the maximum amount of attorneys' fees and expenses that will be sought; (7) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Class Members; (8) Class Members' right to request exclusion from the Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (9) the binding effect of a judgment on Class Members; and (10) the dates and deadlines for Settlement-related events.  The Settlement Notice also contained the Plan of Allocation and provided Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund.

In sum, the Notice fairly apprised Class Members of their rights with respect to the Settlement and complied with the Court's Preliminary Approval Order, the Federal Rules of Civil Procedure, the PSLRA, and due process.

## CONCLUSION

For these reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

Dated:  December 8, 2022

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
JONATHAN D.  USLANER, Bar No. 256898
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3472

MARK LEBOVITCH (*pro hac vice*)
(markl@blbglaw.com)
JOHN RIZIO-HAMILTON (*pro hac vice*)
(johnr@blbglaw.com)
ABE ALEXANDER (*pro hac vice*)
(abe.alexander@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff*
*Union Asset Management Holding AG and Lead*
*Counsel for the Class*